EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | Certificación<br><br>2019 TSPR 138<br><br>203 DPR \_\_\_\_ |

Número del Caso: CT-2019-4


Fecha: 7 de agosto de 2019


Abogados de la parte peticionaria:

    Lcdo. Eliezer Aldarondo Ortiz
    Lcda. Rosa Campos Silva
    Lcda. Sheila J. Torres Delgado
    Lcdo. Claudio Aliff Ortiz


Abogados de la parte recurrida:

    Lcdo. Antonio A. Hernández Almodovar
    Lcdo. Manuel Martinez Umpierre
    Lcdo. Julio Nigaglioni Arrache
    Lcdo. Joaquín Martínez García


Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Pedro A. Vázquez Montijo
    Sub Procurador General


Materia: Derecho Constitucional - Se decreta inconstitucional la cláusula añadida al Art. 1 de la Ley Núm. 7 de 24 de julio de 1952 por la Ley Núm. 7-2005, 3 LPRA sec. 8 et seq., para permitir que un Secretario de Estado que no ha sido confirmado por ambas cámaras legislativas se convierta en Gobernador en propiedad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 | |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 7 de agosto de 2019.

Nos corresponde resolver cuál es el derecho aplicable para determinar quién es el Gobernador de Puerto Rico, tras la renuncia del incumbente anterior. En esa encomienda, somos conscientes de la trascendencia de nuestra decisión para la estabilidad del gobierno y la paz social. **Unánimemente** y tras un análisis detenido del derecho aplicable, concluimos que la cláusula añadida al Art. 1 de la Ley Núm. 7 de 24 de julio de 1952 por la Ley Núm. 7-2005, infra, para permitir que un Secretario de Estado que no ha sido confirmado por ambas cámaras legislativas se convierta en Gobernador en propiedad, es inconstitucional. El Hon. Pedro R. Pierluisi Urrutia, Secretario de Estado

designado en receso, juró como Gobernador de Puerto Rico el viernes, 2 de agosto de 2019, amparado en la presunción de legalidad que acompaña a toda ley vigente. Sin embargo, en vista del resultado al que llegamos hoy, esa juramentación es inconstitucional.

I

Los siguientes hechos no están en controversia. Son de conocimiento público, por lo que tomamos conocimiento judicial de ellos. Regla 201 de Evidencia, 32 LPRA Ap. VI. Véase, también, U.P.R. v. Laborde Torres y otros, 180 DPR 253, 276-279 (2010).

El Dr. Ricardo A. Rosselló Nevares anunció el 24 de julio de 2019 que renunciaría al cargo de Gobernador de Puerto Rico, efectivo el viernes, 2 de agosto de 2019, a las 5:00 de la tarde. El miércoles, 31 de julio de 2019, mientras la Asamblea Legislativa de Puerto Rico se encontraba en receso, el gobernador Rosselló Nevares designó como Secretario de Estado de Puerto Rico al Hon. Pierluisi Urrutia. La posición estaba vacante tras la renuncia del Lcdo. Luis Rivera Marín. Ante esto, el gobernador Rosselló Nevares convocó a la Asamblea Legislativa a una sesión extraordinaria, según lo permite la Constitución de Puerto Rico, con el único propósito de atender el nombramiento del Hon. Pierluisi Urrutia como Secretario de Estado.

El jueves, 1 de agosto de 2019, tanto la Cámara de Representantes como el Senado de Puerto Rico iniciaron,

respectivamente, los trabajos legislativos de la sesión extraordinaria. Durante esta, el Senado determinó celebrar una vista pública el lunes, 5 de agosto de 2019, con el fin de evaluar el nombramiento del nuevo Secretario de Estado. Por su parte, la Cámara de Representantes celebró la vista pública el viernes, 2 de agosto de 2019, en donde los miembros de la Comisión de Gobierno de ese cuerpo tuvieron la oportunidad de hacerle preguntas al Hon. Pierluisi Urrutia para evaluar su nominación para ocupar el cargo de Secretario de Estado. En la tarde de ese mismo viernes, la Cámara de Representantes votó y confirmó al Hon. Pierluisi Urrutia como Secretario de Estado.

Poco después de las cinco de la tarde de ese día, el Hon. Pierluisi Urrutia juramentó como Gobernador de Puerto Rico, sin que el Senado lo confirmara como Secretario de Estado. El Senado tenía pautado reunirse el lunes, 5 de agosto de 2019, para evaluar el nombramiento y confirmarlo o rechazarlo.

Inconforme con que el Hon. Pierluisi Urrutia hubiera juramentado como Gobernador, el Senado, representado por su Presidente, Hon. Thomas Rivera Schatz, presentó una demanda de injunction preliminar y permanente, y para que se dictara sentencia declaratoria. En ella, solicitó que se declararan nulas la juramentación y la posesión del cargo de Gobernador por el Hon. Pierluisi Urrutia, al igual que toda determinación tomada por este en tal función y que, a su vez, se emitiera un injunction preliminar y permanente,

CT-2019-0004                                                      4

para que el Hon. Pierluisi Urrutia cesara y desistiera de continuar ocupando y ejerciendo las funciones de Gobernador. El Senado aseveró que, según el derecho vigente, un Secretario de Estado solo puede ocupar el puesto de Gobernador después de surgir una vacante absoluta, si ocupa su puesto en propiedad, es decir, con el consejo y consentimiento de la Cámara de Representantes y el Senado. Por ello, solicitó que se declarara inconstitucional la Ley Núm. 7-2005, infra.

El lunes, 5 de agosto de 2019, el Senado presentó un recurso de certificación ante este Tribunal en el que repitió los argumentos planteados ante el Tribunal de Primera Instancia. Ese mismo día emitimos una Resolución en la que expedimos el auto de certificación solicitado, ordenamos a las partes a presentar sus alegatos al día siguiente y ordenamos la paralización de los procedimientos en el foro primario. Comparecieron como amicus curiae un grupo de profesores de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, la delegación senatorial del Partido Popular Democrático y el Colegio de Abogados y Abogadas de Puerto Rico. Con el beneficio de esas comparecencias, procedemos a resolver la controversia planteada con la urgencia que la ocasión requiere.

II

A.

La certificación intrajurisdiccional es un mecanismo procesal discrecional, que podemos expedir por iniciativa

propia o a solicitud de parte, para elevar inmediatamente a la consideración de este Tribunal cualquier asunto pendiente ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones cuando, entre otros factores, se plantean cuestiones de alto interés público que incluyen un asunto constitucional sustancial al amparo de la Constitución de Puerto Rico o de Estados Unidos. Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V. Esto es de particular importancia cuando la legitimidad de los procesos democráticos y de nuestras instituciones está en disputa. Véase Torres Montalvo v. Gobernador ELA, 194 DPR 760 (2016).

En esta ocasión, se cuestiona la base legal del Hon. Pierluisi Urrutia para ocupar el cargo de Gobernador. No cabe duda de que se trata de una situación que requiere una determinación final con urgencia. Más aún, la controversia acerca de la constitucionalidad de la ley que se invoca para que el Hon. Pierluisi Urrutia ocupe el cargo de Gobernador es una que le corresponde resolver a este Tribunal como intérprete final de la Constitución. La controversia, aunque reciente, ya se encuentra en una etapa en que podemos intervenir y resolverla; no hay necesidad de recibir prueba, y es un asunto de naturaleza constitucional totalmente novedoso. Véase, Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 849 (2014) (para este recurso, debemos analizar: "(1) la urgencia, (2) la etapa en que se encuentran los procedimientos, (3) la necesidad que puede

presentarse de recibir prueba y (4) la complejidad de la controversia"). Este asunto requiere nuestra atención inmediata. Por ello, expedimos el auto de certificación y le dimos un trámite acelerado a este recurso.

B.

La persona que presenta una solicitud de sentencia declaratoria debe cumplir con los criterios de legitimación activa, a saber: la existencia o inminencia de un daño claro y real, no imaginario o hipotético. Romero Barceló v. E.L.A., 169 DPR 460, 475 (2006), Sánchez et al. v. Srio. de Justicia et al., 157 DPR 360, 384 (2002). Hemos reconocido que los legisladores tienen legitimación activa para, entre otras cosas, hacer valer sus prerrogativas legislativas. Bhatia Gautier v. Gobernador, 199 DPR 59, 70-71 (2017); Acevedo Vilá v. Meléndez, 164 DPR 875, 885 (2005); Hernández Agosto v. Romero Barceló, 112 DPR 407, 415 (1982). Además, el Presidente del Senado tiene legitimación para comparecer a nombre del cuerpo legislativo que preside. El Reglamento del Senado faculta a su Presidente a "[r]adicar[] a nombre del Senado o interven[ir] en aquellas acciones judiciales en las cuales él estime que puedan afectarse los derechos, facultades y prerrogativas del Senado, sus funcionarios, Comisiones y los funcionarios de éstas, en el desempeño de sus gestiones legislativas". Sec. 6.1(p) del Reglamento del Senado de Puerto Rico.

En este caso, el Senado tiene la responsabilidad y la facultad constitucional de consejo y consentimiento del

nombramiento de un Secretario de Estado. Art. IV, Sec. 5, Constitución de Puerto Rico, 1 LPRA; Regla 47 del Reglamento del Senado de Puerto Rico (sobre nombramientos en general). La juramentación del cargo de Gobernador por un Secretario de Estado que no contó con la confirmación del Senado afectó, palpablemente y sin duda alguna, un derecho importante de los senadores, por lo que tienen legitimación activa para acudir a los tribunales.

C.

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". Alcalde Guayama v. ELA, 192 DPR 329, 333 (2015). Está disponible independientemente de que existan otros remedios. Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V.

La sentencia declaratoria tiene la eficacia y el vigor de una sentencia o resolución definitiva. Íd. Se dicta en procesos en los que los hechos demuestren que existe una controversia sustancial entre partes que tienen intereses legales adversos. Tiene el propósito de disipar una incertidumbre jurídica y contribuir a la paz social. Véase Suárez v. C.E.E. I, 163 DPR 347, 354 (2004). Es adecuada como solución a planteamientos constitucionales. Asoc. de Periodistas v. González, 127 DPR 704, 724 (1991).

D.

El injunction es un mandamiento judicial para requerirle a una persona para que se abstenga de hacer, o de permitir que se haga, determinada cosa que perjudique el derecho de otra. Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521. Para expedir un injunction preliminar, se evalúa: "(a) la naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria". Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V. Procede conceder una petición de injunction permanente si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. Íd., pág. 367.

El Art. 678(5) del Código de Enjuiciamiento Civil expresamente prohíbe la concesión de un injunction "[p]ara impedir el ejercicio en forma legal de un cargo público o privado, por la persona que estuviera en posesión del mismo". 32 LPRA sec. 3524(5). Sin embargo, ese artículo, conocido como la "ley anti-injunction", no prohíbe que se impugne el ejercicio ilegal de un cargo público o privado. Asimismo, hemos dicho que esa prohibición "obedeció al propósito de impedir la paralización del gobierno mediante

alegaciones privadas de inconstitucionalidad. [… N]o persigue el objetivo de evitar que en pleitos revestidos de alto interés público no se puedan deslindar las respectivas facultades de dos ramas del gobierno en pugna". Hernández Agosto v. López Nieves, 114 DPR 601, 612 (1983).

Por último, hemos reconocido que los legisladores tienen legitimación activa para, entre otras cosas, solicitar un injunction y sentencia declaratoria con el objetivo de cuestionar que una persona está ocupando un cargo en detrimento de su poder de confirmación. Íd., pág. 646.

### E.

Establecida la legitimación del Presidente del Senado, Hon. Thomas Rivera Schatz, para comparecer a nombre del Senado y solicitar una sentencia declaratoria y de injunction, procedemos a resolver los méritos de la controversia.

### III

La Constitución de Puerto Rico atiende tres situaciones posibles para seleccionar el sustituto de un Gobernador. El primer escenario es ante una vacante transitoria. Art. IV, Sec. 8, Const. PR, 1 LPRA. El segundo escenario contempla una vacante porque el Gobernador electo nunca llegó a ocupar el cargo. Art IV, Sec. 9, Const. PR, 1 LPRA. Ninguna de esas situaciones está planteada en este caso. Nos concierne hoy la tercera situación contemplada en la Constitución: La vacante absoluta en el cargo de

Gobernador, que se atiende en el Art. IV, Sec. 7 de la Constitución de Puerto Rico, 1 LPRA. Para resolver la controversia, conviene hacer un trasfondo histórico y legal del mecanismo de sustitución que se adoptó en la Constitución.

En el sistema federal, el sucesor del Primer Ejecutivo es un Vicepresidente, elegido de la misma forma que el Presidente. Véanse el Art. II, Sec. 1 de la Constitución de EE. UU. y la Emda. XII, 1 LPRA. Si el Presidente es destituido, muere o renuncia, el Vicepresidente pasará a ocupar la presidencia. Emda. XXV, Sec. 1, Const. EE. UU., supra.

En cambio, en Puerto Rico, el sucesor del Gobernador es el Secretario de Estado. Art. IV, Sec. 7, Const. PR, supra. Este es un funcionario de confianza del Gobernador, miembro de su Consejo de Secretarios. Art. IV, Sec. 5, Const. PR, supra. Como el Secretario de Estado puede advenir a ser Gobernador si ocurriere una vacante en el cargo, la citada Sec. 5 establece que el Secretario tiene que cumplir con los mismos requisitos que se disponen en la Sec. 3 para ser Gobernador, a saber: (1) que a la fecha de la elección tuviera 35 años de edad cumplidos y (2) que por los cinco años anteriores a la elección fuere ciudadano americano así como ciudadano *bona fide* y residente de Puerto Rico. Art. IV, Sec. 3, Const. PR, supra. Además, la Sec. 5, supra, requiere que el Secretario de Estado sea confirmado, no solo por el Senado, sino también por la Cámara de

Representantes. Un estudio de la sucesión, según las leyes orgánicas anteriores, y una lectura del Diario de Sesiones de la Asamblea Constituyente nos revelan la importancia de este último requisito: la confirmación por ambas cámaras legislativas.

Según el Art. 20 de la Ley Orgánica Foraker de 1900, 31 Stat. 81, el Secretario del Gobierno sustituiría al Gobernador. Ambos, el Secretario y el Gobernador, eran funcionarios no electos nombrados por el Presidente de Estados Unidos y confirmados por el Senado federal. Secs. 17 y 18, íd. El Art. 24 de la Ley Jones-Shafroth de 1917 alteró ese método, al facultar al Presidente de Estados Unidos a designar a cualquier miembro del gabinete insular como sucesor del Gobernador. Finalmente, con la aprobación de la Ley del Gobernador Electivo, 61 Stat. 771, el Congreso enmendó el citado Art. 24 para que las personas designadas para ocupar el cargo de Gobernador, en caso de surgir una vacante, fueran el Procurador General y, en su defecto, el Tesorero, quienes serían nombrados por el Gobernador. Ese era el escenario vigente cuando la Asamblea Constituyente se reunió en 1951.

La intención de los padres de nuestra Constitución fue perpetuada en el Diario de Sesiones de la Convención Constituyente. Esta nos ilustra acerca del significado del texto constitucional. Torres Montalvo v. Gobernador, supra, pág. 775. La sustitución del Gobernador provocó mucho debate entre los constituyentes. Unos delegados favorecían

que el Gobernador fuera sustituido por un funcionario no electo. Otro grupo favorecía que se creara un cargo electivo de Vicegobernador, similar al de Vicepresidente de Estados Unidos. Ese funcionario electo presidiría el Senado y votaría solamente en caso de empate y, además, sustituiría al Gobernador en caso de vacante. Sin embargo, en caso de ausencia temporera sería el Secretario de Gobierno quien ocuparía el cargo de Gobernador. Esa fue la recomendación inicial de la Comisión de la Rama Ejecutiva. 4 Diario de Sesiones de la Asamblea Constituyente 2603 (ed. 1961).

No obstante, un buen número de los integrantes de la Convención Constituyente no favorecieron esa propuesta y preferían un sistema sucesoral parecido al de la Ley del Gobernador Electivo; es decir, que la vacante en el cargo de Gobernador la llenara un funcionario no electo, pero nombrado por el gobernador anterior. J. Trías Monge, Historia Constitucional de Puerto Rico, 1ra ed., San Juan, Ed. Universidad de Puerto Rico, Vol. III, págs. 131-132. Los estudiosos de la época recomendaron que la vacante se debía cubrir con un funcionario cercano al Gobernador, que conociera los problemas del gobierno y que contara con su confianza, para que de esa forma hubiere estabilidad. La nueva Constitución de Puerto Rico, Edición facsimilar, San Juan, Ed. Universidad de Puerto Rico, 2005, pág. 513. Se argumentaba que el Vicegobernador sería "un cargo con mucho

nombre, mucho sueldo y casi nada que hacer […]"[1] y que por ser electo crearía su propia base política, con el potencial de entrar en conflicto con el Gobernador, electo también. Todavía estaba fresco el recuerdo de la disputa en 1950 entre el gobernador Luis Muñoz Marín y su sucesor en ley, el procurador general Vicente Géigel Polanco, que llevó al primero a remitirle una carta al segundo en la que le solicitó y aceptó su renuncia. Véase, Trías Monge, op. cit., págs. 131-132.[2]

El caucus de la delegación mayoritaria, la del Partido Popular Democrático, debatió el asunto, y el 25 de enero de 1952, el delegado Víctor Gutiérrez Franqui propuso eliminar el cargo de Vicegobernador y designar al Secretario de Estado como sustituto del Gobernador. 3 Diario de Sesiones de la Asamblea Constituyente 2220 (ed. 1961).[3] El lenguaje de su propuesta es la base de la Sec. 7 del Art. IV de la

---

[1] Palabras del delegado Víctor Gutiérrez Franqui, 3 Diario de Sesiones de la Asamblea Constituyente 2313 (ed. 1961).

[2] Véase el texto íntegro de la carta enviada por el gobernador Luis Muñoz Marín y la respuesta de Vicente Géigel Polanco, en Santiago Polanco Abreu: Compromiso Político y verticalidad en su lucha por Puerto Rico (H. L. Acevedo, ed.), San Juan, Ed. Universidad Interamericana de Puerto Rico, 2010, págs. 492-499.

[3] La propuesta leía así:

"Cuando un gobernador electo no pueda tomar posesión de su cargo o cuando ocurra una vacante en el mismo producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará hasta que su sucesor sea electo y tome posesión. Si la próxima elección general estuviere señalada para celebrarse más de un año después de la fecha de la vacante, se celebrará una elección especial para elegir un gobernador dentro de los 120 días siguientes a la vacante. La ley proveerá para el caso de que una vacante tal ocurra, tanto en el cargo de Gobernador como en el [de] Secretario, y determinará qué funcionario ocupará el cargo de Gobernador". 3 Diario de Sesiones de la Asamblea Constituyente 2220 (ed. 1961).

Constitución, _supra_, aunque con la cláusula, abandonada cinco días después, de que si faltaba más de un año para la próxima elección general se celebraría una elección especial para que el Pueblo eligiera un Gobernador que completara el término del Gobernador saliente.[4] Esa propuesta se sustituyó por el lenguaje actual de la Sec. 7 del Art. IV, _supra_, en la que se dispone que el nuevo Gobernador completará el término del anterior.[5]

La propuesta, actual Art. IV, Sec. 7 de la Constitución, establece que la legislatura establecería por ley el orden sucesoral cuando "simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado". Las minorías socialistas y republicanas habían apoyado la idea de crear el puesto de Vicegobernador para llenar la vacante de Gobernador, si esta se produjese. J. Trías Monge, _op. cit._, pág. 130. Por eso, cuando el delegado Gutiérrez Franqui propuso su enmienda, que hoy es

---

[4]  3 _Diario de Sesiones de la Asamblea Constituyente_ 2311-2315 (ed. 1961).

[5]  El Art. IV, Sec. 7 de la Constitución de Puerto Rico indica que

[c]uando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. La ley dispondrá cuál de los Secretarios de Gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.

Por otro lado, el Art. IV, Sec. 9 de la Constitución de Puerto Rico establece otra forma para llenar una vacante permanente en el cargo de Gobernador, cuando este nunca tomó posesión de su cargo o, habiéndolo hecho, el Secretario de Estado no tomó posesión de su cargo. Esa situación no está ante nosotros.

la Sec. 7 del Art. IV, el delegado minoritario, Celestino Iriarte, expresó su desagrado. Se produjo este diálogo entre los delegados Gutiérrez Franqui e Iriarte:

Sr. IRIARTE: De acuerdo con la enmienda resultará que el Gobernador estará sustituido por un funcionario que no es electo por el pueblo, así lo entiendo. ¿No? No será electo por el pueblo, el Secretario de Estado, sino que será nombrado por el Gobernador como los demás secretarios del gobierno.

Sr. GUTIERREZ FRANQUI: Con la excepción de que será confirmado por ambas cámaras legislativas. 3 Diario de Sesiones de la Asamblea Constituyente, supra, pág. 2315.

Surge de esa discusión que la premisa para justificar la legitimidad democrática de la sustitución de un funcionario electo (el Gobernador) por un funcionario que no está sujeto a elección (el Secretario de Estado), fue que la confirmación por los legisladores sustituiría la elección popular. En otras palabras, en lugar de la participación directa del Pueblo mediante la elección del sucesor del Gobernador, se optó por la participación indirecta del Pueblo, mediante la confirmación del Secretario de Estado por los legisladores de ambas cámaras, a quienes el Pueblo eligió.

Como explicó el delegado Gutiérrez Franqui:

Se dispone que el Secretario de Estado, al ser nombrado Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta. 3 Diario de

Sesiones de la Asamblea Constituyente, supra, pág. 2312.

IV

Para cumplir con el mandato del Art. IV, Sec. 7 de la Constitución, la Asamblea Legislativa aprobó la Ley Núm. 7 de 24 de julio de 1952. 1952 Leyes de Puerto Rico 13. En su Art. 1, esa ley dispuso originalmente que cuando quedaren vacantes simultáneamente las posiciones de Gobernador y de Secretario de Estado, el orden de sucesión sería el siguiente: (1) Secretario de Justicia; (2) Secretario de Hacienda; (3) Secretario de Instrucción Pública (hoy Educación); (4) Secretario del Trabajo (hoy Trabajo y Recursos Humanos); (5) Secretario de Obras Públicas (hoy Transportación y Obras Públicas).[6]

El orden actual de sucesión del Gobernador se estableció por una enmienda de 2005 a la ley de 1952. Mediante la Ley Núm. 7-2005 se actualizó el nombre de los secretarios a la realidad legal imperante. Art. 1, 3 LPRA sec. 8. Según su título, el P. de la C. 327, que

---

[6] Texto original del Art. 1 de la Ley Núm. 7 del 24 de julio de 1952 (1952 Leyes de Puerto Rico 13):

"Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término, y hasta que un nuevo Gobernador sea electo y tome posesión. Si simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado el orden de sucesión bajo este Artículo será el siguiente:

1. Secretario de Justicia.
2. Secretario de Hacienda.
3. Secretario de Educación.
4. Secretario del Trabajo y Recursos Humanos.
5. Secretario de Transportación y Obras Públicas".

eventualmente se convirtió en la Ley Núm. 7-2005, buscaba

"actualizar y clarificar el orden de sucesión en caso de

una vacante permanente en el cargo de Gobernador o de una

administración interina en caso de su ausencia temporera".

P. de la C. 327 de 4 de enero de 2005, 1ra. Sesión

Ordinaria, 15ta Asamblea Legislativa, pág. 1. Se añadieron

los Secretarios de Salud, Desarrollo Económico y Comercio,

así como Agricultura, a la lista de sucesores legales del

Gobernador. Además, en su Sec. 1, el proyecto de ley

establecía de forma clara y contundente que todo Secretario

del gabinete, sin excepciones, tenía que ser ratificado en

su posición por la cámara legislativa correspondiente, para

poder sustituir **permanentemente** al Gobernador.[7] En cambio,

---

[7] Texto original de la Sec. 1 que se incluyó en el Proyecto de la Cámara:

"Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. Si simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado el orden de sucesión bajo esta sección será el siguiente:

    (1)   Secretario de Justicia.
    (2)   Secretario de Hacienda.
    (3)   Secretario de Educación.
    (4)   Secretario del Trabajo y Recursos Humanos.
    (5)   Secretario de Transportación y Obras Públicas.
    (6)   Secretario de Desarrollo Económico y Comercio[.]
(7)   Secretario de Salud[.]
    (8)   Secretario de Agricultura[.]

Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento. Deberá además cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Artículo IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante." P. de la C. 327 de 4 de enero de 2005, 1ra. Sesión Ordinaria, 15ta Asamblea Legislativa, pág. 1.

en la Sec. 2 del proyecto se establecía expresamente "que para el ejercicio **interino** de las funciones de Gobernador, no será obligatorio haber cumplido las disposiciones constitucionales sobre edad y residencia" (énfasis suplido).

La Sec. 2 prevaleció como una enmienda al Art. 2 de la Ley Núm. 7 de 24 de julio de 1952, 3 LPRA sec. 9. En cambio, la Sec. 1, que pretendía enmendar el Art. 1 de la Ley Núm. 7 de 1952, supra, sufrió cambios en el trámite legislativo. Se adoptó una enmienda que propuso el Secretario de Justicia, Hon. Roberto Sánchez Ramos, para establecer que el Secretario de Estado estaba exceptuado de tener que ser ratificado por ambas cámaras legislativas para poder ocupar permanentemente el cargo de Gobernador. Véanse Ponencia del Hon. Roberto J. Sánchez Ramos, Secretario de Justicia, de 8 de febrero de 2005, pág. 4; Informe Positivo sobre el Proyecto de la Cámara 327 de 16 de febrero de 2005, 1ra Sesión Ordinaria, 15ta Asamblea Legislativa. La contención del Presidente del Senado, Hon. Thomas Rivera Schatz, es que esa enmienda de 2005 es contraria a la Constitución. Tiene razón.

El Secretario de Justicia argumentó en su ponencia a la Cámara en 2005 que la Sec. 7, Art. IV de la Constitución de Puerto Rico, supra, que designa al sucesor del Gobernador en caso de vacante permanente, no requiere que el Secretario de Estado esté confirmado por la Asamblea

Legislativa para que se convierta en Gobernador en propiedad. Ponencia del Hon. Roberto J. Sánchez Ramos, supra, pág. 5. De esta forma, concluyó que la Constitución no exige la confirmación del Secretario de Estado para que este advenga a ser Gobernador en caso de una vacante en la posición de Primer Ejecutivo. Íd., pág. 5.

La Asamblea Legislativa aceptó la recomendación del Secretario de Justicia de que el Secretario de Estado quedara exento del requisito de confirmación en su cargo para poder advenir a ser Gobernador en propiedad por el término restante del Gobernador saliente.[8]

_____

[8] Texto aprobado por la Asamblea Legislativa:

"Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. Si simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado el orden de sucesión bajo esta sección será el siguiente:

(1) Secretario de Justicia.
(2) Secretario de Hacienda.
(3) Secretario de Educación.
(4) Secretario del Trabajo y Recursos Humanos.
(5) Secretario de Transportación y Obras Públicas.
(6) Secretario de Desarrollo Económico y Comercio.
(7) Secretario de Salud.
(8) Secretario de Agricultura.

Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; **excepto en el caso del Secretario(a) de Estado**, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Deberá, además, cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Art. IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/con el requisito de haber sido ratificado su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en esta sección excepto cuando aplique el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario

La posición del entonces Secretario de Justicia era incorrecta. El texto de la Constitución es claro al disponer en el Art. IV, Sec. 5, que la nominación del Secretario de Estado tiene que ser confirmada no solo por el Senado, sino también por la Cámara de Representantes.

Más aún, la situación que nos ocupa se debatió expresamente en la Convención Constituyente. Como ya reseñamos, la sustitución de un Gobernador electo por el Secretario de Estado que él nominó está basada en "que será confirmado por ambas cámaras legislativas". Palabras del delegado Gutiérrez Franqui, 3 Diario de Sesiones de la Asamblea Constituyente, supra, pág. 2315.[9] Sin embargo, según la recomendación del Secretario de Justicia refrendada en las enmiendas al P. de la C. 327, hoy Ley Núm. 7-2005, si un Gobernador renuncia mientras la Asamblea Legislativa está en receso y la posición de Secretario de Estado está vacante pero, antes de su partida, el Gobernador nomina un Secretario de Estado y este toma posesión, no será necesario que su nombramiento pase por las cámaras legislativas para su confirmación o rechazo. En

de Estado, habrá de velar por que el orden de sucesión no quede vacante". Sec. 1 de la Ley Núm. 7-2005 (2005 Leyes de Puerto Rico 20-21).

[9] De hecho, a pesar de la aprobación de la enmienda discutida aquí, la Ley Núm. 7-2005 retuvo la versión original de la Exposición de Motivos del P. de la C. 327, que señalaba que para ocupar en propiedad el cargo de Gobernador, todos los Secretarios, incluyendo el de Estado, debían haber sido confirmados. "Es razonable concluir que esta sucesión debe corresponder a funcionarios **que ocupen el puesto en propiedad**, habiendo sido debidamente ratificados en la legislatura y que cumplan con los requisitos constitucionales de edad y residencia". Exposición de Motivos, Ley Núm. 7-2005, tercer párrafo (énfasis suplido).

esa circunstancia, el Pueblo queda fuera de la ecuación. No tendrá injerencia directa porque la Constitución no contempla la elección, mediante el sufragio, del sustituto del Gobernador. El Pueblo tampoco tendrá injerencia indirecta para ratificar la designación del nuevo Gobernador, pues tampoco intervendrán los legisladores en la confirmación o rechazo de la nominación del Secretario de Estado. El resultado es que por el tiempo que quede de cuatrienio, que pueden ser años, el gobierno de Puerto Rico estaría encabezado por un Gobernador escogido exclusivamente por otro Gobernador saliente, sin que el Pueblo, o en su defecto, sus legisladores electos pudieran pasar juicio sobre esa nominación.

Nuestro sistema de gobierno se apuntala en "el principio básico de gobierno mediante el consentimiento de los gobernados[,] que es esencial en la democracia y entre los hombres libres". P.P.D. v. Ferré, Gobernador, 98 DPR 338, 434 (1970), opinión del Juez Asociado señor Blanco Lugo. "[E]ntendemos por sistema democrático aquél donde la voluntad del pueblo es la fuente del poder público […]". Preámbulo, Const. PR, 1 LPRA. Cuando Puerto Rico celebró la aprobación de la Ley del Gobernador Electivo en 1947 y consagró en la Constitución del Estado Libre Asociado de 1952 la elección popular del Primer Ejecutivo, se dio un enorme paso de avance en la consecución de una democracia plena.

La enmienda de 2005 surgió en un momento histórico en que ambas cámaras legislativas estaban controladas por una mayoría de legisladores de un partido distinto al del Gobernador y no se había confirmado a la Secretaria de Estado nominada. Véase, Acevedo Vilá v. Meléndez, 164 DPR 875 (2005). El Secretario de Justicia propuso la enmienda al Art. 1 de la Ley Núm.7 de 24 de julio de 1952, supra, para evitar una "emergencia" que no puede existir, pues la ley siempre ha dispuesto el orden de sucesión en caso de que no haya un Secretario de Estado en propiedad, como la Constitución requiere. Aun así, se pretendió que una ley prevaleciera sobre el designio prístino de la Constitución y se alteró el propósito original del proyecto de ley.

Es harto conocido el principio legal básico de que una ley está subordinada a la Constitución. Véanse, Córdova y otros v. Cámara Representantes, 171 DPR 789, 810 (2007); Berríos Martínez v. Gobernador II, 137 DPR 195, 201 (1994). Lo inverso, legislar contra lo que dispone la Constitución, no puede prevalecer. Sin embargo, el Hon. Pierluisi Urrutia argumenta que la Ley Núm. 7-2005 le permite permanecer en el cargo de Gobernador solo porque había tomado posesión del cargo de Secretario de Estado mientras la Asamblea Legislativa estaba en receso. Aunque el Gobernador saliente envió su nominación a una Sesión Extraordinaria que él citó, el Secretario de Estado nominado entiende que la cámara legislativa que no haya actuado al crearse la vacante en la posición de Gobernador -en este caso, el

Senado- perdió jurisdicción para considerar su nombramiento como Secretario, pues como parte de los deberes y facultades de su cargo como Secretario advino a ser Gobernador y esa posición no está sujeta a confirmación senatorial.

No podemos avalar esta posición. De entrada, reconocemos la viabilidad jurídica de que él juramentara como Gobernador bajo la premisa de que toda ley se presume constitucional y válida hasta que se determine lo contrario, y que la enmienda hecha por la Ley Núm. 7-2005 no había sido declarada inconstitucional. Véanse, E.L.A. v. Northwestern Selecta, 185 DPR 40, 71 (2012); Aut. Carreteras v. 8,554,741 m/c I, 172 DPR 278, 298 (2007); Cerame-Vivas v. Srio. de Salud, 99 DPR 45, 51 (1970). Lo que no podemos aceptar es la argumentación del Secretario nominado para aseverar que el Senado perdió su autoridad para considerar su nominación como Secretario de Estado, porque como él había tomado posesión del cargo mientras las cámaras legislativas estaban en receso, se podía adelantar a juramentar como Primer Ejecutivo al concretarse la vacante en ese cargo.

El Gobernador de Puerto Rico está facultado a hacer nombramientos mientras la Asamblea Legislativa no esté en sesión. Art. IV, Sec. 1, Const. PR, 1 LPRA. Como excepción a la regla general, el funcionario así designado puede tomar posesión de su cargo inmediatamente y ejercer todas las funciones de su cargo antes de que la legislatura

sesione. Estos nombramientos "satisfacen una muy legítima necesidad operacional del Estado. Velan porque no medie interrupción en el servicio público entre tanto se alcanza ese consenso que la Constitución requiere entre los poderes políticos con respecto a ciertos nombramientos". Hernández Agosto v. López Nieves, supra, pág. 621.

Ahora bien, nuestro sistema constitucional es uno de pesos y contrapesos, "con el propósito de generar un equilibrio dinámico entre poderes coordinados y de igual rango, y evitar así que ninguno de éstos amplíe su autoridad a expensas de otro". (Escolio omitido.). Misión Ind. P.R. v. J.P., 146 DPR 64, 69 (1998). Para mantener ese balance, la juramentación de un Gobernador en propiedad para completar el término para el que otra persona fue elegida, requiere la participación de los legisladores electos, en representación del Pueblo de Puerto Rico. Este principio legal no está en disputa, como lo demuestra la actuación responsable del Gobernador saliente de citar una sesión extraordinaria para que ambas cámaras legislativas consideraran el nombramiento de receso del Secretario de Estado. Esa convocatoria no hizo más que reconocer que un nombramiento de receso no puede ser "razón para trastocar el fino balance de pesos y contrapesos que sostiene a nuestra estructura política". Hernández Agosto v. López Nieves, supra, pág. 622. Sometido el nombramiento de receso a ambas cámaras legislativas, "la Rama Ejecutiva no puede despojar a la Rama Legislativa del poder de confirmación

que le confieren la Constitución y las leyes". Íd., pág. 620. La postura del Secretario de Estado nominado en su alegato ignora ese precedente de este Tribunal y la importancia de esa convocatoria a sesión extraordinaria.

La exclusión del proceso de una o de ambas cámaras legislativas es precisamente el esquema que la Convención Constituyente quiso evitar cuando requirió que el Secretario de Estado fuera confirmado tanto por el Senado como por la Cámara de Representantes. Si tanto Cámara como Senado son excluidos del proceso se vulnera la legitimidad democrática del nuevo Gobernador. Este estaría en funciones sin el aval directo o indirecto del Pueblo, pues nadie le eligió ni se le ratificó previamente como Secretario de Estado.

La norma constitucional no se establece por la conveniencia del momento. "'Convenience and efficiency,' […] 'are not the primary objectives' of our constitutional framework". N.L.R.B. v. Noel Canning, 573 US 513, 579 (2014), opinión concurrente del Juez Asociado Scalia. La norma imperante la estableció el Pueblo de Puerto Rico en 1952, cuando ratificó nuestra carta magna, con el aval del Congreso. Por lo tanto, la manera de resolver esta situación y traer el sosiego que Puerto Rico merece es ateniéndonos todos al mandato que nuestro Pueblo fijó en su Constitución. El deber de este Tribunal es decir cuál es el Derecho aplicable cuando surge un conflicto legal entre las Ramas Ejecutiva y Legislativa. Acevedo Vilá v. Meléndez,

supra, pág. 883. Somos el último intérprete de la Constitución y las leyes. Íd.; Colón Cortés v. Pesquera, 150 DPR 724, 750 (2000). Como tal, no podemos cambiar las reglas para favorecer a alguien o para dar por concluido un proceso porque un sector esté cansado de la discusión o porque alguien, no importa quién ni cómo, ocupa La Fortaleza. Con ello no terminaríamos la controversia; lo que extinguiríamos sería la democracia.

Como regla general, evitamos decidir una cuestión constitucional si no es necesario hacerlo. Sin embargo, esa norma de autolimitación no nos faculta a reescribir un estatuto. E.L.A. v. Aguayo, 80 DPR 552, 597-598 (1958). Si el texto no permite una interpretación que salve la ley, tenemos que declararla inconstitucional. Brau, Linares v. ELA et als., 190 DPR 315, 338 (2014).

Resolvemos, pues, que el Secretario de Estado no puede ser Gobernador por el resto del cuatrienio sin ser antes el Secretario de Estado en propiedad. Para serlo, necesita el aval de **ambas** cámaras legislativas. El nombramiento del Secretario fue ratificado por la Cámara de Representantes, pero no por el Senado. En esas circunstancias, no puede ocupar la Gobernación. La enmienda de la Ley Núm. 7-2005 a la ley original de 1952, que exceptúa al Secretario de Estado del requisito de confirmación para ocupar en propiedad la vacante en el puesto de Gobernador, es inconstitucional. Contraviene la Sec. 5 del Art. IV de la Constitución, que establece que la confirmación del

Secretario de Estado por ambas cámaras legislativas es indispensable para activar la Sec. 7 del mismo Art. IV.

Cabe destacar que la Ley Núm.7-2005 no cuenta con una cláusula de separabilidad. No obstante, en el pasado establecimos las reglas para determinar si un estatuto con defectos constitucionales es total o parcialmente nulo. Al respecto, hemos dicho que no es decisivo o indispensable que un estatuto cuente con una cláusula de separabilidad. Tugwell, Gobernador v. Corte, 64 DPR 220, 229 (1944). En otras palabras, hemos expresado que la nulidad de una parte de un estatuto no afectará el remanente, si las disposiciones válidas son capaces de que se les dé efecto legal por sí solas, y si la Asamblea Legislativa hubiera tenido la intención de que existieran sin las disposiciones inválidas. Misión Ind. P.R. v. J.P., supra, pág. 113; Berríos Martínez v. Gobernador III, 137 DPR 195, 224 (1994); Tugwell, Gobernador v. Corte, supra, págs. 226-230. Véanse, también, Blanchette v. Connecticut General Ins. Corporations, 419 US 102, 136 (1974); Williams v. Standard Oil Co., 278 US 235, 241-243 (1929); Dorchy v. State of Kansas, 264 US 286, 289-291 (1924). Así pues, el resto de la Ley Núm. 7 de 24 de julio de 1952, según enmendada en 2005, supra, permanece en vigor, incluyendo el orden estatuido para suceder al Gobernador.

En fin, decretada la inconstitucionalidad de la parte pertinente de la Ley Núm. 7-2005, también lo es la juramentación del Secretario como Gobernador. No podía

darse sin el aval de ambas cámaras legislativas a la posición de Secretario de Estado, pues ese requisito es predicado indispensable para ocupar el cargo de Gobernador por lo que resta del término para el que el Gobernador saliente fue elegido. En última instancia, la Constitución ordena que sean los legisladores de ambas cámaras, electos por el Pueblo de Puerto Rico, quienes confirmen o rechacen al Secretario de Estado nominado. Ese requisito constitucional no se puede dejar sin efecto por el mero transcurso del tiempo.

V

Por todo lo expuesto, resolvemos unánimemente que la enmienda de la Ley Núm. 7-2005 al Art. 1 de la Ley Núm. 7 de 24 de julio de 1952, 3 LPRA sec. 8, para relevar al Secretario de Estado del requisito de confirmación para ocupar en propiedad la vacante en el puesto de Gobernador, es inconstitucional. Por consiguiente, aunque la juramentación del Secretario de Estado como Gobernador en propiedad, sin el aval del Senado, se hizo al amparo de la ley vigente entonces, el decreto de inconstitucionalidad que en este momento emitimos respecto a esa parte de la ley produce el resultado de que la toma de posesión del cargo de Gobernador fue inconstitucional. Por ende, el Hon. Pedro R. Pierluisi Urrutia no puede continuar en el cargo de Gobernador a partir del momento en que esta Opinión y Sentencia sea efectiva.

El resto de la Ley Núm. 7 de 24 de julio de 1952, según enmendada por la Ley Núm. 7-2005, 3 LPRA sec. 8 et seq., no está en disputa y permanece en vigor, incluyendo el orden estatuido para suceder al Gobernador cuando ocurre una vacante. Art 1, supra. Por ende, la Rama Ejecutiva deberá proceder a aplicar esa disposición de ley, para cubrir la vacante de Gobernador de Puerto Rico.

Para garantizar una sucesión ordenada en la posición de Gobernador, este dictamen será efectivo hoy, a las 5:00 de la tarde. Al amparo de la Regla 50 de nuestro Reglamento, 4 LPRA Ap. XXI-B, se acorta hasta esa hora los términos de la Regla 45, íd., para solicitar reconsideración.

Se dictará Sentencia de conformidad.


                              Rafael L. Martínez Torres
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 |

SENTENCIA

En San Juan, Puerto Rico, a 7 de agosto de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, resolvemos unánimemente que la enmienda de la Ley Núm. 7-2005 al Art. 1 de la Ley Núm. 7 de 24 de julio de 1952, 3 LPRA sec. 8, para relevar al Secretario de Estado del requisito de confirmación para ocupar en propiedad la vacante en el puesto de Gobernador, es inconstitucional. Por consiguiente, aunque la juramentación del Secretario de Estado como Gobernador en propiedad, sin el aval del Senado, se hizo al amparo de la ley vigente entonces, el decreto de inconstitucionalidad que en este momento emitimos respecto a esa parte de la ley produce el resultado de que la toma de posesión del cargo de Gobernador fue inconstitucional. Por ende, el Hon. Pedro R. Pierluisi Urrutia no puede continuar en el cargo de Gobernador a partir del momento en que esta Opinión y Sentencia sea efectiva.

El resto de la Ley Núm. 7 de 24 de julio de 1952, según enmendada por la Ley Núm. 7-2005, 3 LPRA sec. 8 et seq., no está en disputa y permanece en vigor, incluyendo el orden estatuido para suceder al Gobernador cuando ocurre una vacante. Art. 1, supra. Por ende, la Rama Ejecutiva deberá

proceder a aplicar esa disposición de ley, para cubrir la vacante de Gobernador de Puerto Rico.

Para garantizar una sucesión ordenada en la posición de Gobernador, este dictamen será efectivo hoy, a las 5:00 de la tarde. Al amparo de la Regla 50 de nuestro Reglamento, 4 LPRA Ap. XXI-B, se acorta hasta esa hora los términos de la Regla 45, íd., para solicitar reconsideración.

Adelántese por teléfono y notifíquese inmediatamente.

Lo acordó y ordena el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez, la Jueza Asociada señora Pabón Charneco, y los Jueces Asociados señor Kolthoff Caraballo, señor Rivera García, señor Feliberti Cintrón, señor Estrella Martínez y señor Colón Pérez, emitieron Opiniones particulares de Conformidad.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>     Peticionario<br><br>          v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>     Recurridos | CT-2019-0004 |

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión de Conformidad

> La constitución es una limitación a los poderes que se han de delegar en el gobierno, que se divide en el poder ejecutivo, el poder legislativo y el poder judicial; <u>y justamente la limitación consiste en no permitir que la [Asamblea] Legislativa o que el poder ejecutivo o el poder judicial puedan, en una forma impremeditada, actuar en forma lesiva a los intereses del pueblo[…]</u>. Luis A. Ferré, Delegado de la Convención Constituyente.[10]

En San Juan, Puerto Rico, a 7 de agosto de 2019.

Puerto Rico vive la coyuntura más importante de su historia democrática. El verano del 2019 se recordará como el momento sin precedente en el que los puertorriqueños -de todas las edades, ideologías, trasfondos y credos- se lanzaron a la calle a exigir más de su gobierno. Ante la

mirada atenta del mundo entero, se gestó un movimiento pacífico que provocó la renuncia del Gobernador y donde prevaleció la voluntad del Pueblo como fuente del poder público.

El verano del 19 también se recordará como aquel en el que el Poder Judicial, por disposición unánime de los miembros de su máximo foro, asumió con entereza y gallardía su rol como el intérprete final y defensor máximo de la Constitución del Estado Libre Asociado de Puerto Rico.

El rol de los Jueces y las Juezas de este Tribunal no consiste en expresar en sus determinaciones la voluntad popular sino en fijar los límites a los posibles extravíos de quienes juraron dar consecución a esta voluntad. No es nuestro deber escoger o decidir quién gobernará en los próximos meses. Como un Poder Judicial independiente, nuestra obligación es interpretar y dar cumplimiento fiel a nuestra Constitución, la cual trazó de forma prístina el camino para atender esta polémica.

"Nuestra Constitución, cuerpo de normas supremas que se impone a la legislación ordinaria (…)" nos otorga poderes amplios para examinar las posibles actuaciones inconstitucionales del Poder Legislativo o Ejecutivo al amparo de la relación dinámica de la separación de poderes. P.P.D. v. Gobernador I, 139 DPR 643, 685 (1995). Así, como intérprete máximo de la Constitución, corresponde a

---

[10] 2 Diario de Sesiones de la Convención Constituyente 1079 (1961) (Énfasis suplido).

este Tribunal la responsabilidad indelegable de velar por que las tres Ramas de Gobierno que componen el Estado Libre Asociado de Puerto Rico —la Ejecutiva, Legislativa y Judicial— actúen dentro del marco de los poderes que el Pueblo les delegó.

La controversia que hoy une en una sola voz a los integrantes de esta Curia no pretende colocar al Poder Judicial en la posición del soberano. Esta posición corresponde únicamente al Pueblo de Puerto Rico. Con el propósito firme de honrar nuestro juramento e imprimirle a nuestro estado de Derecho claridad y certeza, hoy interpretamos la Constitución y las leyes aplicables para determinar que un Secretario de Estado designado al cargo mediante un nombramiento de receso no puede suceder al cargo de Gobernador tras surgir una vacante permanente sin antes ser confirmado por ambos cuerpos legislativos.

En particular, no hay controversia en cuanto a que la Constitución confiere al Secretario de Estado la facultad de fungir como primero en línea en el orden de sucesión al cargo de Gobernador cuando se produce una vacante absoluta en el mismo.[11] Sin embargo, una lectura del Diario de Sesiones revela que los constituyentes exigieron que el primer sucesor al cargo de la Gobernación fuese un funcionario que contara con el aval de ambas cámaras legislativas: el Senado y la Cámara de Representantes. Ello, con el propósito de mitigar el déficit democrático que surge de la designación, como

primer sucesor, de un funcionario no electo escogido por el propio Gobernador.[12] Aunque los constituyentes discutieron ampliamente la posibilidad de crear el cargo de vicegobernador -que sería electo por el pueblo mediante votación directa- dicha propuesta se descartó y se optó por otorgar la facultad de suceder al Gobernador a un Secretario de Estado. Claro está, con la garantía de que antes obtendría el consejo y consentimiento de ambas cámaras.[13]

Por lo tanto, no podemos obviar que el resultado concreto de eximir a un Secretario de Estado de obtener la aprobación de la Asamblea Legislativa sería validar prospectivamente que Puerto Rico esté gobernado por una persona que el Pueblo no eligió en las urnas, ni avaló a través de sus representantes electos. Esto sería patentemente contrario al texto, al espíritu y a la intención clara de los constituyentes al establecer nuestra forma de gobierno democrático.

En consecuencia, resulta inevitable concluir que la Ley Núm. 7 de 2 de mayo de 2005 -en tanto exime al Secretario de Estado de ser confirmado por ambas Cámaras legislativas para asumir el cargo de Gobernador tras una vacante- es inconstitucional. Por tanto, conforme a lo resuelto en la Opinión del Tribunal, la toma de posesión del cargo de Gobernador que realizó el Lcdo. Pedro Pierluisi Urrutia es nula. De esta forma, validamos la sabiduría de aquellos que

---

[11] Const. ELA, art. VI, sec. 7.
[12] Diario de Sesiones, supra, T. 3, págs. 2314-2316.

en su día, con estudio sosegado, debate profundo y amplio sentido de responsabilidad, forjaron la Constitución que hoy nos da el rumbo para atender la controversia trabada entre el Poder Ejecutivo y el Legislativo.

En nuestro ordenamiento, nadie -ni siquiera el Estado- está por encima de la ley. Puerto Rico reclama que se respete la Constitución, las leyes y los derechos, así como las garantías que nuestro sistema jurídico concede y reconoce a todas las personas. Hoy este Tribunal vindica su función como su defensor máximo. En reconocimiento de los valores que inspiraron su diseño y del texto claro según se aprobó, este Tribunal no aplicará una ley que contraviene el postulado básico sobre el cual los constituyentes edificaron nuestra ley fundamental: que la legitimidad de nuestro gobierno depende del consentimiento de los gobernados, es decir, del pueblo puertorriqueño.

                              Maite D. Oronoz Rodríguez
                                 Jueza Presidenta

---

[13] Íd., pág. 2312.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario en Certificación<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico Juramentado<br><br>Recurridos | **Núm.** CT-2019-0004 |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de agosto de 2019

> La garantía de esta constitución, repito, ha de ser la opinión alerta e informada y consciente de alta democracia, que ha podido desarrollar en su largo esfuerzo de lucha el pueblo de Puerto Rico. Ningunas palabras escritas, ningún documento, ningún papel con tinta, podrá definitivamente ser el escudo y ser la protección de nuestros derechos. Lo será el tipo y la calidad de alta democracia que nosotros desarrollemos. Dada esa alta calidad de democracia que tenemos y que seguiremos desarrollando, ésa es la garantía máxima. -José Trías Monge.[14]

---

[14] *Diario de Sesiones de la Convención Constituyente*, en adelante Diario de Sesiones, versión digital *disponible en*

Durante las últimas semanas, hemos sido testigos, nosotros y el Mundo, de la vitalidad democrática de nuestros conciudadanos. Cientos de miles de puertorriqueños se tiraron a las calles a ejercer pacíficamente, con creatividad y dignidad, su derecho a expresarse libremente conforme a los derechos que les garantiza la Constitución del Estado Libre Asociado de Puerto Rico. De esta manera, hicieron constar su repudio a la corrupción, al insulto, a la inmadurez, al mal gobierno y los malos gobernantes y a la política de siempre. En ese ejercicio democrático, el Pueblo de Puerto Rico revocó en las calles, el mandato otorgado en las urnas al gobernador, Dr. Ricardo Rosselló Nevares.

Hoy tenemos que evaluar si el traspaso de mando en la Gobernación se efectuó acorde con lo que ordena la Constitución. Con nuestro dictamen, retornamos al cauce constitucional. Corresponde ahora a los poderes políticos, es decir, al Poder Ejecutivo y al Poder Legislativo, evitar un nuevo descarrilamiento. El País no espera menos.

## I.

Luego de dos semanas de manifestaciones en repudio a su incumbencia, la renuncia del primer mandatario se anunció por vía de la red social *Facebook,* al filo de la medianoche del miércoles 24 de julio de 2019. Ésta sería efectiva el 2 de agosto de 2019. A partir de ese momento, comenzó la discusión pública sobre quién asumiría las

---

http://www.oslpr.org/v2/PDFS/DiarioConvencionConstituyente.pdf, en la pág. 2293.

riendas del gobierno, ya que la persona llamada constitucionalmente a asumir esas responsabilidades, a saber, el Secretario de Estado, había renunciado previamente a su cargo. Antes bien, conforme dispone la Ley Núm. 7 de 1952, según enmendada, quedaba claro que la próxima persona en la línea de sucesión era la Secretaria de Justicia, la Lcda. Wanda Vázquez Garced. Ésta sin embargo, en distintas instancias, se mostró dubitante sobre la deseabilidad de ocupar el cargo de Gobernadora de Puerto Rico.

Así las cosas, el miércoles 31 de julio de 2019, el Gobernador Rosselló Nevares anunció la nominación del Lcdo. Pedro Pierluisi Urrutia como Secretario de Estado. En este anuncio, hecho público a través de otra plataforma digital (*Twitter*), el Gobernador informó que convocaría para el día siguiente una Sesión Extraordinaria de la Asamblea Legislativa. Posteriormente, se informó que la sesión estaba pautada para el jueves 1 de agosto de 2019 a las 11:00 a.m. En ese momento, en el anuncio público se indicó que "la designación formal del licenciado Pierluisi Urrutia fue entregada en la Cámara y el Senado, con miras a que puedan comenzar a evaluar el nombramiento". Ese mismo día, el licenciado Pierluisi Urrutia juramentó a su puesto como Secretario de Estado en receso.

En respuesta a la convocatoria realizada por el Gobernador Rosselló Nevares, ambas Cámaras se reunieron el jueves 1 de agosto. En ese momento el Senado, en vez de considerar el nombramiento que les fue remitido, una

mayoría de ese cuerpo decidió posponer el trámite para una fecha posterior a la efectividad de la renuncia del Gobernador. Así, la vista pública para considerar y evaluar la nominación del licenciado Pierluisi Urrutia como Secretario de Estado quedó pautada para el miércoles 7 de agosto de 2019. Por otro lado, la Cámara de Representantes celebró su vista pública para considerar el nombramiento del licenciado Pierluisi Urrutia y, con el mínimo de votos necesarios para ello, confirmó su nominación al cargo de Secretario de Estado.

A las 5:00 p.m. del viernes 2 de agosto, se hizo efectiva la renuncia del Gobernador y el licenciado Pierluisi Urrutia juramentó a ese cargo en una residencia privada poco después de las 5 de la tarde.[15] Justo después, se dirigió al País mediante conferencia de prensa. En ésta, anunció que se sometería a los rigores de una evaluación senatorial y que, de no prevalecer, renunciaría a la gobernación y la licenciada Vázquez Garced procedería a ser la gobernadora. Específicamente, el licenciado Pierluisi Urrutia expresó lo siguiente: "Lo que va a suceder, en términos prácticos, es que el Senado de Puerto Rico tendrá la oportunidad de ratificar mi incumbencia". A preguntas de la prensa sobre qué ocurriría si no era confirmado por el Senado, el licenciado Pierluisi Urrutia ripostó lo siguiente: "si no ratifican mi incumbencia, entonces la

---

[15] Ello, luego de que el gobernador Rosselló González publicara en *Twitter* un comunicado amparándose en la Ley Núm. 7 e indicando que se trataba de un nombramiento de

Secretaria de Justicia, con quien yo me he comunicado, está en plena disposición de asumir el cargo de gobernadora".

Ante la inminente incertidumbre generada por estas expresiones, múltiples integrantes de la comunidad jurídica se expresaron en torno a la constitucionalidad de la juramentación del licenciado Pierluisi Urrutia a la gobernación. Asimismo, el Senado recalendarizó la vista pautada para el miércoles 7 de agosto, para el lunes 5 de agosto de 2019 a las 11:00 a.m. Durante la tarde del domingo 4 de agosto, el licenciado Pierluisi Urrutia comunicó a los medios noticiosos que el Senado ya no estaba en posición de pasar juicio o votar sobre su designación como Secretario de Estado. Según explicó, al haber sido nombrado en receso como Secretario de Estado, estaba en plena posesión del cargo de gobernador. Indicó que la Constitución colocaba al Secretario de Estado primero en la línea de sucesión y que había una ley que establecía que era ese funcionario, haya sido o no confirmado, quien estaba llamado a sustituir al gobernador. Por tal razón, indicó que no asistiría a la vista pautada por el Senado. En una especie de nota aclaratoria posterior, el licenciado Pierluisi Urrutia editorializó sus expresiones y sostuvo que su súbito cambio de postura no constituía un "reversazo". A esos efectos explicó que "debido a que ya juramenté al cargo de gobernador, en este momento no existe

_____

receso que, además, cumplía con el Estado de Derecho dispuesto en la Ley Núm. 7.

secretario del Departamento de Estado que esté sujeto al consejo y consentimiento del Senado de Puerto Rico".

El domingo 4 de agosto de 2019, en horas de la noche, el Senado de Puerto Rico, representado por su Presidente, el Lic. Thomas Rivera Schatz, presentó electrónicamente una demanda de sentencia declaratoria e *injunction* preliminar y permanente ante el Tribunal de Primera Instancia. Al otro día, en horas de la mañana, el Senado presentó un recurso de certificación intrajurisdiccional ante este Tribunal, acompañado por una Moción urgente para que se paralicen los procedimientos. Expedido el auto y paralizados los procedimientos en instancia, ordenamos a las partes presentar, de forma simultánea y dentro de un término de 24 horas, sus respectivos alegatos. Evaluados los argumentos de las partes, este Tribual por unanimidad decreta la inconstitucionalidad de la segunda sección de la Ley Núm. 7 de 1952, según enmendada, que se alega exime al Secretario de Estado de recibir el consejo y consentimiento del Senado y la Cámara de Representantes como condición previa a poder juramentar al cargo de gobernador.

Por entender que la juramentación del licenciado Pierluisi Urrutia al cargo de gobernador constituyó una actuación inconstitucional, estoy conforme con la Opinión que antecede. Al considerar la importancia que reviste la controversia ante nuestra consideración y su efecto sobre nuestro entorno público, procedo a exponer en detalle las razones en las cuales se fundamenta mi conformidad con el proceder del Tribunal.

**II.**

Más allá de una simple interpretación estatutaria, la controversia planteada exige un análisis cabal e integrado de las disposiciones constitucionales relacionadas con el esquema de sucesión al cargo de gobernador, y la interacción entre la Rama Ejecutiva y la Rama Legislativa en lo que se refiere a ese orden sucesorio en atención al poder de nombramiento del gobernador, según éste se delimita en nuestra Constitución. Este análisis – necesariamente- ha de estar enmarcado en los principios que sirven de base a ese documento, a saber: la soberanía popular, la representatividad democrática y la separación de poderes.

Previo a evaluar e interpretar individualmente las disposiciones constitucionales y estatuarias aplicables a los hechos que originan el presente pleito, resulta ineludible matizar la dificultad que supondría emplear una metodología adjudicativa en abstracción de los principios cardinales que subyacen nuestro sistema constitucional de gobierno. Principios que, en teoría, resultan suficientes para disponer de la controversia planteada. El desenlace de los eventos acaecidos durante las últimas semanas ha servido el propósito de realzar la vitalidad democrática de nuestra Constitución, así como la sabiduría de sus constituyentes. Las consignas plasmadas en el preámbulo de nuestra Constitución hoy, más que nunca, cobran especial relevancia. Mediante la Opinión que se certifica durante el día de hoy, este Tribunal afianza esas consignas y reafirma

a la ciudadanía que el pueblo de Puerto Rico está organizado políticamente "sobre una base plenamente democrática"; "[q]ue el sistema democrático es fundamental para la vida de la comunidad puertorriqueña"; que "la voluntad del pueblo es la fuente del poder público", y que "la aspiración a continuamente enriquecer nuestro acervo democrático" ha de permear todas nuestras instituciones.

Ello es así porque, conforme al texto constitucional, el poder político en nuestro sistema de gobierno emana del pueblo y ha de ejercerse conforme a su voluntad. Const. P.R. Art. I, sec. 1. La adopción por nuestros constituyentes de una forma republicana de gobierno, además, subordinó a los Poderes legislativo, ejecutivo y judicial "a la soberanía del pueblo de Puerto Rico". *Id.* en la sec. 2. Este régimen de gobierno fundamentado en el republicanismo participativo, la democracia, la representatividad y el balance de poderes informa, forzosamente, la resolución de la controversia ante nuestra consideración. La vacante absoluta en la gobernación, producto de la renuncia del gobernador Rosselló Nevares, nos obliga a dictaminar, como más alto foro del País y máxime intérprete de la Constitución, a quién le corresponde suceder al cargo de gobernador.

La opinión que suscribimos hoy demuestra que, de ninguna manera, hemos asumido esa responsabilidad livianamente o con ligereza, somos conscientes de nuestra impronta en un momento histórico marcado por la inestabilidad política, económica y social. La decisión a

la que unánimemente hemos llegado durante el día de hoy propende justamente a garantizar que, ante tanta incertidumbre, sea la Constitución -y no el perfil de quienes pretenden amparar en ella sus actos- el puntal constante de seguridad y certeza en los principios y valores en los que se asienta nuestra democracia. Después de todo, como dije hace ya casi 15 años al jurar mi cargo, este Tribunal "es el último asidero de la fe de nuestro pueblo en la Justicia".

### III.

Por encontrarnos ante una controversia de índole constitucional novedosa, corresponde evaluar detenidamente y con rigurosidad las disposiciones constitucionales que gobiernan la solución de este caso. Ello, como se dijo, bajo el entendimiento de que la Constitución y las leyes aprobadas al amparo de ésta han de interpretarse en función de los principios que la informan y no en abstracción o a espalda de éstos.

### A.

En lo que concierne al orden sucesorio objeto de la presente controversia, la Constitución contempla, en su Artículo IV, la posibilidad de una vacante absoluta en el cargo de gobernador. Específicamente, en la Sección 7 de ese Artículo se establece lo siguiente:

> Cuando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión.

> La ley dispondrá cuál de los Secretarios de Gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.

Const. P.R., Art. 4, sec. 7.

Según surge de este texto, pues, el Secretario de Estado es el funcionario que ocupa el primer lugar en la estructura sucesoria. La Constitución deja en manos de la legislatura idear un orden sucesorio en la eventualidad de que ambos cargos -el de Gobernador y el de Secretario de Estado- queden vacantes. En cuanto a los secretarios de gobierno a los que se hace referencia en esta sección, la Sección 5 del Artículo IV establece que éstos serán nombrados "con el consejo y consentimiento del Senado". El Secretario de Estado, distinto a los demás secretarios, también requerirá -**por disposición constitucional**- el consejo y consentimiento de la Cámara de Representantes. Deberá, además, reunir los requisitos de edad y residencia que la Sección 3 exige a la persona que ocupe el cargo de gobernador. Esta cláusula constitucional, denominada la cláusula de nombramiento, ha sido objeto de múltiples controversias ante este Tribunal y es ejemplo del delicado balance de pesos y contrapesos que caracteriza la mayoría de las actuaciones de los poderes gubernamentales.

La distinción instituida en la cláusula de nombramiento entre el Sectario de Estado y los demás secretarios que componen el gabinete ejecutivo se justifica puesto que, como se indicó, el Secretario de Estado figura primero en la línea de sucesión en caso de vacante absoluta en la gobernación. Es más, el Secretario de Estado es el

único funcionario que la Constitución contempla como sucesor del gobernador. Los demás sucesores, según se indicó, serán designados por legislación y ascenderán a la gobernación -al igual que el Secretario de Estado y en el mismo orden- tanto en caso de vacante absoluta como transitoria.[16]

Por último, la Sección 9 del Artículo IV contempla un vacío en el orden sucesorio distinto al que se considera en casos de vacante absoluta conforme a lo dispuesto en la Sección 7. Sobre este particular, la Sección 9 ordena lo siguiente:

> Cuando un Gobernador electo no tomase posesión de su cargo, o habiéndolo hecho ocurra una vacante absoluta en el mismo sin que dicho Gobernador haya nombrado un Secretario de Estado o cuando habiéndolo nombrado éste no haya tomado posesión, la Asamblea Legislativa electa, al reunirse en su primera sesión ordinaria, elegirá por mayoría del número total de los miembros que componen cada cámara, un Gobernador y éste desempeñará el cargo hasta que su sucesor sea electo en la siguiente elección general y tome posesión.

*Id.* Art. 4, sec. 9.

---

[16] El esquema sucesorio federal igualmente le exige a cualquier funcionario en la línea de sucesión a la presidencia haber recibido el aval de la Rama Legislativa. Sobre este particular, la *Ley de Sucesión Presidencial de 1947* establece en su Sección (d) el orden de sucesión presidencial. Establecido ese orden, se preceptúa lo siguiente en cuanto a los funcionarios que lo conforman:

Subsection (d) of this section shall apply only to officers appointed, by and with the advice and consent of the Senate, prior to the time of the death, resignation, removal from office, inability, or failure to qualify, of the President pro tempore, and only to officers not under impeachment by the House of Representatives at the time the powers and duties of the office of President devolve upon them.

61 Stat. 380, 3 USC sec. 19.

Este escenario de sucesión -a todas luces atípico-contempla, entre otras cosas, la posibilidad de que un gobernador electo haya nombrado un Secretario de Estado que "no haya tomado posesión" de su cargo al momento en que se produce la vacante absoluta. En esa eventualidad, el Secretario de Estado no sucede al gobernador, sino que le corresponde a la Asamblea Legislativa elegir un sucesor que desempeñe el cargo hasta los siguientes comicios. Distinto al escenario de vacantes simultáneas que contempla la Sección 7, este articulado considera vacantes absolutas que se producen en función de una imposibilidad sobrevenida de que ambos mandatarios -el Gobernador y el Secretario de Estado- puedan tomar posesión de sus respectivos cargos luego de una elección. En otras palabras, estas vacantes han de ocurrir en el tiempo comprendido entre la elección y la toma de posesión.

La estructura sucesoria que establece la Constitución fue el resultado de un examen ponderado de distintos modelos y posibles escenarios por parte de los integrantes de la Convención Constituyente. En primera instancia, se consideró la figura de un vicegobernador electo directamente por el pueblo que fuera el primero en la línea de sucesión, si bien únicamente en casos de vacante absoluta. En ese sentido, los delegados distinguieron entre una ausencia temporal y una permanente y estimaron que el Gobernador debía tener el poder de determinar, en casos de ausencia temporal, quién continuaría su agenda de trabajo sin el riesgo de variaciones significativas a su

política pública. *Véase Diario de Sesiones*, en las págs. 2192-93. Esta distinción entre ausencia temporal y vacante absoluta, a su vez, ocasionó que los constituyentes evaluaran otros modelos sucesorios. Específicamente, se discutió el de los Estados Unidos de América en el que, en casos de ausencia temporal, el Presidente continuaba ejerciendo sus facultades. *Id.*

De las conversaciones entre los constituyentes surge con meridiana claridad que éstos compartían dos preocupaciones: (1) la necesidad de "simplificación y claridad de la estructura en la jerarquía ejecutiva", *Id.* en la pág. 2197, y (2) que fuese "un ciudadano que ha tenido la sanción del voto popular" quien asumiera la gobernación en caso de una vacante. *Id.* en la pág. 2191. En cuanto a esta última, se destacó que el modelo estadounidense plasmado en su Ley de Sucesión posicionaba a funcionarios electos en las primeras dos posiciones de la jerarquía sucesoria, designando al Vicepresidente en primer lugar y al Portavoz de la Cámara de Representantes en el segundo. En cuanto a la conveniencia de adoptar ese modelo, el delegado Figueroa Carreras destacó que no había razón "para no seguir en Puerto Rico este precedente" y propuso incluir en la línea de sucesión al portavoz de la Cámara de Representantes. Para fundamentar su enmienda, subrayó lo siguiente:

> Ninguno de los jefes de departamentos—asumiendo que ése es uno de los funcionarios que fuera a determinar la asamblea legislativa, un jefe de departamento el que hubiera de ocupar la gobernación en caso de la falta del Gobernador y

del Vicegobernador—ninguno de los jefes de departamentos va a pasar por el crisol de la elección pública. El representante que ocupe el cargo de presidente de la Cámara, por poca intervención [que] haya tenido el pueblo en su elección—suponiendo que no sea un representante at large, un representante de distrito—ha tenido por lo menos el que el pueblo de Puerto Rico ha discutido, ha conocido, y ha votado por esa persona para representante a la Cámara; y después en el ejercicio común de la autoridad, todos los representantes lo han exaltado indudablemente por su idoneidad, por su capacidad, y hasta por su lealtad política, al cargo de presidente de la Cámara de Representantes; y nosotros entendemos que estaríamos dándole una categoría igual al precepto en cuanto respecta a que el speaker de la Cámara sea el Gobernador, en ese caso, lo estamos diciendo constitucionalmente y no hay motivo alguno, no hay razón alguna para que no sea así.

*Id.* en la pág. 2191.

A fin de cuentas, la enmienda propuesta fue derrotada, dado que los constituyentes entendieron que, tal y como ocurría en Estados Unidos, la legislatura podía -por ley- designar como segundo sucesor del gobernador a cualquier funcionario electo por el pueblo, como lo era el Portavoz de la Cámara de Representantes. De esa manera quedaba atendida la preocupación sobre la falta de representatividad en los nombramientos de los Secretarios del Ejecutivo y se mantenía la figura del vicegobernador electo. Así, inicialmente, se consideró que el orden sucesorio constitucional estuviera a cargo del vicegobernador, en casos de ausencia permanente y en manos del Secretario que el Gobernador designase en caso de ausencia transitoria. En cuanto a esta dualidad sucesoral, el delegado Jaime Benítez opinó lo siguiente:

Mi criterio es que, establecido el cargo de Vicegobernador y establecida la sustitución del Gobernador en plazos de ausencias temporales, entonces me parece que procede el que en tales ocasiones la sustitución se produzca por el funcionario que ha sido designado por ley y electo, para ejercitar la responsabilidad de sustituir al Gobernador. Podría... aquí hay una cuestión que es importante discernir.

En Estados Unidos, por ejemplo, cuando el gobernador, cuando el presidente o jefe ejecutivo está ausente no se le sustituye por nadie. Por eso digo que en Puerto Rico la práctica es distinta. En Puerto Rico sí se le sustituye cuando está ausente de Puerto Rico. Digo que, sin embargo, si vamos a seguir la práctica de sustituir al Gobernador en ocasión de ausencias temporales y eso es lo que contempla la sección 9, entonces lo propio y procedente me parecería, sería que la persona electa para tales fines ejercitara tal responsabilidad, porque, de lo contrario, tenemos una situación donde habrá tres jefes ejecutivos en cierto sentido: el gobernador, el vicegobernador y el secretario que en ciertos casos ejercita tal responsabilidad, y me parece que para la simplificación y claridad de la estructura en la jerarquía ejecutiva, lo que procede es que al hacerse cualquier sustitución del Gobernador, la haga la persona que se llama Vicegobernador. Me parece una incongruencia el que habiendo un vicegobernador y éste [el Gobernador] se ausente, se le vaya a sustituir, prescindiendo del Vicegobernador.

*Id.* en las págs. 2196-97.

Ciertamente, estas expresiones develan la ingente preocupación de algunos delegados en torno a la falta de representatividad democrática que suponía la delegación del poder ejecutivo a un funcionario no electo, aun cuando ésta se hacía de manera transitoria. De otra parte, al evaluar la utilidad de instituir la figura del vicegobernador, los delegados también consideraron las limitadas responsabilidades y facultades que se reservarían para éste y discutieron como el rol dual Vicegobernador y Presidente

del Senado en casos de ausencia temporera podía trastocar la separación de poderes, por lo que lo procedente era que el Vicegobernador únicamente fungiera como Gobernador en caso de vacante absoluta. *Véase id.* en las págs. 2195-99.

En última instancia, fueron esas consideraciones las que hicieron que se descartara la recomendación de la Comisión de la Rama Ejecutiva de crear el cargo de vicegobernador. En su lugar, se propuso que fuese el Secretario de Estado el que sucediera al gobernador, tanto en caso de ausencia temporal como permanente. Al introducir esta enmienda por primera vez, el delegado Gutiérrez Franqui propuso la siguiente redacción:

> Cuando un gobernador electo no pueda tomar posesión de su cargo o cuando ocurra una vacante en el mismo producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará hasta que su sucesor sea electo y tome posesión. Si la próxima elección general estuviere señalada para celebrarse más de un año después de la fecha de la vacante, se celebrará una elección especial para elegir un gobernador dentro de los 120 días siguientes a la vacante. La ley proveerá para el caso de que una vacante tal ocurra, tanto en el cargo de Gobernador como en el Secretario, y determinará qué funcionario ocupará el cargo de Gobernador.

*Id.* en la pág. 2773.

En esta propuesta inicial no se delimitaron los requisitos o las condiciones que se debían satisfacer para que el Secretario de Estado sucediera a un gobernador. Posteriormente, sin embargo, el señor Gutiérrez Franqui propuso delimitar con mayor especificidad los contornos que

regiría el orden sucesorio y sustituir el texto de la enmienda propuesta anteriormente con el siguiente:

Cuando ocurra una vacante en el cargo de Gobernador, producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión.

La ley proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y Secretario de Estado.

Cuando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones, lo sustituirá mientras dure el impedimento el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo, lo ocupará el secretario de gobierno que se determine por ley.

Cuando por cualquier razón el Gobernador electo no pueda tomar posesión de su cargo, la Asamblea Legislativa electa elegirá un gobernador por mayoría absoluta de cada una de sus cámaras, quien desempeñará el cargo por la totalidad del término y hasta que el próximo Gobernador sea electo en la siguiente elección general y tome posesión.

El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa.

*Id.* en las págs. 2884-85.

En esta formulación de la propuesta, el señor Gutiérrez Franqui sí incluyó el requisito de consejo y consentimiento de ambas cámaras de la Asamblea Legislativa para el nombramiento del Secretario de Estado. En definitiva, la pretensión era subsanar el déficit democrático que suponía la eliminación de un funcionario electo directamente por el

pueblo como primero en la línea de sucesión. Este hecho es evidente en los debates que suscitó la referida enmienda. Específicamente y para atender la preocupación en torno al posible déficit democrático en la figura del Secretario de Estado, el señor Gutiérrez Franqui destacó que éste, "al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta". *Id.* en la pág. 2885.

Inmediatamente después de la lectura de la enmienda propuesta por el señor Gutiérrez Franqui, el señor Mellado propuso que se le añadiera a su texto una exigencia a los efectos de que al Secretario de Estado se le exigieran los mismos requisitos inherentes al cargo de gobernador. Esa enmienda fue acogida. *Id.* en la pág. 2888. El señor Iriarte, por su parte, planteó que la proposición tenía el efecto de sustituir a un funcionario electo por el pueblo por un funcionario no electo. Una vez más, el señor Gutiérrez Franqui recalcó que, si bien no sería electo, su nombramiento requeriría la confirmación de ambas cámaras legislativas. Específicamente, el debate que se suscitó fue el siguiente:

> Sr. IRIARTE: De acuerdo con la enmienda resultará que el Gobernador estará sustituido por un funcionario que no es electo por el pueblo, así lo entiendo. ¿No? No será electo por el pueblo, el Secretario de Estado, sino que será nombrado

por el Gobernador como los demás secretarios del gobierno.

Sr. GUTIERREZ FRANQUI: Con la excepción de que será confirmado por ambas cámaras legislativas.

Sr. IRIARTE: No sería electo directamente por el pueblo. La idea que había era que el vicegobernador fuera electo por el pueblo.

Sr. GUTIERREZ FRANQUI: Esta idea...

Sr. IRIARTE: Y ahora vamos a suprimir al vicegobernador que era electo por el pueblo, que había de sustituirlo.

Sr. GUTIERREZ FRANQUI: Eso no lo dice. El vicegobernador habría de sustituir al Gobernador solamente en caso de vacante permanente y no en caso de vacante temporal.

Sr. IRIARTE: Pero de que entre las funciones de vicegobernador estaría la de sustituir al Gobernador. Sustituirlo en caso de vacante permanente y...

Sr. GUTIERREZ FRANQUI: Eso no lo dice el proyecto.

Sr. IRIARTE: Pero estaba sobrentendido; ésa es la misión de un vicegobernador; y ahora se suprime el vicegobernador que era un candidato electo por el pueblo por un funcionario que habrá de ser nombrado por el mismo Gobernador. Que no me gusta el cambio. Que no me gusta el cambio. Me parece que debíamos crear en la constitución ambos cargos. El cargo de vicegobernador y el de secretario tal y como está. Para que lo sustituya un cargo electo por el pueblo, no uno nombrado por el Gobernador y luego aprobado por la Asamblea Legislativa.

*Id.* en las págs. 2889-90.

Surge de esta discusión que, para el señor Iriarte, aún la concurrencia del consejo y consentimiento de las cámaras legislativas no investía de suficiente representatividad democrática a la persona que sería el sucesor del gobernador en caso de vacante permanente. A pesar de estas objeciones, la enmienda propuesta por el

señor Gutiérrez Franqui, a los efectos de sustituir a un vicegobernador por un Secretario de Estado nombrado por el gobernador con el consejo y consentimiento de la Cámara de Representantes y el Senado como sucesor principal del primer mandatario obtuvo el aval de la mayoría.

Como se indicó, el rechazo a la figura del vicegobernador respondió únicamente a las escasas facultades atribuibles a éste, así como a los problemas de separación de poderes que representaba su posible interinato transitorio en el cargo de gobernador.[17] Las conversaciones entre los constituyentes develan que la inclusión de una cláusula que requiriera al Secretario de Estado ser confirmado por ambas cámaras fue fundamental al momento de considerarlo como el primero en la línea de sucesión. Asimismo, la propuesta de exigirle al Secretario de Estado cumplir con los mismos requisitos de edad y residencia dispuestos para el Gobernador demuestra que, en ese aspecto, quisieron mantener la exigencia previamente acordada para el cargo de vicegobernador.

El texto constitucional actual mantiene casi en su totalidad estructura sucesoria propuesta inicialmente por el señor Gutiérrez Franqui, salvo dos excepciones. El

---

[17] Sobre esto, se expresó lo siguiente:

Entendemos que esta fórmula, evita la creación de un cargo de vicegobernador, con funciones de tiempo y de interés limitadísimo; que pudiera crear la organización constitucional y política dentro del gobierno del Estado Libre Asociado de Puerto Rico, un cargo con mucho nombre, mucho sueldo y casi nada que hacer, lo que hemos considerado indeseable.

*Id.* en la pág. 2886.

requerimiento de que el Secretario de Estado fuese confirmado por la Cámara y el Senado pasó a formar parte de la cláusula de nombramiento. Además, el texto final aprobado, impide que -ante una situación en la que el gobernador no haya juramentado a su cargo o se produzca de forma imprevista una vacante absoluta en éste justo después de su juramentación sin que se haya nombrado o confirmado a un Secretario de Estado- este último ascienda al cargo de gobernador. Esta disposición es reveladora, puesto que refleja mejor que ninguna otra, la inquietud de los constituyentes de que, mediante un orden sucesorio determinado y bajo circunstancias atípicas, pudiese gobernar al País alguien que no contara con el aval de la Rama Legislativa. De ahí que se haga referencia a un Secretario de Estado que no haya tomado posesión de su cargo.

En el caso ante nuestra consideración, la contención principal del Procurador General es que la Constitución no condiciona la sucesión a la gobernación por parte del Secretario de Estado a que éste haya recibido el consejo y consentimiento del Senado al momento en que se produce la vacante absoluta en el cargo de gobernador. Así, sostienen que el texto constitucional no impide que un Secretario de Estado -cuyo nombramiento aún no ha recibido el consejo y consentimiento de las cámaras legislativas- ocupe el cargo de mayor envergadura en la jerarquía ejecutiva. En otras palabras, sostienen que el licenciado Pierluisi Urrutia, como Secretario de Estado, no necesitaba el aval de la Rama

Legislativa para convertirse en el gobernador de un País que repudió tajantemente la permanencia del ejecutivo que lo nombró.

**B.**

Además de hacer alusión a un presunto silencio o ausencia de disposición constitucional que expresamente requiera el aval de ambas cámaras previo a que un Secretario de Estado ascienda al cargo del gobernador, el Procurador General también hace referencia a las enmiendas realizadas en el año 2005 a la *Ley de Sucesión del Gobernador*, Ley Núm. 7 de 1952, según enmendada. Específicamente, aduce que esas enmiendas tuvieron el efecto de eximir al Secretario de Estado del requisito de ratificación que se le exige a los otros funcionarios en la línea de sucesión como condición previa para poder ocupar el cargo de gobernador en caso de una vacante permanente. En lo pertinente, el texto de la Ley Núm. 7, según enmendada, establece el orden de sucesión entre los distintos secretarios del gobierno conforme al mandato constitucional en caso de vacantes simultáneas en los cargos de gobernador y Secretario de Estado. Luego de establecer dicho orden, preceptúa lo siguiente:

> Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; excepto en el caso del Secretario(a) de Estado, salvo lo dispuesto en el Artículo IV Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Deberá además cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Artículo IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión

corresponderá al siguiente en el orden que así los cumpla. Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/o con el requisito de haber sido ratificado su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en este Artículo excepto cuando aplique el Artículo IV Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante.

3 LPRA sec. 8.

En su alegato, el Procurador General arguye que el texto claro de esta legislación exceptúa al Secretario de Estado del requisito de "ocupar su puesto en propiedad" para advenir al ejercicio permanente del cargo del gobernador. El Senado, por su parte, sostiene que, de interpretarse que en efecto la Ley Núm. 7 exime al Secretario de Estado de contar con el aval de las cámaras legislativas para poder advenir gobernador en propiedad, dicha disposición es inconstitucional.

Un examen del historial legislativo de la Ley Núm. 7 apunta a que, en efecto, excluir al Secretario de Estado del requisito de ratificación pudo haber respondido al entendimiento de que la Constitución no imponía tal exigencia, por lo que era improcedente instituirla por la vía legislativa. *Véase* Carta de Sec. de Justicia a Hon. Jennifer González Colón, 8 de febrero de 2005. No obstante, la exposición de motivos de la Ley Núm. 9 apunta a todo lo contrario:

En ese sentido, ya que nuestra Constitución mantiene el orden sucesorio entre funcionarios de confianza del Primer Ejecutivo, que todos estos

funcionarios sean nombrados con el consejo y consentimiento del Senado, **y en el caso del Secretario de Estado que requiere además el de la Cámara de Representantes**, mantiene un elemento de participación del pueblo en el proceso. Es razonable concluir que esta sucesión debe corresponder a funcionarios que ocupen el puesto en propiedad, habiendo sido debidamente ratificados en la legislatura y que cumplan con los requisitos constitucionales de edad y residencia. Sólo en el caso de que ningún Secretario cumpliera con los requisitos anteriormente dispuestos se activará el orden sucesoral obviando los mismos; salvo lo dispuesto en el Artículo IV Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico.

Exposición de Motivos, Ley Núm. 7 de 2 de mayo de 2005 (énfasis nuestro).

El reconocimiento expreso, por parte de la legislatura, de la importancia de la participación de la Rama Legislativa en la confección del orden sucesorio y del requisito adicional de confirmación de la Cámara de Representantes para el Secretario de Estado problematiza cualquier argumento respecto a cómo la intención legislativa fue eximirlo de esa ratificación. Máxime, cuando la oración final se la sección en cuestión le impone el deber, a un nuevo gobernador, de "velar por que el orden sucesorio no quede vacante" exigiendo que haya "nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado" al iniciar su incumbencia. 3 LPRA sec. 8. Ciertamente, este requisito es completamente irreconciliable con la pretensión de que un Secretario de Estado está exento del proceso de ratificación bicameral para poder ser parte del orden de sucesión y, en caso de vacante absoluta, sustituir al gobernador.

En todo caso, eximir al Secretario de Estado de esos requisitos de índole constitucional previo a su juramentación como gobernador en caso de una vacante derrotaría el propósito de la Ley Núm. 7 y el mandato constitucional que exige a la legislatura establecer un orden sucesorio más allá de la figura del Secretario de Estado. Tal y como señala el Senado en su alegato, la propia *Ley para Crear el Cargo de Subsecretario de Estado y Establecer sus Deberes y Funciones,* Ley Núm. 77 de 31 de mayo de 1973, 3 LPRA Sec. 59(a) designa al Subsecretario de Estado como Secretario de Estado interino en caso de vacante al establecer que "en caso de muerte, renuncia o separación del cargo de Secretario de Estado, el Subsecretario de Estado ejercerá todos los deberes y funciones de aquél como Secretario de Estado Interino, mientras dure la vacante".

Es decir, la ley establece que la segunda persona al mando en la Secretaría de Estado pasa a ocupar el cargo interinamente y pasa a sustituir a un Secretario de Estado que fue nombrado por el gobernador con el consejo y consentimiento de las ramas legislativas. Evidentemente, ese funcionario que ocupe la Secretaría de Estado de forma interina no habrá sido confirmado por la Cámara y el Senado, lo que impide que sea parte de la línea sucesoria a pesar de, para todos los efectos y por virtud de ley, se convierte en Secretario de Estado. De entenderse que un Secretario de Estado que no ha sido confirmado puede ascender a la gobernación, la Ley Núm. 7 advendría obsoleta

e inaplicable al presente caso, en tanto y cuanto corresponderá al Secretario de Estado interino y no a otro secretario del gabinete asumir la gobernación.

**C.**

Ante la imposibilidad categórica de que cualquier secretario o funcionario en la línea de sucesión al cargo de gobernador pueda ascender a la gobernación sin contar con el aval de la Rama Legislativa, las teorías legales esgrimidas por el licenciado Pierluisi Urrutia y el Procurador General relacionadas con la naturaleza de los nombramientos en receso son del todo desacertadas. Ello, porque la característica principal de un nombramiento en receso es que el funcionario nombrado no ha sido evaluado por la Rama Legislativa.

En esencia, los demandados plantean en sus respectivos alegatos que, al haber sido nombrado al cargo de Secretario de Estado durante un receso legislativo, el licenciado Pierluisi Urrutia tenía derecho a ejercer su cargo "con todas las facultades, deberes y obligaciones, tal como si hubiese sido nombrado en propiedad". Entre éstas, por supuesto, aducen que se encuentra la de ocupar el primer lugar en la línea de sucesión a la gobernación. Si bien es cierto que un secretario de gobierno, al recibir un nombramiento de receso ostenta todos los poderes del cargo como si lo ocupara en propiedad, existe una diferencia sustantiva entre un incumbente en propiedad y uno en receso. Ello, por lo evidente: el de receso no ha recibido el aval del poder legislativo y de no recibirlo al concluir

la sesión ordinaria próxima a su designación cesará en el cargo. Esa transitoriedad milita en contra de la postura de los demandados porque hace patente la distinción entre quien ostenta un cargo en propiedad y el que los ejerce en receso.

El efecto práctico de aceptar como cierta la aserción propuesta implicaría permitir que un funcionario nombrado en receso que asciende al cargo de la gobernación nunca tenga que enfrentarse a los rigores de un proceso de confirmación. Ello, por razón de que la fecha de expiración ínsita a su nombramiento en receso quedó suspendida indefinidamente al momento en que pasó a ocupar el cargo de Gobernador.[18] El sentido común obliga a concluir que la transitoriedad inherente al cargo de un Secretario de Estado en receso no puede -bajo ningún escenario- conllevar **la permanencia en el cargo de Gobernador.** Si bien el licenciado Pierluisi Urrutia entró en posesión inmediata del cargo de Secretario de Estado al haber sido nombrado

---

[18] En su alegato, el Procurador General cita un segmento de un párrafo del Federalista Núm. 67, de autoría de Alexander Hamilton. Entiendo necesario, sin embargo, citar el referido párrafo en su totalidad, **en tanto y cuanto la oración omitida alude expresamente al elemento temporal que supone la expiración del nombramiento en una fecha cierta:** The ordinary power of appointment is confined to the President and Senate JOINTLY, and can therefore only be exercised during the session of the Senate; but as it would have been improper to oblige this body to be continually in session for the appointment of officers and as vacancies might happen IN THEIR RECESS, which it might be necessary for the public service to fill without delay, the succeeding clause is evidently intended to authorize the President, SINGLY, to make temporary appointments during the recess of the Senate, by granting commissions which shall expire at the end of their next session.

durante un receso legislativo, éste no ostentaba expectativa alguna de permanencia en esa posición. Avalar ese curso de acción conllevaría despojar a la Rama Legislativa del poder de confirmación que le confiere la Constitución. Conviene recordar que, en nuestro ordenamiento constitucional, "[l]a doctrina de separación de poderes y el sistema democrático mismo de gobierno presuponen, en lo que atañe a las facultades compartidas como es la de nombramiento, la búsqueda del consenso, el logro del equilibrio necesario para realizar las tareas del gobierno". *Hernández Agosto v. López Nieves*, 114 DPR 601, págs. 621-22 (1983).

Tal y como reconocen los demandados, y como se indicó anteriormente, el atributo principal de un nombramiento en receso es justamente su temporalidad, puesto que la permanencia del oficial nombrado por el ejecutivo durante el receso está inevitablemente condicionada a la posterior aprobación de la Rama Legislativa. En este caso, el nombramiento en receso del licenciado Pierluisi Urrutia al cargo de Secretario de Estado expiraría al levantarse la siguiente sesión ordinaria o, en la alternativa, al levantarse la sesión extraordinaria convocada por el entonces gobernador Rosselló Nevares, y no cuando éste fuese ascendido al cargo de Gobernador por razón de una vacante absoluta que ya estaba prevista al momento de su nombramiento. Ampararse en la cláusula constitucional de nombramientos en receso para llegar a ese resultado y eludir la confirmación de la Rama Legislativa al cargo de

Secretario de Estado soslayaría la naturaleza y propósito de ese tipo de nombramiento y transgrediría, irremediablemente, la doctrina de separación de poderes que sirve de base a nuestro sistema constitucional de gobierno.

**IV.**

La juramentación del licenciado Pierluisi Urrutia a la gobernación del País sin contar con el aval del Senado no sólo transgrede las nociones más elementales de la democracia representativa en las que se cimienta nuestro sistema republicano de gobierno, sino que, además, es contraria al propio texto de la Constitución y a los acuerdos y debates que se suscitaron en la Convención Constituyente. Las disposiciones constitucionales citadas relacionadas con la sucesión al cargo de gobernador evidencian que el Secretario de Estado, para poder suceder a la gobernación en caso de una vacante absoluta en ese cargo, deberá ocupar su puesto en propiedad, habiendo sido confirmado por ambas cámaras legislativas. Concluir lo contrario implicaría afirmar que el funcionario que ocupa el primer sitial en la línea de sucesión -y el único que expresamente se designa en la Constitución- deberá cumplir con menos requisitos que los funcionarios sobre los cuales tiene primacía en el orden establecido mediante legislación.

Las exigencias adicionales que la propia Constitución le impone al Secretario de Estado, tal y como el consejo y consentimiento de la Cámara de Representantes además del Senado y el cumplimiento con los requisitos de edad y

residencia, evidencian que los constituyentes procuraron que este funcionario fuese representativo de un sector mayor de la ciudadanía y satisficiera requerimientos adicionales a los demás secretarios de gobierno. Ello, evidentemente, ante la posibilidad, ahora consumada, de que pudiera existir una vacante absoluta en el cargo de gobernador y fuese el Secretario de Estado el primero llamado a sucederlo. La noción de que esa primera y única sucesión establecida en la Constitución no está condicionada al consejo y consentimiento de las cámaras legislativas es -a todas luces- errónea y antidemocrática.

Resulta inconcebible que, luego de tanto énfasis en la representatividad inherente a ese nombramiento, los constituyentes hayan previsto que un Secretario de Estado sin confirmar -o peor aún- cuyo nombramiento fuese técnicamente rechazado por el Senado- pudiese ocupar el cargo de gobernador. Una lectura de la Sección 9 de la Constitución apoya aún más esta conclusión, al contemplar un escenario en el que la vacante absoluta se produce en el periodo posterior a la elección "sin que el gobernador haya nombrado un Secretario de Estado o cuando habiéndolo nombrado éste no haya tomado posesión". Const. P.R. Art. IV, sec. 9. En ese caso, según el texto constitucional, el Secretario de Estado está imposibilitado de asumir el cargo de gobernador y corresponderá a la legislatura "al reunirse en su primera sesión ordinaria, elegir[] por mayoría del número total de los miembros que compone cada cámara, un Gobernador [que se] desempeñará el cargo hasta que su

sucesor sea electo en la siguiente elección general y tome posesión". *Id*.

Sin lugar a duda, la descalificación de un Secretario de Estado que no ha tomado posesión de su puesto bajo esas circunstancias evidencia que, en cualquier caso, el consejo y consentimiento del Senado y la Cámara de Representantes son indispensables para que la persona nombrada por el Gobernador como Secretario de Estado tome posesión de su puesto y, consiguientemente, pase a ocupar el primer lugar en la línea sucesoria al cargo de gobernador.

Concluir lo contrario contravendría el diseño constitucional y la doctrina de separación de poderes, puesto que se le reconocería al Ejecutivo un poder de nombramiento absoluto que le permitiría, sin el aval de la Asamblea Legislativa, seleccionar unilateralmente a su sucesor. Ello plantearía un gravísimo problema de separación de poderes. Las circunstancias que resultaron en el presente pleito nos revelan el inminente peligro de reconocer tal potestad. No podemos reconocerle al primer mandatario tales prerrogativas. Tal proceder sería inconstitucional y constituiría una afrenta a nuestra democracia representativa y al sistema de pesos y contrapesos que deriva de la separación de los tres poderes gubernamentales y el delicado balance que ha de existir entre éstos. Por los fundamentos que anteceden, estoy conforme con el dictamen del Tribunal.

**V.**

En un día como hoy solo nos queda rendir tributo a aquellos hombres y a aquella mujer que hace sesenta y siete años nos legaron un documento excelso, cuya impronta nos marcó con claridad y precisión la ruta a seguir para solucionar la crisis política más grave de nuestro tiempo. Nos sirvió, no solo de fuerza estabilizadora sino también, de escudo que protege y lanza que defiende las más nobles aspiraciones del Pueblo de Puerto Rico.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>    Peticionario<br><br>        v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico Juramentado<br><br>    Recurridos | *Certificación*<br><br><br>CT-2019-0004 |

Opinión de conformidad emitida por la Jueza Asociada Señora Pabón Charneco

En San Juan, Puerto Rico, a 7 de agosto de 2019.

Hoy, los que componemos la única Rama de Gobierno no elegida por el Pueblo de Puerto Rico debemos poner a nuestro Pueblo primero y resolver una controversia que las Ramas Políticas – en una posición acomodaticia y amparadas en términos reglamentarios – nos han delegado.[19] Por ello, no seremos indiferentes al mandato constitucional que se nos ha otorgado y a la tan necesitada estabilidad que añora Puerto Rico. Tampoco usaremos como excusa estar en receso o el breve tiempo con el que contamos para claudicar

---

[19] "[L]a función judicial solamente puede ejercerse por [l]a Rama [Judicial] y aquellas funciones no judiciales corresponden a los restantes dos (2) poderes constitucionales". *Rivera Schatz v. ELA y C. Abo. PR II*, 191 DPR 791, 802 (2014); *Colón Cortés v. Pesquera*, 150 DPR 724, 752 (2000).

nuestros deberes,[20] pues como una de las tres Ramas de Gobierno nos debemos al Pueblo ante cualquier otra consideración.

Puerto Rico atraviesa un momento de particular fragilidad política y social. Ante un conflicto que atañe la médula de las funciones de las tres Ramas de Gobierno, todas subordinadas a la soberanía del Pueblo, la Rama Judicial tiene el deber de interpretar la Constitución y las leyes, así como, proveer un foro para dilucidar el conflicto actualmente existente entre el Poder Ejecutivo y el Poder Legislativo.

La Constitución de Puerto Rico, nuestra ley suprema, mediante un concienzudo estudio por parte de la Asamblea Constituyente, ha previsto múltiples escenarios sobre el orden de sucesión para el cargo de Gobernador. De esta forma reconoce la importancia del necesario balance de poderes y del continuo ejercicio de las funciones gubernamentales. La controversia ante nuestra consideración no es la excepción.

A tono con nuestra responsabilidad para con Puerto Rico como intérprete final de la Constitución y por las consideraciones que expresaré a continuación, comparto la determinación a la que llega hoy este Tribunal.

I

---

[20] 4 LPRA Ap. XXI-B R. 4. Véase además, Transcripción certificada de Sesión Extraordinaria de lunes 5 de agosto de 2019 presentada por la

La Sección 4 del Artículo IV de la Constitución de Puerto Rico enumera los deberes, funciones y atribuciones del Gobernador. Entre estos se encuentran las facultades siguientes:

> **Cumplir y hacer cumplir las leyes**.
>
> **Convocar** la Asamblea Legislativa o el Senado a **sesión extraordinaria** cuando a su juicio los intereses públicos así lo requieran.
>
> **Nombrar**, en la forma que se disponga por esta Constitución o por ley, **a todos los funcionarios para cuyo nombramiento esté facultado**. El Gobernador podrá hacer nombramientos cuando la Asamblea Legislativa no esté en sesión. **Todo nombramiento que requiera el consejo y consentimiento del Senado o de ambas cámaras quedará sin efecto al levantarse la siguiente sesión ordinaria**. Art. IV, Sec. 4, Const. PR, LPRA, Tomo I. (Énfasis suplido).

De esta forma, la Constitución dispone que la facultad de nombramiento corresponde al Gobernador de forma compartida con el Poder Legislativo. Esto en consideración a la doctrina de separación de poderes; doctrina que procura funcionar como un sistema de pesos y contrapesos por el que se comparte el poder entre las tres ramas para evitar la acumulación desmedida de poder en una sola de ellas. *ARR, Ex parte*, 187 DPR 835, 852-853 (2013); *Colón Cortés v. Pesquera*, 150 DPR 724, 752 (2000); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 427-428 (1982). Con esto en mente, el poder compartido de nombramiento de los altos funcionarios de gobierno busca alcanzar el necesario equilibrio entre ambas ramas para realizar las tareas de

---

parte peticionaria.

gobierno. *Nogueras v. Hernández Colón*, 127 DPR 638 (1991), *Hernández Agosto v. López Nieves*, 114 DPR 601 (1983).

De particular importancia es el nombramiento del Secretario de Estado, sucesor constitucional del Primer Ejecutivo, para el que la Constitución requiere el nombramiento del Gobernador con el consejo y consentimiento del Senado y la Cámara de Representantes. [21] Art. IV, Sec. 5, Const. PR, LPRA, Tomo I.  Véase además, J. Trías Monge, *Historia Constitucional de Puerto Rico,* 1ra ed., Río Piedras, Ed. Universitaria, 1982, Vol. III, págs. 132-133.

A pesar de que el poder de nombramiento es compartido, **la Constitución de Puerto Rico autoriza al Gobernador a llevar a cabo nombramientos de receso de todos los funcionarios para cuyo nombramiento esté facultado.**  De esta forma, la Constitución previene aquellas situaciones en las que así se requiera con el objetivo de mantener el debido funcionamiento del Estado cuando la Asamblea Legislativa no está en sesión.[22] Así, "los nombramientos de receso, satisfacen una muy legítima necesidad operacional del Estado.  Velan porque no medie interrupción en el servicio público entre tanto se alcanza ese consenso que la Constitución requiere entre los poderes políticos con respecto a ciertos nombramientos". *Hernández Agosto v.*

---

[21] El nombramiento del Secretario de Estado debe cumplir a su vez con los mismos requisitos que se exigen al cargo de Gobernador. Art. IV, Sec. 5, Const. PR, LPRA, Tomo I.

[22] *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 556 (2014)(¨The Recess Appointments Clause responds to a structural difference between the Executive and Legislative Branches: The Executive Branch is perpetually in operation, while the Legislature only acts in intervals separated by recesses. The purpose of the Clause is to allow the Executive to continue operating while the Senate is unavailable.¨).

*López Nieves*, supra, pág. 621. **Sin embargo, para evitar usurpar las prerrogativas del Poder Legislativo, la Constitución le concede a estos nombramientos una vigencia temporera**. Sobre el particular, nuestra Constitución especifica que el nombramiento realizado en receso quedará sin efecto al levantarse la siguiente sesión ordinaria. Esto, pues, y como hemos expresado, "los nombramientos de receso [no] puede[n] ser, sin embargo, razón para trastocar el fino balance de pesos y contrapesos que sostiene a nuestra estructura política". *Hernández Agosto v. López Nieves*, supra, págs. 621-622.

Bajo este andamiaje constitucional, el 31 de julio de 2019 y estando la Asamblea Legislativa en receso, el entonces Gobernador Dr. Ricardo Rosselló Nevares nombró al Lcdo. Pedro Pierluisi Urrutia como Secretario de Estado, quien juramentó al cargo ese mismo día. A su vez, convocó a la Asamblea Legislativa a una sesión extraordinaria para que considerara esta nominación de conformidad con sus facultades. Véase Art. IV, Sec. 4, Const. PR, LPRA, Tomo I. Hasta este punto histórico queda claro que mediante un nombramiento de receso el licenciado Pierluisi Urrutia tomó posesión del cargo de Secretario de Estado y asumió todos los deberes y facultades del mismo a pesar de faltar el consejo y consentimiento del Senado.[23]

El 2 de agosto de 2019, la Cámara de Representantes confirmó la nominación del licenciado Pierluisi Urrutia y estando pendiente su examen por el Senado, se hizo efectiva

la renuncia del entonces Gobernador Ricardo Rosselló Nevares a su cargo. Acto seguido, el Lcdo. Pedro Pierluisi Urrutia juramentó como Gobernador de Puerto Rico. El lunes 5 de agosto de 2019 cerró "sine die" la Sesión Extraordinaria sin considerar la nominación.

Nuestra Constitución nuevamente nos ilumina al respecto y expresa en la Sección 7 del Artículo IV, supra, que:

> Cuando ocurra una vacante en el cargo de Gobernador producida por muerte, **renuncia**, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, **dicho cargo pasará al Secretario de Estado**, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. La ley dispondrá cuál de los Secretarios de Gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.[24]

Por lo tanto, al hacerse efectiva la renuncia del entonces Gobernador Ricardo Rosselló Nevares, y habiéndose previamente nombrado en receso y tomado posesión un nuevo Secretario de Estado, este último pasó a ocupar el cargo de Gobernador. **Su juramentación y ocupación del cargo de Gobernador, así como cualquier determinación tomada por este en tal función son legítimas.** Como expresáramos, la Constitución de Puerto Rico permite al Gobernador hacer nombramientos cuando la Asamblea Legislativa no esté en sesión, incluyendo aquellos que requieren el consentimiento de ambas cámaras en consideración al sano y continuo

---

[23] *Op. Sec. Just.* Núm. 1985-22.

funcionamiento del Gobierno, tales como el de Secretario de Estado. Dado al cuadro fáctico presentado ante este Tribunal y en una lectura armoniosa de las disposiciones constitucionales aplicables, el Secretario de Estado nombrado en receso o no, debe cumplir con todas las obligaciones de su puesto, entre ellas sustituir al Gobernador en caso de ser necesario.

Las disposiciones de la Constitución "deben ser interpretadas de forma integrada y consistente entre sí". *PIP v. ELA*, 186 DPR 1, 23 (2012). Así, aunque reconocemos el poder de un Gobernador de nombrar en receso a todo funcionario para el que esté facultado con todas las funciones correspondientes a dicho cargo, no podemos perder de vista que el Secretario de Estado tiene la función principal de ser el sucesor constitucional del Primer Ejecutivo, funcionario electo por el Pueblo de Puerto Rico. Por su significativa encomienda se le requirió contar con el consejo y consentimiento de ambos cuerpos. Véase, 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2311-2315 (1961). En vista de ello, debemos armonizar las distintas disposiciones constitucionales sin permitir que de manera liviana se usurpen las prerrogativas del Poder Legislativo ni que se restrinja la facultad del Poder Ejecutivo de hacer nombramientos en receso. Por ello, nos vemos obligados a concluir que la ocupación del cargo de Gobernador por un Secretario de Estado nombrado en receso y

---

[24] En cuanto a ausencias de carácter transitorio, véase Art. IV, Sec. 8, Const. PR, LPRA, Tomo I.

que no cuenta con el consejo y consentimiento del Senado, se encuentra limitado al periodo de tiempo que conlleve el examen de su nominación por dicho Cuerpo o al levantarse la sesión legislativa correspondiente.[25]

## II

Por otro lado, la Constitución de Puerto Rico remite a la ley para el establecimiento del orden de sucesión para el cargo de Gobernador.[26] Así, mediante la Ley Núm. 7 de 24 de julio de 1952, según enmendada, 3 LPRA Sec. 8, se estableció el orden sucesoral entre los Secretarios de Gobierno. Sin embargo, una enmienda incorporada por la Ley Núm. 7-2005, exceptuó al Secretario de Estado de contar con la ratificación de ambos cuerpos legislativos para advenir al ejercicio permanente del cargo de Gobernador. Hoy se impugna su constitucionalidad.

Reiteradamente hemos reconocido que todo estatuto es y se presume constitucional hasta que se determine lo contrario. *ELA v. Northwestern Selecta*, 185 DPR 40, 71(2012); *Aut. Carreteras v. 8,554.741 M/C I*, 172 DPR 278, 298 (2007). Esto, pues "[l]a interpretación inicial que de la Constitución haga otra rama merece deferencia". *CES v. Gobernador I*, 134 DPR 350 (1993). Sin embargo, recae sobre los tribunales la facultad de declarar la inconstitucionalidad de las leyes.

Con ello en mente, comparto la determinación de este Tribunal de que la disposición en cuestión es

---

[25] 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1854 (1961).

inconstitucional. El Poder Ejecutivo no puede menoscabar la facultad del Poder Legislativo de dar su consejo y consentimiento, como tampoco se puede menoscabar la facultad del Gobernador de extender nombramientos de receso. Ahora bien, durante la vigencia de la ley y hasta nuestra declaración de inconstitucionalidad, el Poder Ejecutivo tenía que cumplir y hacer cumplir las leyes,[27] incluyendo el mandato legislativo impuesto por la Ley Núm. 7, supra.

## III

Por los fundamentos que anteceden, comparto la determinación del Tribunal en cuanto al decreto de inconstitucionalidad de la enmienda de la Ley Núm. 7-2005 a la ley original de 1952, que exceptúa al Secretario de Estado del requisito de confirmación para ocupar en propiedad la vacante en el cargo de Gobernador. Toda vez que el Senado no consideró la nominación del Lcdo. Pedro Pierluisi Urrutia este cesó en sus funciones.

Mildred G. Pabón Charneco
Jueza Asociada

---

[26] Véase además, Art. IV, Sec. 9, Const. PR, LPRA, Tomo I.
[27] Art. IV, Sec. 4, Const. PR, LPRA, Tomo I.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 |

Opinión de conformidad emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 7 de agosto de 2019.

**Nuestra Ley Suprema repudia un texto legal que, de su faz y por su resultado, choca clara e inexorablemente con lo que es uno de nuestros más profundos principios democráticos y constitucionales: "un gobierno con el consentimiento de los gobernados".** De eso se trata este caso.

Como nunca en su historia moderna, Puerto Rico sufre tiempos convulsos en el aspecto gubernamental y político. La crisis que ha producido la salida imprevista del jefe de la Rama Ejecutiva y toda la madeja de situaciones que precedieron el evento, han creado incertidumbre y ansiedad en todos los residentes e instituciones públicas y privadas de esta bendita Isla. Por primera vez desde mediados del

siglo pasado, e indefectiblemente por el resto del cuatrienio, la silla del Primer Ejecutivo estará ocupada por alguien que no será el producto de la voluntad directa del Pueblo en las urnas. Ciertamente, el Pueblo necesita calma y seguridad de que las cosas volverán prontamente a estar en orden. Confiemos primero en Dios y en lo que nos ha dicho en su Palabra, provisión que permanece inalterada y serena, como sereno permanece el Cordero de Dios en nuestro escudo, legado de Fernando de Aragón e Isabel de Castilla, "los Católicos": la Isla del Cordero sobre la Biblia. Además, los Padres de nuestra Ley Suprema, nuestra Constitución, hicieron una excelente provisión para situaciones como las que vivimos en el ámbito político y gubernamental en la actualidad.

La controversia que precisamos atender es sencilla, aunque trascendental para la democracia puertorriqueña. ¿Permite la Sección 7 del Art. IV de nuestra Constitución el que un Secretario de Estado sustituya en propiedad al Gobernador, sin haber sido confirmado por ambas Cámaras de la Asamblea Legislativa? O, dicho de una manera más pragmática, ¿permite nuestra Constitución el que un Gobernador saliente determine e instaure, por su sola voluntad y sin dar cuenta a nadie, quién será su sucesor por el período del término que a él le restaba?

La contestación que surge del texto y contexto de nuestra Constitución es que tal contención no es permitida de ninguna manera. Y es que no podría ser de otra forma.

La época en que un monarca establecía bajo su sola voluntad quién sería su sucesor comenzaron a debilitarse con el asalto a la odiosa Cárcel La Bastilla, en Francia, y languideció para finalmente morir como opción válida en el mundo moderno, esto con el establecimiento de la forma republicana de gobierno. Desde entonces, los pueblos han evolucionado a gobiernos más democráticos y representativos de los ciudadanos a quienes gobiernan, siendo su máxima expresión la forma republicana de gobierno que en la actualidad nos cobija. Sí, en el pasado Puerto Rico vivió bajo la monarquía española, pero hoy disfrutamos de un sistema de gobierno que no es perfecto, pero -sin duda- es uno cuyo diseño hace casi imposible las arbitrariedades constantes de un soberano.

I

Los hechos que provocaron la controversia que nos ocupa son sumamente sencillos. El 25 de julio de 2019 el entonces Gobernador de Puerto Rico, Ricardo Rosselló Nevares (Rosselló Nevares), presentó su renuncia como gobernador ante los jefes de las otras ramas constitucionales de gobierno, efectiva el viernes 2 de agosto de 2019. Estando vacante el puesto de Secretario de Estado,[28] el 31 de julio de 2019 Rosselló Nevares nominó como Secretario de Estado al recurrido, Hon. Pedro Pierluisi Urrutia (recurrido Pierluisi Urrutia). Dos días

---

[28] El entonces Secretario de Estado era el Lcdo. Luis G. Rivera Marín, quien había presentado su renuncia efectiva el 30 de julio de 2019.

después, el 2 de agosto de 2019, a las 5:00 p.m., Rosselló Nevares hizo efectiva su renuncia al cargo de Primer Ejecutivo de la Isla. Sin embargo, esa tarde y previo a hacer efectiva su renuncia, Rosselló Nevares anunció al Pueblo -mediante un comunicado de prensa- que "de acuerdo con el Art. 1 de la Ley Núm. 7 de 24 de julio de 1952, según enmendada, el Secretario de Estado [el recurrido Pierluisi Urrutia] ser[ía] juramentado como próximo Gobernador de Puerto Rico". Así, en algún momento pasadas las 5:00 p.m. de ese día, y contando únicamente con la confirmación de la Cámara de Representantes como Secretario de Estado, el recurrido Pierluisi Urrutia juramentó como Gobernador del Estado Libre Asociado de Puerto Rico.

Inconforme con tal actuación, el Presidente del Senado de Puerto Rico, Hon. Thomas Rivera Schatz (peticionario Rivera Schatz), en representación del cuerpo legislativo que preside, presentó ante el Tribunal de Primera Instancia un recurso de Sentencia Declaratoria y solicitud de Injunction Preliminar y Permanente. En éste requería que el foro de instancia dictara una sentencia declaratoria para determinar la nulidad de la juramentación del 2 de agosto de 2019 y la consecuente ocupación del cargo de Gobernador por parte del recurrido Pierluisi Urrutia. Asimismo, solicitó que se ordenara al recurrido Pierluisi Urrutia el "cese y desista de inmediato de continuar ocupando y ejerciendo las funciones de Gobernador de Puerto Rico". Además, el peticionario Rivera Schatz presentó una

solicitud de certificación con el propósito de que esta Curia atendiera el asunto en primera instancia, lo que declaramos con lugar. En consecuencia, ordenamos que se elevaran los autos.

II

## A. La Ley Núm. 7 de 2 de mayo de 2005

El texto legal en el que se fundamentó la juramentación del recurrido Pierluisi Urrutia como Gobernador en propiedad de Puerto Rico surge de una enmienda a la Ley Núm. 7 de 24 de julio de 1952 conocida como la "Ley para proveer el Orden de Sucesión y Sustitución para el Cargo de Gobernador", enmienda aprobada el 2 de mayo de 2005.[29] El texto en específico surge de una parte del Art. 1 de la mencionada ley, el cual señala lo siguiente:

> Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; excepto en el caso del Secretario(a) de Estado […]. (Énfasis suplido).

Es importante señalar que de la Exposición de Motivos o el párrafo introductorio que explica el propósito de esta Ley Núm. 7-2005 (Ley 7 de 2005) en ninguna parte se expone ni se menciona por qué razón se exceptuó al Secretario de

---

[29] 3 LPRA sec. 8.

Estado de tener que ser confirmado por ambas cámaras legislativas en las circunstancias que nos ocupan.[30]

Más aún, resulta interesantemente contradictorio el que, aunque este texto claramente parece exceptuar al Secretario de Estado del requisito constitucional de confirmación al momento que se den las circunstancias descritas en la Sec. 7 del Art. IV, la Exposición de Motivos de la propia ley, en varias instancias, incluye expresiones que contradicen el texto de la propia enmienda. Por ejemplo, la Exposición de Motivos señala en una parte lo siguiente:

> En ese sentido, ya que nuestra Constitución mantiene el orden sucesorio entre funcionarios de confianza del Primer Ejecutivo, que todos estos funcionarios sean nombrados con el consejo y consentimiento del Senado, y en el caso del Secretario de Estado que requiere además el de la Cámara de Representantes, mantiene un elemento de participación del pueblo en el proceso.
>
> Es razonable concluir que esta sucesión debe corresponder a funcionarios que ocupen el puesto en propiedad, habiendo sido debidamente ratificados en la legislatura y que cumplan con los requisitos constitucionales de edad y residencia. (Énfasis suplido).

---

[30] La Sección 5 del Art. IV de la Constitución de Puerto Rico establece lo siguiente:
Sección 5. Nombramiento de secretarios; Consejo de Secretarios.
Para el ejercicio del Poder Ejecutivo el Gobernador estará asistido de Secretarios de Gobierno que nombrará con el consejo y consentimiento del Senado. El nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes, y la persona nombrada deberá reunir los requisitos establecidos en la sección 3 de este Artículo. Los Secretarios de Gobierno constituirán colectivamente un consejo consultivo del Gobernador que se denominará Consejo de Secretarios. (Énfasis suplido). Art. IV, Sec. 5, Const. ELA, LPRA, Tomo 1.

Nótese, entonces, que la propia Exposición de Motivos de la Ley 7 de 2005 reconoce que la Constitución requiere que el Secretario de Estado haya sido confirmado por el Senado y la Cámara de Representantes, y así poder sustituir en propiedad a un gobernador que ya no ocupe el cargo de manera permanente, esto para mantener "un elemento de participación del pueblo en el proceso".

B. El origen del texto en controversia

El texto original de la Ley 7 de 2005 no incluía la expresión "excepto en el caso del Secretario(a) de Estado". Esta expresión fue incluida por una sugerencia del Departamento de Justicia, según se estableció en el Informe de la Cámara de Representantes relacionado al proyecto de ley. En específico, el Informe expresa lo siguiente:

> Segundo, el Departamento de Justicia señaló la preocupación constitucional de que se le impusiera al Secretario de Estado el requisito de haber sido confirmado en su puesto como condición previa para suceder al puesto de Gobernador cuando la Constitución nada dispone al respecto. Según surge del Artículo IV Sección 3 y 5 de la Constitución del Estado Libre Asociado de Puerto Rico el Secretario de Estado deberá cumplir con los requisitos de edad, residencia y ciudadanía, así como el consentimiento de la Cámara y el Senado para su nombramiento. Sin embargo, la Constitución específicamente nada dispone respecto a que el puesto de Secretario de Estado tiene que estarse ocupando en propiedad y que su nombramiento haya sido ratificado por la Cámara y el Senado. A esos efectos el Departamento de Justicia sugirió que se especificara en el proyecto que el requisito de tener que ocupar el puesto en propiedad, habiendo sido ratificado el nombramiento, no aplica a la sucesión de carácter

permanente del Secretario de Estado al cargo de Gobernador bajo la primera oración de la sección 7 del Artículo IV de la Constitución. (Énfasis suplido).

Como vemos, el Departamento de Justicia propuso el texto en controversia, fundamentado en que alegadamente la Constitución "nada dispone respecto a que el puesto de Secretario de Estado tiene que estarse ocupando en propiedad y que su nombramiento haya sido ratificado por la Cámara y el Senado". En otras palabras, en su ponencia, el Departamento de Justicia interpretó que cuando en la Sec. 7 del Art. IV de la Constitución se menciona "Secretario de Estado" el término debe interpretarse como que se refiere o incluye a un "Secretario de Estado que no necesariamente tiene que estar confirmado por ambas Cámaras". Interesantemente, nada en el texto constitucional parece respaldar o, al menos, sugerir que esa debería ser la interpretación correcta. Más bien, el Departamento de Justicia fundamentó su conclusión en la tesis de que si no se prohíbe expresamente ello significa que está permitido, esto es, si no se prohíbe expresamente entonces se permite. No obstante, tendríamos que preguntarnos: ¿por qué no sería igualmente válido decir que debido a que no se permite expresamente entonces estaría prohibido? O sea, que por el hecho de que el texto constitucional no exceptúa expresamente el requisito de confirmación en esta sección entonces debe interpretarse que lo requiere.

Es innegable que este tipo de análisis es muy peligroso, sobre todo tratándose de textos constitucionales, esto porque permite ser extremadamente subjetivo. El problema es que en ocasiones este tipo de hermenéutica jurídica allana un camino sin obstáculos para que la interpretación del texto responda solamente a la intención y propósito, no del que redacta, sino del que lee y pretende un fin en específico. Así, solo es cuestión de cómo cada persona en particular quiera ver "el vaso". Si quiero que se pueda, entonces lo veo "medio lleno", mientras si quiero que no se pueda entonces lo veo "medio vacío". Sin embargo, la realidad es una sola: el vaso está a la mitad y esa es una realidad que no depende de cómo o qué intenciones tiene el que la enfrenta.

**De manera que, en materia de interpretación jurídica, es menester indagar con real esfuerzo y honestidad hasta poder obtener esa realidad textual y contextual que se precisa para poder encontrar la verdadera intención del legislador, esto sin importar si alguien reclama el vaso medio lleno o medio vacío. Es evidente que ese esfuerzo, lamentablemente, no se hizo en este caso.** Esto, porque bastaba con acudir al Diario de Sesiones de la Asamblea Constituyente para encontrar clara evidencia de que cuando la Sec. 7 del Art. IV se refiere a la figura del Secretario de Estado, lo hace desde la concepción de un funcionario que se ha sometido al rigor y ha recibido el refrendo de una mayoría de la Asamblea Legislativa. Dicho de otro

modo, e irónicamente, un esfuerzo mínimo hubiera podido evitar -en cierto grado- una de las crisis políticas y gubernamentales más grandes de nuestra historia moderna. En esto es pertinente el proverbio hebreo con relación a cómo un pequeño detalle puede ocasionar una gran pérdida: "Un poco de levadura leuda toda la masa".[31]

C. El Diario de Sesiones de la Asamblea Constituyente

En el 57mo. día de sesión de la Convención Constituyente, el delegado Víctor Gutiérrez Franqui propuso la eliminación de la Sección 7 del Art. IV del texto propuesto de la Constitución, el cual ordenaba que "al mismo tiempo, en igual forma y por el mismo término que el Gobernador, se [eligiera] un vicegobernador quien [debería] reunir las mismas condiciones que para ser Gobernador se requieren en la sección precedente".[32]    Fue así que el delegado Gutiérrez Franqui propuso que la función del vicegobernador, o sea, gobernar la Isla en ausencia permanente del Gobernador electo, pasara al Secretario de Estado.    Es interesante y pertinente al tema el hecho de que en la propuesta original del delegado Gutiérrez Franqui, la sustitución del Gobernador por el Secretario de Estado no permitía que este último fuera gobernador en propiedad por más de 18 meses. La propuesta original, en lo pertinente, establecía lo siguiente:

---

[31] Gálatas 5:9 Reina-Valera, 1960 (RVR 1960).

[32] Diario de Sesiones de la Convención Constituyente 2311 (1952).

> Cuando un gobernador electo no pueda tomar posesión de su cargo o cuando ocurra una vacante en el mismo producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta dicho cargo pasará al Secretario de Estado quien lo desempeñará hasta que su sucesor sea electo y tome posesión. <u>Si la próxima elección general estuviere señalada para celebrarse más de un año después de la fecha de la vacante se celebrará una elección especial para elegir un gobernador dentro de los ciento veinte días siguientes a la vacante</u>. (Énfasis suplido).[33]

De hecho, esta enmienda fue aprobada con esta última oración, pero posteriormente el propio delegado Gutiérrez Franqui solicitó que se eliminara y propuso el texto como finalmente lo tenemos ahora. El Diario de Sesiones no arroja luz con relación a por qué el delegado Gutiérrez Franqui cambió de parecer, pero ciertamente nos deja ver que en el pensamiento de este delegado de la Asamblea Constituyente yacía la preocupación de que la Isla fuera gobernada **por más de un año por una persona que no hubiera recibido la aprobación mediante el voto directo de la mayoría del Pueblo.**

Por otro lado, en su defensa o explicación de la Sec. 7 del Art. IV, al final de su presentación el delegado Gutiérrez Franqui hizo las siguientes expresiones, las cuales cito *in extenso*, por la claridad y lo ilustrativo de éstas:

> Sr. PRESIDENTE: ¿Ha terminado el señor Delegado de hacer la presentación?
>
> Sr. GUTIERREZ FRANQUI: Un párrafo más, señor Presidente.

---

[33] Diario de Sesiones, *supra*, pág. 2311.

"El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa."

El propósito de la enmienda, señor Presidente y compañeros delegados, es establecer el siguiente sistema o método para la sucesión accidental del Gobernador, o sea, para en casos de que antes de vencido el término para el cual ha sido electo un gobernador, el cargo quede vacante por razones de renuncia, muerte, incapacidad total y permanente o cualquier otra razón que produzca falta absoluta. De acuerdo con la enmienda que acabamos de presentar, al ocurrir tal vacante ocuparía el cargo de Gobernador el Secretario de Estado, quien desempeñaría ese cargo hasta que después de las siguientes elecciones generales fuera electo un gobernador y tomara posesión de su cargo.

Se dispone que el Secretario de Estado, al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta. (Énfasis suplido).[34]

Nótese que, hasta ese momento, la confirmación del puesto de Secretario de Estado no requería la confirmación de ambas cámaras legislativas.[35] Fue como consecuencia de que éste asumiría la responsabilidad de gobernador en propiedad, conforme se dieran las circunstancias que se establecieron en la enmienda, que se enmendó la Sec. 5 del Art. IV para establecer este requisito.

Culminada la presentación del delegado Gutiérrez Franqui, en un momento dado el delegado Celestino Iriarte pide la palabra para, en síntesis, oponerse vigorosamente a la enmienda debido a que ésta conllevaba la eliminación del

---

[34] Diario de Sesiones, *supra*, pág. 2312.

cargo de vicegobernador. Así, se produjo el siguiente diálogo:

> Sr. IRIARTE: Sr. Presidente.
>
> Sr. PRESIDENTE: Sr. Iriarte.
>
> Sr. IRIARTE: De acuerdo con la enmienda resultará que el Gobernador estará sustituido por un funcionario que no es electo por el pueblo, así lo entiendo. ¿No? No será electo por el pueblo, el Secretario de Estado, sino que será nombrado por el Gobernador como los demás secretarios del gobierno.
>
> Sr. GUTIERREZ FRANQUI: Con la excepción de que será confirmado por ambas cámaras legislativas.
> Sr. IRIARTE: No sería electo directamente por el pueblo. La idea que había era que el vicegobernador fuera electo por el pueblo.
>
> Sr. GUTIERREZ FRANQUI: Esta idea...
>
> Sr. IRIARTE: Y ahora vamos a suprimir al vicegobernador que era electo por el pueblo, que había de sustituirlo.
>
> Sr. GUTIERREZ FRANQUI: Eso no lo dice. El vicegobernador habría de sustituir al Gobernador solamente en caso de vacante permanente y no en caso de vacante temporal.
>
> Sr. IRIARTE: Pero de que entre las funciones de vicegobernador estaría la de sustituir al Gobernador. Sustituirlo en caso de vacante permanente y...
>
> Sr. GUTIERREZ FRANQUI: Eso no lo dice el proyecto.
>
> Sr. IRIARTE: Pero estaba sobrentendido; ésa es la misión de un vicegobernador; y ahora se suprime el vicegobernador que era un candidato electo por el pueblo por un funcionario que habrá de ser nombrado por el mismo Gobernador. Que no me gusta el cambio. Que no me gusta el cambio. Me parece que debíamos crear en la constitución ambos cargos. El cargo de vicegobernador y el de secretario tal y como está. Para que lo sustituya un cargo electo por el pueblo, no uno nombrado

---

[35] Diario de Sesiones, *supra*, págs. 691, 1033 y 1766.

<u>por el Gobernador y luego aprobado por la Asamblea Legislativa.</u>

UN DELEGADO: Que se vote, señor Presidente.

Sr. PRESIDENTE: ¿No hay mayor discusión? Si no la hay, se pone a votación. Los que estén por la afirmativa se servirán significarlo poniéndose de pie. Cincuenta y dos votos a favor. Adoptada la enmienda. (Énfasis suplido).[36]

Este fascinante debate es muy ilustrativo de la importancia que le dieron nuestros delegados constituyentes a la necesidad de que, sobrevenidas las circunstancias que causaran que el Secretario de Estado adviniera a la gobernación como gobernador en propiedad, éste tuviera -al menos- el consentimiento indirecto del Pueblo, esto mediante la confirmación de ambas cámaras legislativas.

**Es claro entonces, que el texto y contexto de nuestra Constitución en el Art. IV, Sección 7, no aprueba el texto de la Ley 7 de 2005 en cuestión haciéndolo inconstitucional.**

Ahora bien, considerando que en este caso, como en otras ocasiones, este Tribunal ha determinado la inconstitucionalidad solo de una expresión dentro de una ley, es menester entonces, repasar la doctrina de separabilidad. Veamos.

III

El tema sobre la separabilidad de las disposiciones estatutarias es un asunto pocas veces estudiado, sin embargo, en este momento histórico que vivimos en

---

[36] Diario de Sesiones, *supra*, pág. 2315.

Puerto Rico es preciso acercarnos a él como parte del análisis de la controversia que tenemos ante nuestra consideración. Con ello en perspectiva, corresponde efectuar un recorrido por los orígenes de la doctrina de separabilidad desde su génesis en el ámbito federal a través de la casuística norteamericana hasta el ámbito estatal con la jurisprudencia puertorriqueña.

A. La casuística norteamericana

El Tribunal Supremo federal decidió en el 1829 el caso Bank of Hamilton v. Lessee of Dudley, 27 US 492 (1829). Allí manifestó que "[i]f any part of the act be unconstitutional, the provisions of that part may be disregarded while full effect will be given to such as are not repugnant to the [C]onstitution of the United States…."[37] Esto es, la porción válida de una ley puede mantenerse a pesar de que haya alguna parte inválida, ello siempre y cuando no tuviese un efecto contrario a la Constitución. En particular, ésta constituye "la primera expresión jurisprudencial" acerca de la doctrina de separabilidad en Estados Unidos.[38]

Más adelante, en el 1854, se resolvió Alien v. Lousiana, 103 US 80, 84 (1880), en el cual la Corte Suprema federal expuso que "[t]he point to be determined in all such cases is whether the unconstitutional provisions as so

---

[37] Bank of Hamilton v. Lessee of Dudley, 27 US 492, 526 (1829).
[38] Véase J.E. Adames Ramos, La separabilidad de las disposiciones estatutarias, 46 Rev. Jur. UIPR 375, 377 (2012).

connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature." Como vemos, esto se refiere a que los foros judiciales examinen la intención legislativa.

El profesor de Derecho Constitucional José Julián Álvarez González expone que "[d]urante tres cuartos de siglo, el Tribunal Supremo federal descansó en la premisa de que podía adjudicar la inconstitucionalidad de una porción de una ley y retener la vigencia del resto, si el remanente era capaz de aplicación. En 1875 comenzó a decir lo contrario y a invalidar la ley completa", esto último señalando el caso United States v. Reese, 92 US 214 (1875).[39] Añade que este panorama provocó que el Congreso y las asambleas legislativas de los estados comenzaran a incluir de forma rutinaria unas cláusulas de separabilidad en las leyes que aprobaban.[40]

Así pues, en Estados Unidos, a finales del siglo 19 y principios del siglo 20 comenzaron a incluirse las cláusulas de separabilidad en los estatutos.[41] Específicamente, una cláusula de separabilidad (*severability clause*) es aquella disposición estatutaria cuyo propósito es evitar que un estatuto colapse en su

---

[39] Véase J.J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 64.
[40] Íd.
[41] Adames Ramos, supra, pág. 379.

totalidad al momento en que alguna de sus disposiciones sea invalidada.[42]  Mediante dicha cláusula se permite remover o separar la parte inválida del estatuto

y así se deja la otra parte en vigor con toda la fuerza de ley.[43]

La Corte Suprema federal en Dorchy v. Kansas, 264 US 286, 290 (1924) expresó que una cláusula de separabilidad "provides a rule of construction which may sometimes aid in determining that intent.  But it is an aid merely; not an inexorable command."  (Énfasis suplido).

Más adelante, en el 1929, el Tribunal Supremo federal atendió el caso de Williams v. Standard Oil Co., 278 US 235 (1929), mediante el cual se declaró inconstitucional una porción de una ley estatal que regulaba los precios de la gasolina.  Allí se determinó que esa porción no se podía separar de las otras disposiciones del estatuto en controversia.  El asunto fundamental de este caso es que la Corte Suprema federal ideó 2 presunciones: (1) si existe una cláusula de separabilidad se presume que la Asamblea Legislativa quería que el estatuto fuera separable, y (2) si no existe una cláusula de separabilidad se presume que

---

[42]  C. McNiven, Using Severability Clauses to Solve the Attainment Deadline Dilemma in Environmental Statutes, 80 Cal. L. Rev. 1255, 1284 (1992).  Véase también Adames Ramos, supra, pág. 379.
[43]  Íd.

la Asamblea Legislativa quería que el estatuto fuese inseparable.[44]

Varias décadas después, en 1983, la Corte Suprema federal resolvió Immigration and Naturalization Service v. Chadha, 462 US 919, 931-932 (1983), en el que se determinó que "the invalid portions of a statute are to be severed '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'"

B. La jurisprudencia puertorriqueña

En Tugwell, Gobernador v. Corte, 64 DPR 220, 226 (1944) este Tribunal tuvo la oportunidad de cuestionarse sobre la validez parcial o total de una ley.  Para ello, allí adoptamos una fórmula que involucra 2 fases a considerarse, a saber: (1) la ley debe ser capaz de ser separada; y (2) la Legislatura tuvo que tener en mente que la ley fuera separable.

Posteriormente, en Berríos Martínez v. Gobernador, 137 DPR 195, (1994) reiteramos esa fórmula.  Así, expusimos que primero debe evaluarse si la ley subsiste o permanece en vigor, una vez se hayan eliminado las cláusulas declaradas inconstitucionales y, posteriormente, debe evaluarse si la

---

[44] Williams v. Standard Oil Co., 278 US 235, 241-242 (1929).  Para referencia adicional, véase Adames Ramos, supra, pág. 381.

Legislatura hubiera aprobado la ley sin esas disposiciones.[45]

Esas dos fases aquí mencionadas fueron catalogadas en dos aspectos: objetivo y subjetivo.[46] En específico, en cuanto al aspecto objetivo, se ha razonado que se "requiere que la ley sea, de hecho, capaz de ser separada; significa que la separación no resulte en un estatuto hueco e inteligible".[47] Por su parte, se ha indicado que el aspecto subjetivo persigue determinar qué hubiera hecho la Asamblea Legislativa si hubiese sabido que algunas de las disposiciones del estatuto en cuestión -según aprobado- eran inválidas.[48]

Al adentrarnos en este análisis se "debe tomar en cuenta que cuando existe una cláusula de separabilidad, se presume que, si los tribunales declaran una parte de una ley inconstitucional, la Asamblea Legislativa interesa que el resto del estatuto se mantenga en vigor".[49] Entiéndase que si la ley contiene una cláusula de separabilidad, el análisis partirá bajo la presunción de que la Legislatura persigue que se mantenga el resto de la ley, en la

---

[45] Berríos Martínez v. Gobernador, 137 DPR 195, 224 (1994).

[46] Véase Opinión disidente del Juez Asociado señor Negrón García en Berríos Martínez v. Gobernador, supra, págs. 275-276, citando a Tugwell, Gobernador v. Corte, 64 DPR 220, 230 (1944).

[47] Íd., pág. 275

[48] Íd., pág. 276.

[49] Berríos Martínez v. Gobernador, supra, pág. 224. Véase, además, Tugwell, Gobernador v. Corte, supra, págs. 226-230.

eventualidad de que se declare inconstitucional una parte de la ley.[50]

Por otro lado, en ausencia de una cláusula de separabilidad se presume que la Asamblea Legislativa tuvo en consideración que la ley fuera efectiva en su totalidad. Ahora bien, la ausencia de la cláusula de separabilidad no es decisiva ni predominante, esto pues la cláusula de separabilidad funge como una "mera ayuda; no como un mandato inexorable".[51]

## C. Apuntes finales relacionados con la doctrina de separabilidad

Con el marco legal esbozado, evaluemos si la fórmula que nos ofrece la doctrina de separabilidad permite adjudicar que la Ley 7 de 2005 es parcialmente inválida. Como expresamos, esto se logra si el estatuto impugnado refleja el aspecto objetivo y subjetivo según mencionáramos.

Ahora bien, en primer lugar, debemos preguntarnos si la eliminación de la expresión que surge del Art. 1 de la Ley 7 de 2005 ("excepto en el caso del Secretario(a) de Estado") que aquí se declara inconstitucional permite que el resto del estatuto se mantenga en vigor. Por supuesto que sí. De hecho, la separación no resulta que el estatuto sea hueco e ininteligible, sino que tiene un efecto armonioso con el resto de la legislación y, más importante

---

[50] Misión Ind. P.R v. J. P., 146 DPR 64, 113 (1998).

aún, con las Secs. 5, 7, 8 y 9 del Art. IV de nuestra Carta Magna.

Sabemos que no basta con que objetivamente la Ley de 2005 sobreviva al ataque parcial de la constitucionalidad, pues es necesario auscultar, además, si satisface el elemento subjetivo.  Es decir, si la Legislatura hubiera aprobado la enmienda a la Ley 7 de 1952 sin incluir la expresión que hoy este Tribunal declaró inconstitucional.

La fase de subjetividad atiende aquellas conjeturas preliminares que hemos reconocido acerca de la intención legislativa cuya confiabilidad las ha convertido en presunciones.  En ese contexto, es cierto que la inexistencia de una cláusula de separabilidad en la Ley 7 de 2005 activó la presunción de que la Rama Legislativa pretendió la efectividad de la totalidad del estatuto.[52] Sin embargo, la ausencia de inclusión de la cláusula de separabilidad en el estatuto impugnado no implicaba que este Tribunal actuara como baladí aplicando de manera automática o a ciegas unas presunciones que solo acopian unos principios generales lógicos.[53] **Por ello, la economía de tiempo y esfuerzo para la investigación de la intención legislativa que pudo representar la existencia de una cláusula de separabilidad en la Ley 7 de 2005 se perdió desde el instante que la validez de la presunción chocó de**

---

[51] Tugwell, Gobernador v. Corte, supra, pág. 229.
[52] Tugwell v. Corte, supra, pág. 229.
[53] Íd.

**manera frontal con la Constitución de Puerto Rico.** Es decir, estas presunciones no son infalibles.

Ciertamente, opino que constituiría una negligencia de nuestra parte si como Tribunal Supremo limitáramos nuestro poder constitucional como un mandato inexorable a las presunciones que mediante jurisprudencia le hemos reconocido a la Rama Legislativa al establecer cláusulas de separabilidad en los estatutos que promulga.[54]

En resumen, el aspecto subjetivo de la fórmula no es para procurar lo que la Legislatura intentó, sino lo que hubiera hecho de haber sabido que la expresión "excepto en el caso del Secretario(a) de Estado", según se aprobó, era inválida e inconstitucional.[55] La contestación es lógica: claramente no la hubiera incluido. Ello es así porque resulta irrazonable pensar que, mediante la ausencia de la cláusula de separabilidad, la Rama Legislativa **intencionalmente** hubiese querido arriesgarse a que este Tribunal la declarara parcialmente inconstitucional.

En consecuencia, la eliminación de la expresión declarada inconstitucional por la mayoría de este Tribunal permite no solo la subsistencia del resto de la Ley de 2005, sino que, además, tiene el efecto de que se logra sincronizar con nuestra Ley Suprema. A su vez, es lógico que si la Legislatura hubiese sabido que la expresión impugnada sería inconstitucional entonces no la hubiera incluido.

---

[54] Íd., pág. 228.

IV

Considerando todo lo anterior, no debe quedar la menor duda de que cuando los delegados constituyentes aprobaron en el texto de la Sec. 7 del Art. IV de nuestra Constitución la figura del Secretario de Estado como sustituto del Gobernador, en las circunstancias enumeradas en la propia sección, éstos se referían a un Secretario de Estado que ocupara el cargo en propiedad, esto es, que contara con la confirmación de ambas cámaras legislativas. Por lo tanto, y como bien concluye la Opinión de esta Curia, la expresión "excepto en el caso del Secretario(a) de Estado" del Art. 1 de la Ley 7 de 1952, según enmendada, es inconstitucional, pues pretende prescindir de tal requisito.

Por todo lo aquí expuesto, estoy conforme con la Opinión de este Tribunal por considerarla inequívoca en su argumento y acertada en el resultado. Suscribo esta Opinión de Conformidad por el interés público que abarca la controversia ante nuestra consideración y por las repercusiones que hoy y en la eventualidad pueda tener.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[55] Íd., pág. 230.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Senado de Puerto Rico, representado por su presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 | |

**Opinión de Conformidad emitida por el Juez Asociado señor RIVERA GARCÍA**

En San Juan, Puerto Rico, a 7 de agosto de 2019.

No hay duda de que la controversia que nos vemos precisados a enfrentar está revestida del más alto interés público y que incide sobre el orden constitucional que debe imperar en nuestra tradición democrática. A mi juicio, es el caso de mayor trascendencia en nuestra historia moderna por constituir un conflicto sobre la legitimidad del proceso para llenar la vacante permanente del Gobernador de Puerto Rico.

Este momento histórico exige que este Tribunal, como último intérprete de la Constitución, de un paso al frente en la búsqueda de una solución diseñada con estricto apego a los valores democráticos y constitucionales.

La democracia, como doctrina política y modelo de organización social, es el fundamento en el cual se sustentan los principios que rigen nuestra Constitución. En ese contexto, la democracia puede instrumentarse de varias maneras. Una, mediante el voto directo; y la otra, mediante voto indirecto o representativo. Ambas siempre enmarcadas en las exigencias y los requisitos avalados por los constituyentes en nuestra Ley Suprema. Como ejemplo ilustrativo, existe democracia cuando el Pueblo mediante el sufragio selecciona a sus líderes en los procesos electorales ordinarios como las elecciones generales. De igual modo, una vertiente de la democracia es cuando los jueces y juezas son seleccionados con el aval los poderes políticos, es decir, el Ejecutivo y el Legislativo ⸺en este caso el Senado⸺ quienes fueron elegidos por el Pueblo. Por el contrario, sería **un acto antidemocrático** que una persona ocupe un cargo público incumpliendo con los requisitos constitucionales aplicables y sin contar con el consentimiento de quienes están llamados, como condición previa, a conferirlo.

Esta ocasión me ofrece la oportunidad de reafirmar una vez más los valores que han dirigido mi trayectoria en el servicio público como fiel creyente, protector y garante de

uno de los componentes primordiales que rigen nuestro Sistema Republicano de Gobierno: **el principio de separación de poderes**. Este, sin duda, va más allá de una mera barrera entre las Ramas de Gobierno. Más bien, es un elemento ineludible que salvaguarda el modelo democrático, pues, lleva atado la exigencia de que en ocasiones los Poderes Constitucionales, ya sea el Ejecutivo, el Legislativo o el Judicial, colaboren conjuntamente en algún acto de modo que sirvan como vigilantes entre sí ——como freno o contrapeso—— para que cada uno realice un ejercicio adecuado, correcto y legítimo de sus funciones.[56] De ahí que la Rama Legislativa tiene la facultad constitucional de confirmar las nominaciones de ciertos funcionarios públicos, entre los que figuran los miembros del Consejo de Secretarios del Gobernador, para que estos constitucionalmente puedan ocupar en propiedad algún cargo en el referido consejo. Asimismo, este Foro Judicial, de naturaleza constitucional y de mayor jerarquía en Puerto Rico, tiene que velar y garantizar que cuando surja una vacante permanente de Gobernador la persona que ocupe el puesto cumpla con las exigencias de nuestra Carta Magna. De incumplirse con los requisitos establecidos en ella, su designación estaría revestida de nulidad y, por ende, cualquier acción es igualmente inválida.

---

[56] *Acevedo Vilá v. Meléndez,* 164 DPR 875, 883 (2005); *Noriega v. Hernández Colón,* 135 DPR 406 (1994).

No puede ocupar el cargo de Gobernador de Puerto Rico quien exhibe algún impedimento constitucional para ello. Al igual que quien no cuenta con la edad requerida para gobernar —así sea por días de diferencia— aquel que no ha sido avalado por los Cuerpos Legislativos para el cargo de Secretario de Estado, tampoco satisface los requisitos constitucionales. Por lo tanto, este último no puede liderar el Poder Ejecutivo como el Gobernador de Puerto Rico.

**Es un hecho irrefutable que el texto de nuestra Constitución no establece excepciones para ocupar el puesto de Gobernador a quienes incumplan con los requisitos mínimos que esta instituye.** Un examen minucioso del Diario de Sesiones demuestra diáfanamente que esta tampoco fue la intención de los miembros de la Asamblea Constituyente. Resulta imposible concebir, por carecer de sentido, que la intención original al promulgar la Constitución de Puerto Rico fue mantener a nuestro Pueblo en **el estado de incertidumbre,** como la que hemos experimentado durante los pasados días; en espera de conocer quién asumiría la responsabilidad de continuar gobernando hasta que el Primer Ejecutivo tome posesión luego de ser elegido en las próximas elecciones generales.

Si bien toda ley se presume constitucional hasta que un tribunal declare lo contrario —presunción en la que descansó el licenciado Pierluisi Urrutia para juramentar como Gobernador— no podemos sostener la validez de una

parte de la ley en cuestión.[57] Por ello, dado a que una ley no puede sostenerse cuando contraviene las disposiciones expresas de la Constitución, presupuesto básico de nuestro sistema de derecho y democrático, es necesario e imperativo declarar inconstitucional la parte del Art. 1 de la Ley Núm. 7-2005, *infra,* que enmendó la Ley de Sucesiones, *infra*, para permitir que un Secretario de Estado que no cumple con todas las exigencias constitucionales pudiera ocupar el cargo de Gobernador al surgir una vacante permanente. Así, estoy conforme con la Opinión que emitimos hoy toda vez que el juramento tomado al Lcdo. Pedro R. Pierluisi Urrutia el vienes, 2 de agosto de 2019, es **nulo, inexistente e inconstitucional**. Procede dirigirse al orden de sucesión y corresponde a quien ocupe el cargo de Secretario de Justicia **en propiedad** asumir la posición de Primer Ejecutivo. A falta de un Secretario de Estado confirmado por ambos Cuerpos Legislativos, bajo el palio de la Constitución de Puerto Rico, es el Secretario de Justicia el funcionario llamado legalmente como sucesor.

---

[57] *ELA v. Northwestern Selecta,* 185 DPR 40, 71 (2012) ("hemos reconocido el principio de que todo estatuto es y se presume constitucional hasta que se determine lo contrario"); *Aut. Carreteras v. 8,554.741 m/c I*, 172 DPR 278, 298 (2007);*Pueblo v. Rivera Morales,* 133 DPR 444 (1993); *Nogueras v. Hernández Colón,* 127 DPR 405, 412 (1990); *Pueblo Int'l, Inc. v. Srio de Justicia,* 122 DPR 703, 726 (1988) ("Está plenamente asentada la idea de que esos poderes cuentan con la pericia suficiente para llevar a cabo un adecuado proceso de legislación y reglamentación. Por esta razón, el estatuto o reglamento, según sea el caso, se presume constitucional y el peso de la prueba recae sobre quien cuestiona su validez"). Véase *Cerame-Vivas v. Srio. de Salud*, 99 DPR 45 (1970); *Esso Standard Oil v. APPR*, 95 DPR 772 (1968); *Pueblo v. Pérez Méndez*, 83 DPR 539 (1961).

A continuación me limitaré a exponer los hechos más esenciales del caso.

I

El 24 de julio de 2019, el ex Gobernador Ricardo Rosselló Nevares presentó su renuncia a la gobernación de Puerto Rico, la cual sería efectiva el pasado **viernes, 2 de agosto de 2019, a las 5:00 p.m.** Varios días después, el 31 de julio de 2019, estando en receso la Asamblea Legislativa, por estar vacante la posición de Secretario de Estado, el ex Gobernador presentó la nominación del licenciado Pierluisi Urrutia a esa posición. Por el corto tiempo disponible el entonces Primer Ejecutivo convocó una sesión extraordinaria con el fin de que ambas cámaras ─el Senado y la Cámara de Representantes─ evaluaran la nominación del licenciado Pierluisi Urrutia.

En la Cámara de Representantes se celebró una vista pública el 2 de agosto de 2019. Posteriormente, durante horas de la tarde, la mayoría de este cuerpo confirmó la nominación. Por su parte, el Senado de Puerto Rico convocó una vista pública para el lunes, 5 de agosto de 2019. Es decir, la sesión del Senado se convocó para un momento posterior a que se hiciera efectiva la renuncia del entonces Gobernador de Puerto Rico.

Así las cosas, el 2 de agosto de 2019, a las 5:00 p.m., tuvo efectividad la renuncia del entonces Primer Ejecutivo y el licenciado Pierluisi Urrutia tomó juramento como

Gobernador. Ello, sin contar con el consejo y consentimiento del Senado para ocupar la posición de Secretario de Estado.

El 5 de agosto de 2019, el Senado de Puerto Rico, representado por su presidente, Hon. Thomas Rivera Schatz, presentó una demanda sobre sentencia declaratoria e injunction preliminar y permanente en el Tribunal de Primera Instancia, Sala Superior de San Juan. En esencia, esbozó que el licenciado Pierluisi Urrutia juramentó al cargo de Gobernador de Puerto Rico sin haber sido confirmado por el Senado. Arguyó que la juramentación del licenciado Pierluisi Urrutia era nula, pues ni la Constitución ni la Ley de Sucesiones, *infra*, excluían a un Secretario designado en el periodo de receso de la Asamblea Legislativa del requisito de ser confirmado por la Cámara de Representantes y el Senado de Puerto Rico. En la alternativa, adujo que si las enmiendas introducidas por la Ley Núm. 7-2005 permitían tales actos debían declararse inconstitucionales. Por lo tanto, solicitó que se ordenara al licenciado Pierluisi Urrutia que cesara de ejercer las funciones del Primer Ejecutivo y se declarara nula cualquier decisión que hubiera tomado durante el tiempo en que las ejerció inconstitucionalmente.

El mismo 5 de agosto de 2019 el foro primario señaló una vista argumentativa a celebrarse a las 6:00 p.m. con el fin de dilucidar la procedencia de los remedios solicitados. Ordenó, además, que la parte peticionaria

diligenciara el emplazamiento y notificara copia de la demanda en o antes de las 12:00 p.m. del día en transcurso.

Así las cosas, el Senado presentó ante esta Curia una *Moción urgente para que se paralicen los procedimientos en el tribunal instancia al amparo de la Regla 28(a) del Reglamento del Tribunal Supremo de Puerto Rico* y un escrito de *Certificación.* En el primero, alegó que el asunto era de alto interés público, que exigía atención inmediata, que dilucidar la controversia en el foro primario retrasaría el proceso innecesariamente, y que el caso culminaría ante nuestra atención. En cuanto a la petición de certificación intrajurisdiccional, sus planteamientos fueron esencialmente los mismos que exteriorizó en el foro de primera instancia.

Evaluados los escritos de la parte peticionaria, por considerar que el caso se circunscribe a resolver una cuestión de derecho, ordenamos paralizar los procedimientos en el Tribunal de Primera Instancia, expedimos el auto de certificación y concedimos a las partes hasta el 6 de agosto de 2019, a las 12:00 p.m., para presentar sus alegatos.

Examinados los escritos de las partes, estoy conforme con la decisión que emite este Tribunal. Me explico.

**II**

**A. *Parámetros constitucionales a la sucesión del cargo a Gobernador de Puerto Rico***

La Constitución de Puerto Rico persigue, como principio fundamental, establecer mayores garantías democráticas para la vida de la comunidad puertorriqueña. De hecho, esta define *sistema democrático* como "aquél donde la voluntad del pueblo es la fuente del poder público, donde el orden político está subordinado a los derechos del hombre y donde se asegura la libre participación del ciudadano en las decisiones colectivas".[58] Así, se establece una forma republicana de gobierno compuesta por el Poder Ejecutivo, el Poder Legislativo y el Poder Judicial.[59]

Como norma general, el Gobernador de Puerto Rico ocupa su cargo durante el término de cuatro años, tomando posesión el dos de enero del año que le sigue a su elección.[60] Sin embargo, el Art. IV, Sec. 3, de la Constitución establece que nadie podrá ocupar ese cargo "a menos que, **a la fecha de la elección**, haya cumplido treinta y cinco años de edad, y sea, y haya sido durante los cinco años precedentes, ciudadano de los Estados Unidos de América y ciudadano y residente bona fide de Puerto Rico".[61]

En cuanto a los Secretarios de Gobierno, el texto constitucional dispone que estos serán nombrados por el Gobernador, pero con el consejo y el consentimiento del

---

[58] Preámbulo de la Constitución de Puerto Rico, Const. PR, LPRA, Tomo 1, pág. 269.

[59] Const. PR, *supra*, Art. I, Sec. 2, pág. 273.

[60] Íd., Art. IV, Sec. 2, pág. 417.

[61] Íd., Sec. 3, pág. 417.

Senado de Puerto Rico.[62] Ahora bien, debemos puntualizar que la Constitución es mucho más específica en cuanto a los requisitos que tiene que cumplir el Secretario de Estado. En particular, el Art. IV, Sec. 5, establece expresamente que "[e]l nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes, y la persona nombrada deberá reunir los requisitos establecidos en la Sección 3 de este Artículo".[63] En ese sentido, se requiere que el Secretario de Estado sea confirmado por ambos cuerpos de la Asamblea Legislativa para que pueda ostentar esta posición en propiedad. El razonamiento para ello está inexorablemente atado al hecho de que el Secretario de Estado es el primero llamado a sustituir al Gobernador en el caso de surgir una vacante.

Con el fin de precisar cabalmente los propósitos de requerir la confirmación por parte de ambas Cámaras Legislativas para poder ocupar el puesto de Secretario de Estado en propiedad, es imperativo exponer la discusión que este asunto generó en la Convención Constituyente, por lo menos de forma sucinta.

Los miembros de la Asamblea Constituyente fueron sumamente claros al establecer los requisitos que tiene que cumplir un Secretario de Estado. De hecho, discutieron con mucho rigor la Sec. 8 del Art. IV de la Constitución de Puerto Rico, la cual concretó el texto tal y como lo

---

[62] Íd., Sec. 5, pág. 422.

[63] Íd.

conocemos hoy. Inicialmente, esta disposición establecía

como sigue:

> En caso de que, antes o después del día dos de enero siguiente a una elección general, ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total o permanente, o por cualquiera otra falta absoluta, dicho cargo pasará al Vicegobernador, quien lo desempeñará por el resto de su término y hasta que un nuevo Gobernador sea electo y tome posesión. La ley proveerá para el caso de que una vacante tal ocurra tanto en el cargo de Gobernador como en el de Vicegobernador, y determinará al efecto qué funcionario ocupará en ese caso el cargo de Gobernador.[64]

Posteriormente, el delegado señor Gutiérrez Franqui

propuso que, en aquellos casos en que surgiera una vacante

permanente en el cargo de Gobernador, el texto debía

expresar lo siguiente:

> Cuando un gobernador electo no pueda tomar posesión de su cargo o cuando ocurra una vacante en el mismo producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará hasta que su sucesor sea electo y tome posesión. Si la próxima elección general estuviere señalada para celebrarse más de un año después de la fecha de la vacante se celebrará una elección especial para elegir un gobernador dentro de los 120 días siguientes a la vacante. La ley proveerá para el caso de que una vacante tal ocurra, tanto en el cargo de Gobernador como en el de Secretario, y

---

[64] 1 Diario de Sesiones de la Convención Constituyente 701 (1961). Posteriormente, esta se enmendó para que dispusiera que "[c]uando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquiera otra falta absoluta, dicho cargo pasará al Vicegobernador quien lo desempeñará por el resto de su término y hasta que un nuevo Gobernador sea electo y tome posesión. La ley proveerá para el caso de que una vacante tal, ocurra tanto en el cargo de Gobernador como en el de Vicegobernador, y determinará qué funcionario ocupará el cargo de Gobernador". 3 Diario de Sesiones, *supra*, pág. 1774.

determinará qué funcionario ocupará el cargo de Gobernador.[65]

Esta recomendación fue retirada por el mismo delegado. De las propias discusiones de la Asamblea Constituyente surge que, luego de plantearse la enmienda a la entonces Sec. 7 y la Sec. 8 del Art. IV de la Constitución, se sugirió que el sustituto fuera el Secretario de Estado. En defecto de este último, correspondería a aquel Secretario dispuesto por ley.[66] Allí, la preposición que presentó el delegado señor Gutiérrez Franqui fue enmendar la Sec. 8 del Art. IV para que dispusiera lo siguiente:

> Sección 8.—Cuando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado quien lo desempeñará por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión. La ley proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.
>
> Cuando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones lo sustituirá mientras dure el impedimento el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo lo ocupará el Secretario de gobierno que se determine por ley.
>
> Cuando por cualquier razón el Gobernador electo no pudiere tomar posesión de su cargo la Asamblea Legislativa electa, elegirá un gobernador por mayoría absoluta de cada una de sus cámaras, quien desempeñará el cargo por la totalidad del término y hasta que el próximo

---

[65] Íd., pág. 2220.

[66] Esta disponía que "[a]l mismo tiempo, en igual forma y por el mismo término que el Gobernador, se elegirá un vicegobernador quien deberá reunir las mismas condiciones que para ser Gobernador se requieren en la sección—precedente". Véase íd., pág. 2311.

> Gobernador sea electo en la siguiente elección general y tome posesión de su cargo.
>
> El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa. (Comillas eliminadas).[67]

` Esta enmienda produjo varios cuestionamientos. A modo ilustrativo, el delegado señor Iriarte cuestionó si el Gobernador sería sustituido entonces por un funcionario no electo por el Pueblo, sino nombrado por el propio Gobernador como los demás secretarios. El señor Gutiérrez Franqui contestó que sí, pero "[c]on la excepción de que **será confirmado por ambas cámaras legislativas**". (Énfasis suplido).[68] Según este último, el propósito de la enmienda era establecer que el Secretario de Estado "deb[ía] recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes".[69] Conforme la fórmula propuesta, consideró innecesaria la creación del cargo de vicegobernador.[70] Estas enmiendas fueron aprobadas por la mayoría de los miembros de la Convención y se ordenó a la Comisión de Redacción y Estilo que realizara las modificaciones necesarias a las demás partes del texto de

---

[67] Íd., págs. 2312 y 2314.

[68] Íd., pág. 2315.

[69] Íd., pág. 2312.

[70] Esbozó que se evitaba el puesto de vicegobernador "con funciones de tiempo y de interés limitadísimo; que pudiera crear la organización constitucional y política dentro del gobierno del Estado Libre Asociado de Puerto Rico, un cargo con mucho nombre, mucho sueldo y casi nada que hacer, lo que hemos considerado indeseable". Íd., pág. 2313.

la Constitución en curso, de modo que se ajustara a la enmienda y ya no se hiciera referencia a la figura del vicegobernador.[71]

El requisito de que el Secretario de Estado tiene que ser confirmado por ambas cámaras de la Asamblea Legislativa fue reiterado en el voto explicativo de la delegación del Partido Socialista. Estos reconocieron que la propuesta a vicegobernador había sido derrotada, pues, en su lugar, "[l]a Convención ha[bía] creído conveniente que sea el Secretario de Estado quien […] sustituya [al Gobernador]. En efecto, los delegados expusieron que el consenso era que este debía ser nominado por el Gobernador, **"pero tendr[ía] que ser confirmado por ambos cuerpos"**. (Énfasis suplido).[72]

Finalmente, se realizaron varias enmiendas no sustanciales en cuanto a este asunto y se subdividió la propuesta del señor Gutiérrez Franqui en varias secciones del Art. IV de la Constitución. Esto resultó en las disposiciones para el nombramiento de los Secretarios del gabinete, incluyendo el Secretario de Estado, y los demás preceptos concernientes a la sucesión en el caso específico de surgir una vacante permanente o una vacante temporera en el cargo de Gobernador.[73]

---

[71] Íd., págs. 2316.

[72] 4 Diario de Sesiones, *supra*, págs. 2376-2377.

[73] Al analizar las razones para que alguien tomara la posición de Gobernador, el delegado señor Quiñones señaló que "[e]n derecho constitucional, los tratadistas dividen las faltas en dos, **la falta absoluta y la falta temporal**, o sea, cuando ocurre una falta de carácter absoluto, de carácter total, esa falta produce vacante. Ahora, cuando

Al amparo de como fue aprobada la Constitución de Puerto Rico, nominados y confirmados los Secretarios de Gobierno según el Art. IV, Sec. 5, estos están facultados para asumir la gobernación en el caso de surgir una vacante permanente. Para ello, se establece que

> [c]uando ocurra una vacante en el cargo de Gobernador producida por muerte, **renuncia**, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, **dicho cargo pasará al Secretario de Estado, <u>quien lo desempeñará por el resto del término</u> y hasta que un nuevo Gobernador sea electo y tome posesión. <u>La ley dispondrá cuál de los Secretarios de Gobierno ocupará el cargo de Gobernador</u> en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.** (Énfasis y subrayado suplido).[74]

En el caso de vacantes transitorias, donde el Gobernador estará ausente temporeramente, la Constitución de Puerto Rico erige la forma en que se procederá. En específico, esta instituye que

> [c]uando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones, lo sustituirá, mientras dure el impedimento, el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo, lo ocupará el Secretario de Gobierno que se determine por ley.[75]

En ese sentido, distinto al modelo federal, el sucesor constitucional del Gobernador no es un funcionario electo, sino que, por lo menos en primera instancia, es el Secretario de Estado, quien es nominado por el Gobernador y

---

ocurre una falta de carácter transitorio, esa falta no produce una vacante, sino es únicamente una ausencia de carácter transitorio". (Énfasis suplido). Id., pág. 1777.

[74] Const. PR, Art. IV, Sec. 7, pág. 424.

[75] Íd., Sec. 8, pág. 424.

confirmado por la Asamblea Legislativa.[76] "Por ello, para el nombramiento de este funcionario la Constitución requiere el consejo y consentimiento no s[o]lo del Senado, sino también de la Cámara [de Representantes]".[77] Estos requisitos se establecieron como parte del fundamento democrático y participativo de los electores en Puerto Rico para la selección del Secretario de Estado, aunque fuera indirectamente o mediante representación.

## B. *Ley de sucesión al cargo de gobernador*

Con la aprobación del texto de la Constitución de Puerto Rico se hizo imperativo establecer, mediante legislación, el orden sucesorio en el caso de surgir una vacante en el cargo de Gobernador estando vacante, a su vez, el puesto de Secretario de Estado. En vista de lo anterior, se aprobó la *Ley para proveer el orden de sucesión y sustitución para el cargo de gobernador del Estado Libre Asociado de Puerto Rico y derogar la Ley Núm. 8 de 11 de septiembre de 1948* (Ley de Sucesiones)*,* Ley Núm. 7 de 24 de julio de 1952 (1952 Leyes de Puerto Rico 13). A continuación, transcribimos las primeras dos disposiciones del estatuto*:*

> Artículo 1.—Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, **renuncia**, destitución, incapacidad total y permanente, o

---

[76] Véase J.J. Álvarez González, *Derecho constitucional de Puerto Rico y las relaciones constitucionales con los Estados Unidos,* Bogotá, Ed. Termis, 2010, pág. 238.

[77] Álvarez González, *op. cit.,* pág. 238.

por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término, y hasta que un nuevo gobernador sea electo y tome posesión. **Si simultáneamente quedaran vacantes los cargos de Gobernador y Secretario de Estado** el orden de sucesión bajo este Artículo será el siguiente:

1. Secretario de Justicia

2. Secretario de Hacienda

3. Secretario de Instrucción Pública

4. Secretario del Trabajo

5. Secretario de Obras Públicas

Artículo 2.—Cuando por cualquier causa que produzca ausencia de **carácter transitorio**, el Gobernador esté temporalmente impedido de ejercer sus funciones, le sustituirá, mientras dure el impedimento el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo se seguirá el orden estipulado en el Artículo anterior.

Nótese que la Ley de Sucesiones, *supra*, se limitó a recoger la norma constitucional y a enumerar, en orden de sucesión, a los Secretarios de cinco departamentos. Para esto, se dividió en dos partes. El Art. 1 contiene la sucesión en el caso de una vacante permanente en el cargo de gobernador y el Art. 2 rige lo concerniente a aquellas circunstancias que ocasionan una vacante temporera.

Ahora bien, la Ley Núm. 7-2005 enmendó la Ley de Sucesiones, *supra.* En su Exposición de Motivos se reconoció que

[…] nuestra Constitución mantiene el orden sucesorio entre funcionario de confianza del Primer Ejecutivo, que todos estos funcionarios sean nombrados con el consejo y consentimiento del Senado, y en el caso del Secretario de Estado que requiere además el de la Cámara de Representantes, **mantiene un elemento de participación del pueblo de Puerto Rico. Es razonable concluir que esta sucesión <u>debe corresponder a funcionarios que ocupen el puesto</u>**

**en propiedad**, **habiendo sido debidamente ratificados en la legislatura** y que cumplan con los requisitos constitucionales de edad y residencia. Sólo en el caso de que ningún Secretario cumpl[a] con los requisitos anteriormente dispuestos se activará el orden sucesoral obviando los mismos; salvo lo dispuesto en el Art. IV Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico.

.    .    .    .    .    .    .    .

Aunque las posibilidades de tener que enfrentar todas estas situaciones no es inminente y todos preferimos que nunca tengamos que ponerlas a prueba, es prudente dejar consignado en la ley cuál sería la forma correcta de lidiar con ella, además de clarificar y actualizar el lenguaje del estatuto vigente. (Énfasis y subrayado suplido).[78]

Debo resaltar que la enmienda que introduciría la Ley Núm. 7-2005 no fue la que aprobó finalmente la Asamblea Legislativa. En su origen, el Proyecto de la Cámara 327 ——que se convirtió en la Ley Núm. 7-2005—— disponía que

[p]ara advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, **habiendo sido ratificado su nombramiento**. Deberá además cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Artículo IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. **Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado,** habrá de velar por que el orden de sucesión no quede vacante. (Énfasis y subrayado suplido).[79]

Empero, luego del trámite legislativo y varias modificaciones al proyecto propuesto, la Ley Núm. 7-2005

---

[78] Exposición de Motivos de la Ley Núm. 7-2005, *supra*.

[79] P. de la C. 327 de 4 de enero de 2019, 1ra Sesión Ordinaria, 15ta Asamblea Legislativa, pág. 3.

enmendó la Ley de Sucesiones para que estableciera lo siguiente:

Artículo 1.-Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. Si simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado el orden de sucesión bajo esta sección será el siguiente:

(1) Secretario de Justicia

(2) Secretario de Hacienda

(3) Secretario de Educación

(4) Secretario del Trabajo y Recursos Humanos

(5) Secretario de Transportación y Obras Públicas

(6) Secretario de Desarrollo Económico y Comercio

(7) Secretario de Salud

(8) Secretario de Agricultura

**Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; <u>excepto en el caso del Secretario(a) de Estado, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico</u>.** Deberá, además, cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Art. IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. **Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/o con el requisito de haber sido ratificado su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en esta sección excepto cuando aplique el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico.** Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante.

Artículo 2.-Cuando por cualquier causa que produzca ausencia de carácter transitorio, el Gobernador esté temporalmente impedido de ejercer sus funciones, le substituirá, mientras dure el impedimento, el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo se seguirá el orden estipulado en la sec. 8 de este título. Disponiéndose, que para el ejercicio interino de las funciones de Gobernador, no será obligatorio haber cumplido las disposiciones constitucionales sobre edad y residencia, ni con el requisito de que el Secretario llamado a suceder haya sido ratificado. (Énfasis y subrayado suplido).[80]

De ese modo, la Ley Núm. 7-2005 incluyó tres Secretarios adicionales al orden de sucesión: el Secretario de Desarrollo Económico y Comercio, el Secretario de Salud y el Secretario de Agricultura. Además, entre otras cosas, incorporó en el último párrafo del Art. 1 del estatuto una excepción aplicable al Secretario de Estado.

## III

La controversia del caso de autos hace imperativo auscultar los parámetros aconsejables en la revisión judicial. Con ello en mente, es necesario abordar la doctrina de autolimitación judicial.

Como norma general, la doctrina de autolimitación judicial rige cuando un tribunal es llamado a evaluar la validez constitucional de una pieza legislativa.[81]

---

[80] 3 LPRA sec. 8. Véase Informe Positivo sobre el Proyecto de la Cámara 327 de 16 de febrero de 2005, Comisión de Gobierno de la Cámara de Representantes, pág. 4, el cual, entre otras cosas, sugirió que se eliminara el requisito de que el Secretario de Estado tuviera que ser confirmado en su puesto como condición previa para suceder al cargo de Gobernador.

[81] *Brau, Linares v. ELA*, 190 DPR 315, 337 (2014)

Esencialmente, es una doctrina de prudencia que establece que cuando se cuestione la constitucionalidad de un estatuto, el tribunal evaluará primero si hay una interpretación razonable que permita soslayar la cuestión constitucional.[82] Así, persigue "evitar un trastoque en nuestro esquema constitucional de separación de poderes y, a su vez, permite que se mantenga el equilibrio necesario entre las Ramas de Gobierno".[83]

Al adoptar esta doctrina esbozamos varios principios que regirían su aplicación en los tribunales, a saber: (1) no juzgar la validez constitucional de una ley en un procedimiento amigable, no adversativo; (2) no anticiparnos a decidir una cuestión de derecho constitucional antes de que sea necesario hacerlo; (3) no formular una regla de derechos constitucional más amplia que la que requieran los hechos precisos a los cuales ha de aplicarse; (4) no juzgar una cuestión constitucional aunque haya sido sometida propiamente en los autos, si también se somete un fundamento de otra índole que permita disponer del caso; (5) no juzgar la validez de una ley a petición de uno que no puede probar que su aplicación le causa daños; (6) no juzgar la constitucionalidad de una ley a instancia de uno que se ha valido de sus beneficios; (7) asegurarnos de si existe una interpretación razonable de la ley que le permita soslayar la cuestión constitucional, y (8) no

---

[82] Íd.

[83] Íd.; *ELA v. Aguayo*, 80 DPR 552, 597-598 (1958).

entender en una cuestión constitucional si los autos no son adecuados para hacer una determinación de esa índole.[84]

La limitación que nos autoimponemos al evaluar la constitucionalidad de los estatutos está cimentada en lograr interpretaciones congruentes y compatibles, no interpretaciones que no encuentran sustento en el texto o la ley. [85] Por ello, si de la faz del estatuto no surge racionalmente la interpretación que propone alguna de las partes para salvar su constitucionalidad, la prudencia y el ejercicio correcto de la revisión judicial realmente nos invita a reconocer lo que en efecto se dispone. Si la consecuencia es que tenemos que declarar inconstitucional la ley, así debemos hacerlo. Así pues, cuando la amenaza a la calidad democrática del sistema ─componente esencial que por lo general promueve la autolimitación judicial─[86] proviene del mismo estatuto que estamos examinando, se derrota el fundamento para la autolimitación revisora. La restricción autoimpuesta no significa que nos convirtamos en salvadores omnipotentes e incalculables de estatutos que sufren de clara inconstitucionalidad.

A pesar de que la Exposición de Motivos de la Ley Núm. 7-2005, *supra*, enuncia que la intención era establecer que,

---

[84] *ELA v. Aguayo,* supra, pág. 596.

[85] *Brau, Linares v. ELA*, supra, pág. 337.

[86] *ELA v. Aguayo,* supra, pág. 597 ("es indudable que constituyen un mínimo de condiciones para el ejercicio discreto y tolerable de un poder que de otro modo constituiría una clara amenaza para la calidad democrática del sistema y convertiría a los jueces en guardianes de la comunidad").

de surgir una vacante permanente, el Secretario que sustituya **tiene que ocupar el cargo <u>en propiedad</u>, por haber sido ratificado su nombramiento**, el Art. 1 aparenta incluir una excepción ⸻un tanto confusa⸻ en cuanto al Secretario de Estado. Esto es, aunque la Constitución exige la confirmación del Secretario de Estado por ambas Cámaras Legislativas, parecería que bajo la ley no tendría que cumplir con este requisito para ostentar el cargo de Gobernador en el caso de surgir una vacante permanente.

Esto fue incluido en el proyecto que se convirtió en la Ley Núm. 7-2005 luego de que la Comisión de Gobierno de la Cámara de Representantes recomendara que se eximiera al Secretario de Estado del requisito de tener que ser confirmado en su puesto como condición previa para suceder al cargo de Gobernador.[87] Ello, tras recibir los comentarios del Departamento de Justicia sobre el proyecto de ley en los cuales se concluía que la Constitución de Puerto Rico no establecía dicha exigencia. Tras acogerse estas recomendaciones, la Ley Núm. 7-2005, *supra*, dispuso que "[p]ara advenir al ejercicio permanente del cargo de Gobernador, **un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; <u>excepto en el caso del Secretario(a) de</u>**

---

[87] Informe Positivo sobre el Proyecto de la Cámara 327 de 16 de febrero de 2005, *supra*, pág. 4 ("el Departamento de Justicia sugirió que se especificara en el proyecto que el requisito de tener que ocupar el puesto en propiedad, habiendo sido ratificado el nombramiento, no aplica a la sucesión de carácter permanente del Secretario de Estado al cargo de Gobernador bajo la primera oración de la sección 7 del Artículo IV de la Constitución").

**Estado**, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico". (Énfasis y subrayado suplido). Es decir, la interpretación del estatuto ⸺corroborada en su historial legislativo⸺ es que los Secretarios, excepto el Secretario de Estado, tienen que haber sido ratificados por la Asamblea Legislativa. Así, el Secretario de Estado, conforme surge del texto del Art. 1 de la Ley Núm. 7-2005, *supra*, podría situarse en el cargo de Gobernador permanentemente, **aun cuando no ha sido confirmado por la Cámara de Representantes y el Senado de Puerto Rico.** Ante ese panorama, solo podemos concluir que esa normativa **contraviene** los principios más fundamentales consagrados en la Constitución, según emanan de su propio texto y del historial de la Convención Constituyente.

La confirmación de los Secretarios del gabinete tuvo tanta envergadura para la Asamblea Constituyente que el Art. IV, Sec. 4, de la Constitución de Puerto Rico establece que el Gobernador podría "[n]ombrar, en la forma que se disponga por esta Constitución o por ley, a todos los funcionarios para cuyo nombramiento esté facultado. El Gobernador podrá hacer nombramientos cuando la Asamblea Legislativa no esté en sesión. **Todo nombramiento que requiera el consejo y consentimiento del Senado o de ambas cámaras quedará sin efecto al levantarse la siguiente**

**sesión ordinaria**".[88] Así, ningún Secretario de Estado ocupa dicho cargo **en propiedad** hasta tanto sea confirmado por la Asamblea Legislativa. Tan es así que el mero silencio de esta última sobre la nominación durante la sesión ordinaria que sigue, lo descalificaría y constituiría un rechazo, teniéndose que nominar un nuevo Secretario.

IV

La decisión de si confirman a un Secretario del gabinete del Gobernador corresponde exclusivamente a la Asamblea Legislativa. Ahora bien, la controversia sobre quién ocupa algún cargo conforme con la Constitución, es una decisión que corresponde en última instancia al Poder Judicial. En ese contexto, si bien los poderes políticos tienen la capacidad de interpretar inicialmente los preceptos constitucionales y estatutarios, es este Tribunal Supremo el intérprete último y a quien corresponde el deber de dilucidar las controversias y aclarar los contornos de la Constitución. Reitero, sabido es que ni los cuerpos y órganos legislativos ni los funcionarios ejecutivos pueden convertirse en jueces de sus propios poderes.[89] Son los tribunales los intérpretes finales de las leyes y la Constitución. Así ha sido siempre.[90]

---

[88] Const. PR, *supra,* Art. IV, Sec. 4, págs. 417-418.

[89] *Silva v. Hernández Agosto*, 118 DPR 45, 55 (1986).

[90] Véase *Acevedo Vilá v. Meléndez,* supra, pág. 883 ("cuando haya un conflicto entre la Rama Ejecutiva y la Rama Legislativa, le corresponde a la Rama Judicial interpretar las disposiciones constitucionales y proveer un foro para dilucidar la controversia, ya que el Poder Judicial es el último intérprete de la

La Constitución de Puerto Rico es expresa y diáfana al requerir que el nominado a Secretario de Estado sea confirmado por parte de la Cámara de Representantes y el Senado de Puerto Rico. No tendría raciocinio alguno concluir que, en la eventualidad de una vacante permanente, el Secretario de Estado que puede ocupar el cargo de Gobernador puede ser objeto de menos participación democrática que el que se limitará a ser Secretario en el gabinete.

Asimismo, está ausente de fundamentos argumentar que, a pesar de que en Puerto Rico hay solo una forma de destituir a un Gobernador —el residenciamiento—[91], un Secretario de Estado designado, no confirmado por la Asamblea Legislativa, puede ocupar el cargo del Primer Ejecutivo al abrirse la vacante permanente y, posteriormente, ser removido mediante el voto en contra o el rechazo de la mayoría de uno de los Cuerpos Legislativos. Lo que es peor, que al celebrarse la próxima sesión ordinaria, sea destituido por el mero silencio de la Asamblea Legislativa. Esto no tendría sentido si, en

---

Constitución y de las leyes"); *Colón Cortés v. Pesquera*, 150 DPR 724, 750 (2000); *Nogueras v. Hernández Colón,* supra, pág. 413; *Silva v. Hernández Agosto*, supra; *Peña Clos v. Cartagena Ortiz*, 114 DPR 576 (1983).

[91] Véase 4 Diario de Sesiones, *supra*, págs. 1782. A esos efectos, del Diario de Sesiones de la Convención Constituyente emana que, como respuesta a un planteamiento del señor Benítez en cuanto a que la única forma de destituir a un Gobernador era mediante su residenciamiento, el señor Fernández Méndez señaló que "[e]stamos de acuerdo que nadie lo puede destituir. Ahora, de que aquí lo que se ha querido decir es residenciar, remover por residencia". Íd.

efecto, hubiera tenido derecho a suceder en el cargo de Gobernador. Recordemos que el sucesor del Gobernador tendría derecho a **"desempeña[r] [el cargo] por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión".[92]**

La única salida ——la cual resulta totalmente inaceptable—— sería eximir a un Secretario del gabinete de un requisito fundamental y expreso de la Constitución de Puerto Rico: la confirmación por parte de la Asamblea Legislativa. Cabe recordar que, en cuanto a los poderes y facultades de la Rama Ejecutiva y la Rama Legislativa, particularmente respecto al poder de nombramientos y confirmación, en *Hernández Agosto v. López Nieves*, 114 DPR 601, 620 (1983), indicamos expresamente que

> […] **la Rama Ejecutiva no puede despojar a la Rama Legislativa del <u>poder de confirmación</u> que le confiere la Constitución y las leyes.** Tampoco puede el Senado o la Rama Legislativa usurpar el poder de nominación del señor Gobernador mediante afirmaciones indicativas de que confirmará únicamente a determinado candidato. (Énfasis y subrayado suplido).

Ante los desafortunados incidentes acaecidos en las pasadas semanas, quedaron vacantes la posición de Gobernador y Secretario de Estado casi simultáneamente; primero la posición de Secretario de Estado y, subsiguientemente, la del Primer Ejecutivo. No habiéndose cumplido **al momento de la renuncia** del Gobernador con la confirmación por ambos Cuerpos Legislativos del licenciado

---

[92] Cont. PR, *supra,* Art. IV. Sec. 7.

Pierluisi Urrutia como Secretario de Estado, **este último no contaba con los requisitos constitucionales para ocupar la vacante de Gobernador.** Así las cosas, procede continuar con el funcionario que sigue en el orden de sucesión y que cumpla con todos los requerimientos fundamentales establecidos en la Constitución para llenar la vacante.

Con esta decisión judicial se le imprime certeza y legitimidad al Estado de Derecho tan necesario para retomar el rumbo de la estabilidad y la paz social que con vehemencia reclama el Pueblo de Puerto Rico. Acceder a la invitación que nos hace el licenciado Pierluisi Urrutia constituiría una contradicción jurídica en claro menosprecio al ordenamiento constitucional. Más aún, validar el nombramiento impugnado provocaría un daño irreparable a los cimientos que edifican la doctrina de separación de poderes. Ante este escenario, me veo impedido de soslayar, por imperativo constitucional, la responsabilidad que tenemos de proteger los derechos del Pueblo y de nuestras instituciones democráticas.

En vista de los antecedentes fácticos y los fundamentos de orden constitucional enunciados en la Opinión del Tribunal, reitero mi conformidad con el curso decisorio.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 |
|---|---|

Opinión de Conformidad emitida por el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 7 de agosto de 2019.

> **Decisión unánime; 9-0. Hoy este Tribunal habla con una sola voz, alto y claro. Que no quepa duda alguna que con esta actuación todos y cada uno de los integrantes de este Foro demuestran estar cumpliendo a cabalidad con su obligación de mantener y defender la Constitución y las leyes de Puerto Rico, asumida al juramentar al cargo de juez que hoy ostentamos. La ciudadanía puede estar siempre confiada de que nada ni nadie nos hará alejarnos de dicho juramento.**

Estoy conforme con la Opinión Mayoritaria que antecede. A tales efectos, cabe destacar ciertos asuntos que ameritan puntualizarse en aras de despejar dudas, brindar sosiego a la ciudadanía y mantener la confianza en las instituciones de gobierno.

**I**

La controversia que ha dividido al país en este momento crítico para nuestra gobernanza tiene su raíz en la interpretación de las disposiciones pertinentes de la Constitución de Puerto Rico en contraste con lo dispuesto en la *Ley para proveer el orden de sucesión y sustitución para el cargo de Gobernador*, Ley Núm. 7 de 24 de julio de 1952 (**Ley 7-1952**), según enmendada, 3 LPRA sec. 8 *et al.*, atinente al requisito de confirmación legislativa del Secretario de Estado para ocupar permanentemente la posición vacante de Gobernador. Para ello, es meritorio adentrarnos en los documentos pertinentes y, en un ejercicio hermenéutico, auscultar la intención de los constituyentes y los legisladores que atendieron en sus orígenes esta preocupación.

**II**

**A**

Las disposiciones correspondientes para determinar la sucesión del Gobernador están incluidas en el Artículo IV de la Constitución de Puerto Rico, LPRA, Tomo 1. En particular, se enumeran las siguientes secciones:

> Sección 1. El Poder Ejecutivo se ejercerá por un **Gobernador, quien será elegido por voto directo** en cada elección general.

> Sección 2. El Gobernador ejercerá su cargo por el término de cuatro años a partir del día dos de enero del año siguiente al de su elección y **hasta que su sucesor sea electo y tome posesión.** Residirá en Puerto Rico, en cuya ciudad capital tendrá su despacho.

Sección 3. Nadie podrá ser Gobernador a menos que, a la fecha de la elección, haya cumplido treinta y cinco años de edad, y sea, y haya sido durante los cinco años precedentes, ciudadano de los Estados Unidos de América y ciudadano y residente *bona fide* de Puerto Rico.

Sección 4. Los deberes, funciones y atribuciones del Gobernador serán:

Cumplir y hacer cumplir las leyes.

Convocar la Asamblea Legislativa o el Senado a sesión extraordinaria cuando a su juicio los **intereses públicos** así lo requieran.

**Nombrar, <u>en la forma que se disponga por esta Constitución o por ley</u>, a todos los funcionarios para cuyo nombramiento esté facultado. El Gobernador podrá hacer nombramientos cuando la Asamblea Legislativa no esté en sesión. Todo nombramiento que requiera el consejo y consentimiento del Senado o de ambas cámaras quedará sin efecto al levantarse la siguiente sesión ordinaria.**

.    .    .    .    .    .    .    .

Ejercer las otras facultades y atribuciones y cumplir los demás deberes que se le señalen por esta Constitución o por ley.

**Sección 5. Para el ejercicio del Poder Ejecutivo el Gobernador estará asistido de <u>Secretarios de Gobierno que nombrará con el consejo y consentimiento del Senado. El nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes</u>,** y la persona nombrada deberá reunir los requisitos establecidos en la Sección 3 de este Artículo. […].

.    .    .    .    .    .    .

**Sección 7. Cuando ocurra una <u>vacante</u> en el cargo de Gobernador producida por muerte, <u>renuncia</u>, destitución, incapacidad total y permanente, <u>o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión</u>. La ley dispondrá cuál**

> **de los Secretarios de Gobierno ocupará el cargo de Gobernador en caso de que <u>simultáneamente quedaren vacantes</u> los cargos de Gobernador y de Secretario de Estado.**
>
> .   .   .   .   .   .   .   .   .

(Énfasis nuestro). <u>Íd.</u>

Por su parte, el Diario de Sesiones de la Convención Constituyente recoge el debate de los delegados en torno a la sucesión del Gobernador. De ahí surge la importancia de que el Secretario de Estado —figura que sustituyó al Vicegobernador, quien hubiese sido electo por votación directa del pueblo— contara con el consejo y consentimiento del Senado y de la Cámara de Representantes. De este modo, se garantizaba que, al menos, el eventual sucesor permanente del Gobernador contara con una base democrática indirecta que lo legitimara ante los ojos del Pueblo.[93] A continuación, se resumen las expresiones pertinentes de algunos de los delegados:

> Sr. GUTIERREZ FRANQUI: En relación con la enmienda propuesta por este delegado a la sección 8, voy a solicitar que mi proposición anterior se considere enmendada […] de manera que la enmienda propuesta lea en su principio de la manera siguiente: "Cuando ocurra una vacante en el cargo de Gobernador, producida por muerte, **renuncia**, destitución, incapacidad total y permanente, o **por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, […] "quien lo desempeñará" […] "por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión. La ley**

---

[93] Véase *La nueva Constitución de Puerto Rico*, Escuela de Administración Pública de la Universidad de Puerto Rico, 1954, págs. 512-513; J. Trías Monge, *Historia constitucional de Puerto Rico*, Ed. Universidad de Puerto Rico, 1982, V. III, pág. 132 ("En vista del **nuevo rol** del Secretario de Estado, se dispuso también que el nombramiento de éste estaría sujeto a confirmación por ambas cámaras"). (Énfasis nuestro).

**proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y Secretario de Estado.**

.   .   .   .   .   .   .   .   .

Sr. PRESIDENTE: ¿Ha terminado el señor Delegado de hacer la presentación?

Sr. GUTIERREZ FRANQUI: *Un párrafo más*, **señor Presidente.**

"*El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa.*"

**El propósito de la enmienda, señor Presidente y compañeros delegados, es establecer el siguiente sistema o método para la sucesión accidental del Gobernador**, o sea, para en casos de que antes de vencido el término para el cual ha sido electo un gobernador, el cargo quede vacante por razones de renuncia, muerte, incapacidad total y permanente o cualquier otra razón que produzca falta absoluta. *De acuerdo con la enmienda que acabamos de presentar*, al ocurrir tal vacante ocuparía el cargo de Gobernador el Secretario de Estado, quien desempeñaría ese cargo hasta que después de las siguientes elecciones generales fuera electo un gobernador y tomara posesión de su cargo.

*Se dispone que el Secretario de Estado, al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes* […].

.   .   .   .   .   .   .   .   .

*Esa es la proposición que presentamos para sustituir la fórmula o el método de la sucesión accidental en el cargo de gobernador, que fue aprobado en segunda lectura.*

**Entendemos que esta fórmula, evita la creación de un cargo de vicegobernador,** con funciones de tiempo y de interés limitadísimo; que pudiera crear la organización

constitucional y política dentro del gobierno […] de Puerto Rico, un cargo con mucho nombre, mucho sueldo y casi nada que hacer, lo que hemos considerado indeseable. (Énfasis suplido). 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2311-2313 (1952).

**B**

El orden de sucesión y sustitución para el cargo de Gobernador de Puerto Rico se atendió inicialmente mediante la Ley 7-1952. Sin embargo, la Ley 7-2005 la enmendó, entre otros asuntos, para añadir unas secretarías inexistentes en 1952. De manera que, mediante la Ley 7-2005, se incluyeron Secretarios que serían elegibles para suceder al Gobernador ante una vacante absoluta o en el ejercicio interino de sus funciones.

En particular, la Exposición de Motivos del estatuto dispone lo siguiente:

> **En ese sentido, ya que nuestra Constitución mantiene el orden sucesorio entre funcionarios de confianza del Primer Ejecutivo, <u>que todos estos funcionarios sean nombrados con el consejo y consentimiento del Senado, y en el caso del Secretario de Estado que requiere además el de la Cámara de Representantes, mantiene un elemento de participación del pueblo en el proceso.</u> Es razonable concluir que esta sucesión debe corresponder <u>a funcionarios que ocupen el puesto en propiedad, habiendo sido debidamente ratificados en la legislatura</u> y que cumplan con los requisitos constitucionales de edad y residencia. […].**

> .   .   .   .   .   .   .   .

> Del mismo modo, el Artículo IV Sección 3 de la Constitución dicta una serie de requisitos que debe cumplir el Gobernador o la Gobernadora en cuanto a edad, ciudadanía y domicilio. **<u>Se decreta categóricamente que el Secretario de Estado, cuya función primaria es ser vice gobernador, debe cumplir con los mismos</u>. Por**

**extensión, es razonable esperar que el funcionario que vaya a convertirse en Gobernador en propiedad, con carácter permanente, cumpla también los mismos requisitos.** […]. (Énfasis nuestro). Exposición de Motivos, Ley 7-2005 (2005 (Parte 1) Leyes de Puerto Rico 19-20).

Así las cosas, el Artículo 1 de la Ley 7-1952, luego de haber sido enmendado por la Ley 7-2005, consignó cuál sería el orden de sucesión del Gobernador ante una vacante absoluta, al disponer que:

Cuando ocurra una vacante en el cargo de Gobernador […] de Puerto Rico producida por muerte, **renuncia**, destitución, incapacidad total y permanente, **o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión.** Si **simultáneamente** quedaren vacantes los cargos de Gobernador y de Secretario de Estado el orden de sucesión bajo esta sección será el siguiente:

(1) Secretario de Justicia.
(2) Secretario de Hacienda.
(3) Secretario de Educación.
(4) Secretario del Trabajo y Recursos Humanos.
(5) Secretario de Transportación y Obras Públicas.
(6) Secretario de Desarrollo Económico y Comercio.
(7) Secretario de Salud.
(8) Secretario de Agricultura.

**Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; *excepto en el caso del Secretario(a) de Estado*, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución […] de Puerto Rico.** Deberá, además, cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Art. IV de la Constitución […], en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/o con el requisito de haber sido ratificado

su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en esta sección excepto cuando aplique el Art. IV, Sec. 9 de la Constitución […] de Puerto Rico. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante. (Énfasis nuestro). 3 LPRA sec. 8.

**C**

Al examinar la normativa vigente en los estados de la Unión americana advertimos que en todos y cada uno de ellos se ha integrado la participación democrática como elemento esencial al cambio de mando en la dirección gubernamental.

A esos efectos, cabe destacar que la figura del "lieutenant governor" o vicegobernador se utiliza en la inmensa mayoría de los estados como método para llenar la vacante del puesto de Gobernador. En el caso de Maine, New Hampshire, South Carolina, Tennessee, Washington y West Virginia le corresponde al Presidente del Senado ocupar la plaza del Primer Mandatario estatal, mientras que en Arizona, Oregon y Wyoming el puesto recae en el Secretario de Estado.[94] Ahora bien, independientemente del sistema

---

[94] Véanse: Ala. Const. Art. V, Secs. 114, 127-128 (Alabama); AK Const. Art. 3, Secs. 8, 9-14 (Alaska); A.R.S. Const. Art. 5, Secs. 1-6 (Arizona); AR Const. Art. 6, Sec. 3, 12-14 (Arkansas); West's Ann.Cal.Const. Art. 5, Secs. 10-11 (California); C.R.S.A. Const. Art. 4, Secs. 3, 13 (Colorado); C.G.S.A. Const. Art. 4, Secs. 1, 18 (Connecticut); Del.C.Ann. Const., Art. 3, Secs. 19-20 (Delaware); West's F.S.A. Const. Art. 4, Secs. 3, 5 (Florida); GA Const. Art. 5, Secs. 1, paras. III, V (Georgia); HI Const. Art. 5, Secs. 2, 4 (Hawaii); ID Const. Art. IV, Secs. 1, 2, 12, 14 (Idaho); ILCS Const. Art. 5, Secs. 1, 4, 6 (Illinois); IN Const. Art. 5, Secs. 3, 10 (Indiana); I.C.A. Const. Art. 4, Secs. 3-4 (Iowa); K.S.A. Const. Art. 1, Secs. 1, 11 (Kansas); KY Const. Secs. 70, 84 (Kentucky); La. Const. Ann. Art. IV, Secs. 3, 14 (Louisiana); Me. Const. Art. IV, Pt. 2, Sec. 3, Art. V, Pt. 1, Sec. 14. (Maine); Md. Const. Art. II, Secs. 1a, 2, 6 (Maryland); Mass. Const. Art. I, Pt. 2, C. 2, Sec. 2, Art. III, Pt. 2, C.2, Sec. 2 (Massachusetts); MI Const. Art. 5, secs. 21, 26 (Michigan); Minn. Const. Art. V, Secs. 1, 5 (Minnesota); Miss. Const. Art. 5, Secs. 128, 131

sucesorio establecido, **en todos los estados** las personas designadas para ocupar el puesto de Primer Mandatario son funcionarios **electos por el pueblo**. Aun en aquellos pocos casos en que la línea sucesoria recae en el Secretario de Estado, específicamente se dispone que este funcionario será escogido para su puesto mediante una votación popular.

**III**

La normativa constitucional no debe permitir que absurdos y tecnicismos legales atenten contra nuestro Sistema Democrático de Gobierno. La democracia representativa está sustentada en el principio de que cada ciudadano contará con un voto para así escoger a funcionarios que velen por sus intereses en los asuntos gubernamentales. Precisamente es el Gobernador el principal garante de la confianza y voluntad del Pueblo, quien lo eligió democráticamente mediante votación directa. Igualmente, como regla general, los ciudadanos escogen con sus votos directamente a los legisladores, quienes tendrán a su cargo la ardua tarea de brindar su consejo y

---

(Mississippi); Mo. Const. Art. IV, Secs. 11(a); 12 (Missouri); Mont. Const. Art. VI, Secs. 2, 14 (Montana); Neb. Const. Art. IV, Secs. 1, 16 (Nebraska); N.R.S. Const. Art. 5, Secs. 17, 18 (Nevada); N.H. Const. Pt. 2, Arts. 42, 49 (New Hampshire); N.J. Const. Art. V, Sec. 1 parras. 4, 6 (New Jersey); N.M. Const. Art. V, Secs. 1, 7 (New Mexico); N.Y. Const. Art. IV, Secs. 1, 5 (New York); N.C. Const. Art. III, Secs. 2, 3 (North Carolina); N.D. Const. Art. V, Secs. 2, 11 (North Dakota); Ohio Const. Art. III, Secs. 1a, 15, 17, 22 (Ohio); Okla. Const. Art. 6, Secs. 15, 16 (Oklahoma); Or. Const. Art. V, Sec. 8a, Art. VI, Sec. 1 (Oregon); Pa. Const. Art. IV, Secs. 4, 13 (Pennsylvania); R.I. Const. Art. IX, Secs. 1, 9 (Rhode Island); S.C. Const. Art. IV, Secs. 6, 8 (South Carolina); S.D. Const. Art. IV, Secs. 2, 6 (South Dakota); TN Const. Art. 3, Sec. 12, Art. 7, Sec. 1 (Tennessee); TX Const. Art. IV, secs. 1-3a (Texas); U.C.A. 1953, Const. Art. 7, Secs. 1-2, 11 (Utah); VT Const. Ch. II, Secs. 20, 24 (Vermont); VA Const. Art. 5, Secs. 13, 16 (Virginia); WA Const. Art. 3, Secs. 1, 10 (Washington); WV Const. Art. VI, Sec. 3, Art.

consentimiento a los miembros del Gabinete del Gobernador electo para que este pueda cumplir con su política pública. Esa interrelación entre la Rama Ejecutiva y la Legislativa es **esencial**, no solo para mantener los poderes de ambas ramas balanceados, sino para que los procesos sean democráticos y representativos de los votos depositados por los ciudadanos en las urnas.

Por esa razón, la Constitución de Puerto Rico exige que los funcionarios que asistirán a la labor del gobernante de turno sean nombrados con el consejo y consentimiento del Senado. Véase Art. 4, Sec. 5, Const. PR, LPRA, Tomo 1.

En el caso particular del Secretario de Estado, surge de las expresiones de los delegados de la Convención Constituyente, recogidas en el Diario de Sesiones, que el lenguaje del Artículo IV, Sección 5 de la Constitución de Puerto Rico, el cual especifica que el Secretario de Estado deberá contar con el consejo y consentimiento del Senado y, además, de la Cámara de Representantes, fue considerado para establecer "la fórmula o el método de la sucesión accidental en el cargo de gobernador", que finalmente fue consignado en el Artículo IV, Sección 7 de la Constitución de Puerto Rico. Diario de Sesiones, *supra*, págs. 2312-2313. La referida "fórmula, evita[ba] la creación de un cargo de vicegobernador", cuya discusión en todo momento consideró que debía haber sido escogido mediante una

---

VII, Sec. 16 (West Virginia); W.S.A. Const. Art. 5, Secs. 1, 7

votación directa. A través de ese método, los constituyentes quisieron asegurarse de que el primer funcionario en el orden de sucesión contara con una base democrática indirecta aún mayor que la requerida para los demás Secretarios en la línea de sucesión, quienes únicamente debían cumplir con la confirmación del Senado. Por consiguiente, una lectura integral de la discusión aludida, sin lugar a dudas confirma la **interrelación** entre las Secciones 5 y 7 del Artículo IV de la Constitución de Puerto Rico. Véase Diario de Sesiones, *supra*.

Por su parte, del Historial Legislativo de la Ley 7-2005 surge que el proyecto original para enmendar la Ley 7-1952 contemplaba que el Secretario de Estado fuese confirmado por ambos cuerpos legislativos. Sin embargo, a base de una lectura fragmentada de la Constitución de Puerto Rico, el Secretario de Justicia en aquel momento le remitió sus comentarios sobre el proyecto de ley a la Cámara de Representantes, donde concluyó que insertar el requisito de confirmación de la Asamblea Legislativa para ese cargo en la legislación propuesta resultaba contrario a las disposiciones constitucionales. Como resultado de lo anterior, se añadió al proyecto final una frase que eximía al Secretario de Estado de confirmación legislativa ("excepto en el caso del Secretario de Estado […]"). 3 LPRA sec. 8.[95]

---

(Wisconsin); WY Const. Art. 4, Secs. 6, 11 (Wyoming).
[95]   Véase, además, Ponencia del Departamento de Justicia a la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 327,

En el presente caso, el Hon. Pedro R. Pierluisi Urrutia, aquí recurrido, amparado en el estado de derecho vigente establecido por la Constitución de Puerto Rico y la Ley 7-1952, según enmendada —la cual se presumía constitucional para todos los efectos legales pertinentes—, procedió a tomar juramento como Gobernador. Véase ELA v. Northwestern Selecta, 185 DPR 40, 71 (2012); Aut. Carreteras v. 8,554.741 m/c I, 172 DPR 278, 298 (2007); Rexach v. Ramírez, 162 PR 130, 148 (2004).

Ahora bien, aunque el requisito de que se confirme al Secretario de Estado por ambas cámaras previo a que este pueda suceder permanentemente al Gobernador no aparezca textualmente en el cuerpo de la Constitución de        Puerto Rico, una lectura integral de las disposiciones pertinentes de este documento a la luz de las expresiones esbozadas durante el debate de la Convención Constituyente concerniente a cómo llenar la vacante del Gobernador, no permiten la interpretación de la Ley 7-1952 propuesta por la parte recurrida.

**Establecer como precedente que un Gobernador renunciante pueda, sin el consejo y consentimiento de ambos cuerpos legislativos, designar a un Secretario de Estado nombrado en receso para que sea su sucesor apenas días, horas o hasta minutos antes de que sea efectiva su dimisión —teniendo ello el efecto de que este sea el único en la**

---

Departamento de Justicia, 8 de febrero de 2005; Informe positivo de la Cámara de Representantes sobre el P. de la C. 327, 15ta Asamblea Legislativa, 1ra Sesión Ordinaria, 16 de febrero de 2005.

**línea sucesoria del cargo vacante que no cuente al menos con la aprobación indirecta del Pueblo—, ciertamente resultaría en un absurdo con visos dictatoriales, completamente ajeno a nuestro Sistema Democrático de Gobierno.** De igual manera, adoptar dicha interpretación sería contraria a la práctica de todos los estados de Estados Unidos, donde las personas designadas para ocupar el puesto de Primer Mandatario son funcionarios que fueron avalados democráticamente por el pueblo.

El pueblo puertorriqueño necesita tener la certeza y convicción de que la persona que ostenta el cargo de Primer Mandatario en nuestra sociedad lo haga amparado en los principios democráticos y de representatividad que inspiraron la adopción de la Constitución de Puerto Rico. A falta de votación directa al puesto de Secretario de Estado, la democracia _exige_ que se ejerza esa función fiscalizadora de manera indirecta a través del escrutinio de los legisladores quienes, en ese desempeño, representan a los ciudadanos. Así lo visualizaron de manera sabia los miembros de la Convención Constituyente hace ya más de medio siglo y es nuestro deber respetar este legado.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Senado de Puerto Rico, representado por su Presidente, Hon. Thomas Rivera Schatz<br><br>Peticionario<br><br>v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico juramentado<br><br>Recurridos | CT-2019-0004 | |

El Juez Asociado señor ESTRELLA MARTÍNEZ emitió una Opinión de conformidad.

En San Juan, Puerto Rico, a 7 de agosto de 2019.

Hoy nos corresponde resolver si el Pueblo de Puerto Rico cuenta con un Gobernador en propiedad que cumple con **todos** los requisitos constitucionales para ocupar ese puesto. Esta determinación debe estar regida primordialmente por la Constitución de Puerto Rico, a la luz de las acciones y omisiones de los protagonistas que han generado esta crisis de gobernanza. Específicamente, debemos dilucidar si un Secretario de Estado designado por un Gobernador renunciante y para cuyo nombramiento se

convocó en Sesión Extraordinaria a la Asamblea Legislativa, puede ostentar el cargo de Gobernador en propiedad por el resto del cuatrienio. Ello, a pesar de que no cuenta con el requisito constitucional del consejo y consentimiento de ambos cuerpos legislativos. Por considerar que el juramento del Secretario de Estado designado al cargo de Gobernador en propiedad vulneró los principios más básicos de la democracia que enmarcan las directrices constitucionales, estoy conforme con la determinación de este Tribunal.

## I.

El privilegio de gobernar no es inquebrantable. Aunque nos enfrentamos por primera vez a la situación de un gobernador electo por el Pueblo de Puerto Rico que presentó una renuncia, la realidad es que los arquitectos de la Constitución lo previeron expresamente. Por tanto, estimaron necesario delinear el procedimiento a seguir para suceder al cargo de Gobernador de Puerto Rico en caso de que quedara vacante, situación que nos ocupa.

El proceso a seguir en tal situación fue extensamente debatido en la Convención Constituyente. "Este fue uno de los asuntos que mayor división provocó entre los miembros de la delegación popular, inclinándose unos a la retención del sistema de sustitución del Gobernador por un funcionario no electo y favoreciendo otros la creación del cargo de Vicegobernador, como en la generalidad de los estados federados". J. Trías Monge, Historia Constitucional de Puerto

Rico, Ed. Universidad de Puerto Rico, 1982, Vol. III, págs. 129-130.

Sin embargo, la propuesta prevaleciente fue la designación de un Secretario o Secretaria de Estado como sucesor inmediato a la vacante permanente de Gobernador con la confirmación de ambos cuerpos legislativos. Íd., pág. 132. De ese modo, además del requisito básico de contar con el consentimiento del Senado de Puerto Rico, se otorgó una garantía democrática adicional al mecanismo de sucesión al requerir el consentimiento de la Cámara de Representantes, quienes también son delegados electos de la voluntad del Pueblo conforme a nuestro arreglo constitucional. Íd.; J. J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 238.[96]

A esos efectos, resulta revelador el debate que generó la discusión del delegado Víctor Gutiérrez Franqui, propulsor de la postura finalmente adoptada en la Constitución de Puerto Rico y cuyas expresiones ameritan citar íntegramente:

> Sr. GUTIERREZ FRANQUI: En relación con la enmienda propuesta por este delegado a la sección 8, voy a solicitar que mi proposición anterior se considere enmendada en los términos siguientes: Que se elimine de la sección 8, según yo propuse la enmienda, lo siguiente, empezando en la primera línea de mi enmienda anterior: "un gobernador electo no pueda tomar posesión de su cargo o cuando", de manera que la enmienda propuesta lea en su principio de la manera siguiente: "Cuando ocurra una vacante en el cargo de Gobernador, producida

---

[96]Véase, además, A. Fernós López-Cepero, ¡Ser nosotros mismos!, San Juan, Ed. UPR, 2003, pág. 88.

por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará hasta que su sucesor"... mejor dicho, hasta, "quien lo desempeñará", [que] se elimine el resto de mi moción anterior y ahí se inserte lo siguiente: "por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión. La ley proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y Secretario de Estado."

"Cuando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones, lo sustituirá mientras dure el impedimento el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo, lo ocupará el secretario de gobierno que se determine por ley."

"Cuando por cualquier razón el Gobernador electo no pueda tomar posesión de su cargo, la Asamblea Legislativa electa elegirá un gobernador por mayoría absoluta de cada una de sus cámaras, quien desempeñará el cargo por la totalidad del término y hasta que el próximo Gobernador sea electo en la siguiente elección general y tome posesión."

Sr. PRESIDENTE: ¿Ha terminado el señor Delegado de hacer la presentación?

Sr. GUTIERREZ FRANQUI: Un párrafo más, señor Presidente. "El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa."

El propósito de la enmienda, señor Presidente y compañeros delegados, es establecer el siguiente sistema o método para la sucesión accidental del Gobernador, o sea, para en casos de que antes de vencido el término para el cual ha sido electo un gobernador, el cargo quede vacante por razones de renuncia, muerte, incapacidad total y permanente o cualquier otra razón que produzca falta absoluta. De acuerdo con la enmienda que acabamos de presentar, al ocurrir tal vacante ocuparía el cargo de Gobernador el

Secretario de Estado, quien desempeñaría ese cargo hasta que después de las siguientes elecciones generales fuera electo un gobernador y tomara posesión de su cargo.

Se dispone que el Secretario de Estado, al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta.

Se dispone, además, que en caso de ausencia temporal, ocupará el cargo de Gobernador también el Secretario de Estado, o en ausencia de ambos, de naturaleza temporal, la persona que designe la Asamblea Legislativa.

Y finalmente se dispone para el caso que un gobernador electo, no pueda tomar posesión de su cargo por impedimento de naturaleza permanente, como sería la incapacidad total y permanente o la muerte después de electo y antes de tomar posesión de su cargo. Para ese caso se provee que la Asamblea Legislativa, electa en la misma elección del Gobernador que fue electo y no pudo tomar posesión, al reunirse en su primera sesión, procederá a elegir una persona para ocupar el cargo de gobernador, por el término de cuatro años, y que esa selección se hará por cada una de las cámaras, votando separadamente y por mayoría absoluta.

Esa es la proposición que presentamos para sustituir la fórmula o el método de la sucesión accidental en el cargo de gobernador, que fue aprobado en segunda lectura.

Entendemos que esta fórmula, evita la creación de un cargo de vicegobernador, con funciones de tiempo y de interés limitadísimo; que pudiera crear la organización constitucional y política dentro del gobierno del Estado Libre Asociado de Puerto Rico, un cargo con mucho nombre, mucho sueldo y casi nada que hacer, lo que hemos considerado indeseable.

Por esas razones, para sustituir el método anteriormente indicado, proponemos ahora que se enmiende el acuerdo de esta Convención, en el sentido que hemos propuesto; y, de ser así convenido por la Convención, que se autorice a la Comisión de Redacción y Estilo para llevar a cabo aquellos cambios que resulten necesarios en el

resto, en todo el texto de la constitución, para ajustarlo a la nueva organización y situación creada, si es que esta enmienda es aprobada por la Convención.

[…]

Sr. PRESIDENTE: El señor Secretario se servirá dar lectura a la enmienda propuesta por el delegado señor Gutiérrez Franqui.

Sr. SECRETARIO: "Sección 8.—Cuando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado quien lo desempeñará por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión. La ley proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado.

"Cuando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones lo sustituirá mientras dure el impedimento el Secretario de Estado. Si por cualquier razón el Secretario de Estado no pudiere ocupar el cargo lo ocupará el secretario de gobierno que se determine por ley.

"Cuando por cualquier razón el Gobernador electo no pudiere tomar posesión de su cargo la Asamblea Legislativa electa, elegirá un gobernador por mayoría absoluta de cada una de sus cámaras, quien desempeñará el cargo por la totalidad del término y hasta que el próximo Gobernador sea electo en la siguiente elección general y tome posesión de su cargo.

"El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa."

Sr. PRESIDENTE: ¿No hay discusión? Sr. Delegado.

Sr. MELLADO: Para una enmienda que consiste en que se le exijan al cargo de Secretario de Estado los mismos requisitos que se exigen al cargo de Gobernador y que la Comisión de Estilo lo redacte en la forma más apropiada.

Sr. GUTIERREZ FRANQUI: ¿La enmienda es que se requiera para el cargo de Secretario de Estado los mismos requisitos que se requieren para ocupar el cargo de Gobernador? Aceptamos la enmienda.

[…]

Sr. ALEMANY: Sr. Presidente.

Sr. PRESIDENTE: Sr. Alemany.

Sr. ALEMANY: Para una pregunta al compañero Gutiérrez Franqui, si él tiene la bondad de contestármela, ¿cuál es el alcance de la palabra "simultáneamente"?

Sr. GUTIERREZ FRANQUI: Bueno, que pueda ocurrir a la vez.

Sr. ALEMANY: Entonces para ir más allá, si vacare uno este mes y otro el mes que viene, ¿eso no es simultáneamente?

Sr. GUTIERREZ FRANQUI: ¿Cómo?

Sr. ALEMANY: ¿Si vacare uno en este mes y otro el mes que viene, eso no es simultáneamente?

Sr. GUTIERREZ FRANQUI: No, claro que no ... Que coincidan. Aunque no ocurran en el mismo segundo, sino que resulten vacantes los dos antes de cubrirse.

Sr. ALEMANY: Sí, muchas gracias.

Sr. IRIARTE: Sr. Presidente.

Sr. PRESIDENTE: Sr. Iriarte.

Sr. IRIARTE: De acuerdo con la enmienda resultará que el Gobernador estará sustituido por un funcionario que no es electo por el pueblo, así lo entiendo. ¿No? No será electo por el pueblo, el Secretario de Estado, sino que será nombrado por el Gobernador como los demás secretarios del gobierno.

Sr. GUTIERREZ FRANQUI: Con la excepción de que será confirmado por ambas cámaras legislativas.

Sr. IRIARTE: No sería electo directamente por el pueblo. La idea que había era que el vicegobernador fuera electo por el pueblo.

Sr. GUTIERREZ FRANQUI: Esta idea...

Sr. IRIARTE: Y ahora vamos a suprimir al vicegobernador que era electo por el pueblo, que había de sustituirlo.

Sr. GUTIERREZ FRANQUI: Eso no lo dice. El vicegobernador habría de sustituir al Gobernador solamente en caso de vacante permanente y no en caso de vacante temporal.

Sr. IRIARTE: Pero de que entre las funciones de vicegobernador estaría la de sustituir al Gobernador. Sustituirlo en caso de vacante permanente y...

Sr. GUTIERREZ FRANQUI: Eso no lo dice el

proyecto.

Sr. IRIARTE: Pero estaba sobrentendido; ésa es la misión de un vicegobernador; y ahora se suprime el vicegobernador que era un candidato electo por el pueblo por un funcionario que habrá de ser nombrado por el mismo Gobernador. Que no me gusta el cambio. Que no me gusta el cambio. Me parece que debíamos crear en la constitución ambos cargos. El cargo de vicegobernador y el de secretario tal y como está. Para que lo sustituya un cargo electo por el pueblo, no uno nombrado por el Gobernador y luego aprobado por la Asamblea Legislativa.

UN DELEGADO: Que se vote, señor Presidente.

Sr. PRESIDENTE: ¿No hay mayor discusión? Si no la hay, se pone a votación. Los que estén por la afirmativa se servirán significarlo poniéndose de pie. Cincuenta y dos votos a favor. Adoptada la enmienda.

3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2311-2315 (1952).

Como resultado de la discusión anterior, la sujeción del

cargo de Secretario de Estado a que medie la confirmación de

ambas cámaras pasó a formar parte de la Constitución de

Puerto Rico, la cual condiciona el Poder de Nombramiento del

Gobernador de la siguiente manera:

> Para el ejercicio del Poder Ejecutivo el Gobernador estará asistido de Secretarios de Gobierno que nombrará con el consejo y consentimiento del Senado. **El nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes, y la persona nombrada deberá reunir los requisitos establecidos en la Sección 3 de este artículo.** Los Secretarios de Gobierno constituirán colectivamente un consejo consultivo del Gobernador que se denominara Consejo de Secretarios. (Énfasis suplido). Art. IV, Sec. 5, Const. ELA, LPRA, Tomo 1.[97]

De ese modo, cuando ocurre una vacante absoluta o

permanente en el cargo de Gobernador debido a su renuncia -

como sucedió en el caso bajo consideración - la Constitución

de Puerto Rico instituye el siguiente mecanismo:

> Cuando ocurra una vacante en el cargo de Gobernador producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falla absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. La ley dispondrá cuál de los Secretarios de Gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y de Secretario de Estado. Art. IV, Sec. 7, Const. ELA, supra.

Como se puede apreciar, el cargo en propiedad de

Secretario de Estado conlleva en última instancia la

posibilidad de convertirse en el potencial Gobernador de

Puerto Rico en propiedad hasta tanto culmine el término de

gobernación y se elija a un nuevo Gobernador o Gobernadora en

---

[97]El Secretario de Estado también debe haber cumplido treinta cinco años de edad y haber sido, durante los cinco años precedentes, ciudadano de los Estados Unidos de América y ciudadano y residente bona fide de Puerto Rico. Véase, Art. IV, Sec. 3, Const. ELA, Tomo 1.

una elección general. Ahora bien, como observamos previamente, la Constitución dispuso que su nombramiento requerirá el consejo y consentimiento de ambos cuerpos legislativos. De otra parte, para atender el supuesto de que el cargo de Secretario de Estado también esté simultáneamente vacante con el de Gobernador, el Art. IV, Sec. 7, supra, delega en la Asamblea Legislativa la facultad de establecer cuál de los restantes Secretarios de Gobierno habrá de suceder a la vacante de Gobernador.

Como resultado, mediante la Ley Núm. 7 de 24 de julio de 1952, según enmendada, 3 LPRA sec. 8 ("Ley de Sucesión"), la Asamblea Legislativa fijó el resto del orden de sucesión, en defecto del Secretario de Estado, en torno a los siguientes Secretarios de Gobierno: (1) Secretario de Justicia, (2) Secretario de Hacienda, (3) Secretario de Educación, (4) Secretario del Trabajo y Recursos Humanos, (5) Secretario de Transportación y Obras Públicas, (6) Secretario de Desarrollo Económico y Comercio, (7) Secretario de Salud, y (8) Secretario de Agricultura.

De conformidad con las exigencias del Art. IV, Sec. 5, supra, para suceder en la vacante permanente de Gobernador, la Ley de Sucesión históricamente ha requerido que el Secretario de Gobierno a quien le corresponda ocupar la misma, haya ocupado su puesto en propiedad, habiendo sido ratificado su nombramiento, y que además cumpla con los

requisitos de edad, ciudadanía y residencia exigidos por la Constitución para el cargo de Gobernador.[98] Íd.

En el año 2005, la Asamblea Legislativa de Puerto Rico consideró el P. de la C. 327, el cual eventualmente se convirtió en la Ley Núm. 7-2005 para enmendar la Ley de Sucesión. El propósito original de la medida se limitó a actualizar y clarificar el nombre de los Secretarios de Gobierno que configuran el orden de sucesión en caso de una vacante permanente en el cargo de Gobernador o de una administración interina en caso de una ausencia temporera.

En esa dirección, la propia Ley Núm. 7-2005 reconoce en su exposición de motivos la necesidad de apegarse a las exigencias constitucionales al reconocer que:

> [Y]a que nuestra Constitución mantiene el orden sucesorio entre funcionarios de confianza del Primer Ejecutivo, que todos estos funcionarios sean nombrados con el consejo y consentimiento del Senado, y en el caso del Secretario de Estado que requiere además el de la Cámara de Representantes, mantiene un elemento de participación del pueblo en el proceso. Es razonable concluir que esta sucesión debe corresponder a funcionarios que ocupen el puesto en propiedad, habiendo sido debidamente ratificados en la legislatura y que cumplan con los requisitos constitucionales de edad y residencia. Solo en el caso de que ningún Secretario cumpliera con los requisitos anteriormente dispuestos se activara el orden sucesoral obviando los mismos; salvo lo dispuesto

---

[98]Cónsono con el Art. IV, Sec. 8 de la Constitución de Puerto Rico (que aborda lo atinente a una "vacante transitoria"), la Ley de Sucesión distingue entre las ausencias permanentes y transitorias (temporeras) en el cargo de Gobernador. En caso de que ocurra lo último, la ley dispone que el Secretario de Estado sustituirá al Gobernador temporeramente y "[s]i por cualquier razón el Secretario de Estado no pudiere ocupar el cargo se seguirá el orden estipulado en la [Ley de Sucesión]". 3 LPRA sec. 8. Además, dispone que "[p]ara el ejercicio **interino** de las funciones de Gobernador, no será necesario haber cumplido las disposiciones constitucionales sobre edad y residencia, ni con el requisito de que el Secretario llamado a suceder haya sido ratificado". (Énfasis suplido). Íd.

en el Articulo IV Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico.

Del mismo modo, el Articulo IV Sección 3 de la Constitución dicta una serie de requisitos que debe cumplir el Gobernador o la Gobernadora en cuanto a edad, ciudadanía y domicilio. Se decreta categóricamente que el Secretario de Estado, cuya función primaria es ser vice gobernador, debe cumplir los mismos. Por extensión, es razonable esperar que el funcionario o la funcionaria que vaya a convertirse en Gobernador en propiedad, con carácter permanente, cumpla también los mismos requisitos. Por otro lado, para ocupar las funciones con carácter interino, lo cual significa cuestión de días y por lo general resulta en la posposición de la toma de decisiones de envergadura mayor, no debe ser imperativo. De hecho, la situación ha surgido en más de una ocasión sin que ello haya causado conflicto alguno en el funcionamiento del gobierno. 2005 LPR 19-20 (Parte 1).

A pesar de esa realidad, durante el trámite legislativo, la medida que se convirtió en la Ley Núm. 7-2005 incorporó, en lo pertinente, el siguiente lenguaje a la Ley de Sucesión:

[P]ara advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; excepto en el caso del [(de la)] Secretario(a) de Estado, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Deberá, además, cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Art. IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/o con el requisito de haber sido ratificado su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en esta sección excepto cuando aplique el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante. 3 LPRA sec. 8.

La médula de la controversia que hoy nos ocupa se origina como una pugna interpretativa del significado, validez y alcance de dicho texto.

## II.

Al momento de cobrar efectividad la renuncia del Hon. Ricardo A. Rosselló Nevares a su cargo de Gobernador de Puerto Rico el pasado viernes, 2 de agosto de 2019, a las 5:00 pm, el nombramiento del Lic. Pedro R. Pierluisi Urrutia al cargo de Secretario de Estado tan solo había sido confirmado por la Cámara de Representantes, mas no por el Senado.[99]

A pesar de ello, de la existencia de otros Secretarios sucesores en propiedad y de la realidad de que no había culminado la Sesión Extraordinaria convocada, ese mismo día, el licenciado Pierluisi Urrutia juramentó en propiedad como Gobernador de Puerto Rico. Lo anterior, bajo la premisa de que a la hora en cuestión éste ya era Secretario de Estado - aunque no en propiedad - y, por consiguiente, le correspondía ejercer todos los deberes de su cargo, entre los que entendía se encontraba el ocupar la vacante permanente al cargo de Gobernador.

Por un lado, los recurridos argumentan que tal actuación está expresamente autorizada por la Ley de Sucesión,

---

[99]Tomo conocimiento judicial del hecho de que el lunes, 7 de agosto de 2019, el Senado de Puerto Rico culminó los trabajos de la Sesión Extraordinaria _sine die_, sin haber impartido su consentimiento a la designación del Secretario de Estado.

específicamente en virtud de la enmienda introducida por la Ley Núm. 7-2005. Es decir, mediante la aplicación de la frase aislada que dispone "excepto en el caso del [(de la)] Secretario(a) de Estado". Además, se aduce erróneamente que existe una laguna en la Constitución de Puerto Rico, por lo que la Ley Suprema no impide la acción impugnada. Por otro lado, la parte peticionaria cuestiona la validez constitucional y la legitimidad del juramento que nos ocupa.

Para dirimir tal contención, ante el choque de posturas de las ramas políticas, debemos ejercer el poder constitucional que nos "[c]onvierte en el árbitro de las controversias que surgen entre los demás poderes o en la corrección de sus actuaciones y cómo estas afectan a los ciudadanos".[100] Sabido es que todos los funcionarios de las tres ramas de gobierno vienen obligados a cumplir fielmente los postulados de la Constitución y las leyes que rigen nuestro ordenamiento. En ese sentido, ese deber no recae exclusivamente en los jueces, pero en última instancia, "[a]nte un reclamo de inconstitucionalidad de una ley, es la Rama Judicial la llamada a determinar la validez de la misma. . . Son los tribunales los llamados a ser los intérpretes finales de la Constitución y de las leyes que rigen nuestro País". Noriega v. Hernández Colón, 135 DPR 406, 426 (1994). En ese sentido, "[n]uestra Constitución ha delegado en

---

[100]Mensaje del Hon. Federico Hernández Denton, Universidad Interamericana de Puerto Rico, San Juan, 2006, http://www.ramajudicial.pr/Prensa/mensajes/2006/QUE-IMPORTANCIA-TIENEN-LOS-TRIBUNALES-EN-NUESTRA-VIDA-DE-PUEBLO-UIA-26-SEPT-06.pdf (última vista 6 de agosto de 2019).

nosotros, los jueces[,] un inmenso poder. Somos los defensores de los derechos de nuestros ciudadanos, los intérpretes de la constitución y el freno a la usurpación de poder por las ramas políticas del gobierno". <u>Alvarado Pacheco y Otros v. ELA</u>, 188 DPR 594, 634 (2013) (Rivera García, J., Voto Particular de Conformidad).[101]

Al aplicar estos principios a la controversia que nos ocupa, coincidir con la lectura aislada propuesta conduciría irremediablemente a múltiples incongruencias que echarían por la borda los preceptos constitucionales aquí expuestos y crearían una excepción que inmunizaría al Gobernador sustituto entrante de contar con el aval mayoritario de los representantes del Pueblo. Ello equivaldría a ignorar las normas constitucionales discutidas y la responsabilidad de defender la evolución de los principios democráticos que emanan de la misma y que obligan a todos los componentes del Gobierno. La defensa de la democracia se ejerce mediante la acción constitucional y no a través de escaramuzas jurídicas, asaltos de poder y juramentos sorpresivos a espaldas del Pueblo. Recordemos las palabras del entonces delegado Trías Monge al momento de aprobarse la Constitución de Puerto Rico:

> La garantía de esta constitución, repito, ha de ser la opinión alerta e informada y consciente de alta democracia, que ha podido desarrollar en su largo esfuerzo de lucha el pueblo de Puerto Rico.

---

[101]Citando Ponencia del Hon. Federico Hernández Denton, <u>La separación de poderes y la interpretación constitucional en Puerto Rico</u>, XIII Encuentro de Presidentes y Magistrados de los Tribunales Constitucionales y de las Salas Constitucionales de América Latina, México, 2006, https://www.scribd.com/doc/51523764/La-Separacion-de-Poderes-y-la-Interpretacion-Constitucional-en-Puerto-Rico-2006# (última vista 6 de agosto de 2019).

> Ningunas palabras escritas, ningún documento, ningún papel con cinta, podrá definitivamente ser el escudo y ser la protección de nuestros derechos. Lo será el tipo y la calidad de alta democracia que nosotros desarrollemos. Dada esa alta calidad de democracia que tenemos y que seguiremos desarrollando, esa es la garantía máxima. Diario de Sesiones, op cit., pág. 1847.

La supuesta laguna aducida por la parte recurrida es inexistente. Avalar esa teoría conllevaría a sumergir la Constitución en un pantano. Ello, debido a que implicaría que el designado Secretario de Estado pueda ejercer permanentemente el cargo de Gobernador en propiedad sin ser avalado expresamente por los cuerpos legislativos, previo a asumir tan trascendental función. A todas luces, la acción unilateral impugnada se aleja diametralmente de la democracia directa y hasta de la democracia representativa. Igualmente, de las exigencias constitucionales que rigen esta controversia.

Aun cuando la parte recurrida pretenda ignorar estas consideraciones, afloran obstáculos adicionales que demuestran que la excepción invocada es insalvable. En esa línea, no podemos ignorar que el texto añadido por la Ley Num. 7-2005 también recalca la obligación de velar por que el orden de sucesión no quede vacante hasta tanto se hubiere nombrado y haya sido **ratificado** en su puesto un nuevo Secretario de Estado. 3 LPRA sec. 8.

Además, no podemos perder de vista que cuando surge una vacante de Secretario de Estado, la Ley Orgánica del Departamento de Estado, Ley Núm. 77 de 31 de mayo de 1973,

dispone que el Subsecretario de Estado deberá ocupar dicha vacante de manera interina. Véase, 3 LPRA sec. 59a. Es decir, cuando surja una vacante en la Secretaría de Estado, habrá un Secretario de Estado Interino ocupando ese puesto. Por ende, si se permitiera que este último ocupara el puesto de Gobernador permanentemente, ¿en qué otro supuesto sería necesario acudir al esquema de sucesión con los restantes Secretarios de Gobierno ordenado en la Ley de Sucesión? Como puede apreciarse, son múltiples las anomalías constitucionales que habría que ignorar para impartir legalidad a la juramentación en controversia.

En fin, validar la actuación aquí impugnada equivaldría a pautar la siguiente incongruencia: que si bien un nombramiento al cargo de Secretario de Estado requiere el consejo y consentimiento de ambas cámaras legislativas para que pueda ser en propiedad, el procedimiento para sustituir al Gobernador en el caso de una vacante permanente no requiere de un Secretario de Estado ocupando su cargo en propiedad.

Como hemos visto, de un análisis de la totalidad de la Ley de Sucesión, a la luz de los requisitos para el nombramiento de un Secretario de Estado consignados en el Art. IV, Sec. 5 de la Constitución de Puerto Rico, el procedimiento para que éste sustituya al Gobernador en caso de una vacante permanente instituido en el Art. IV, Sec. 7, y, en última instancia, los principios democráticos que

encarna nuestra ley suprema,[102] resulta imposible validar el proceder aquí impugnado. Recordemos nuevamente las expresiones contundentes del delegado señor Gutierrez Franqui al discutir el alcance del Art. IV, Sec. 7:

> El propósito de la enmienda, señor Presidente y compañeros delegados, es establecer el siguiente sistema o método de sucesión accidental del Gobernador, o sea, para en casos de que antes de vencido el término para el cual ha sido electo un gobernador, el cargo quede vacante por razones de renuncia, muerte, incapacidad total o permanente o cualquier otra razón que produzca falta absoluta. De acuerdo con la enmienda que acabamos de presentar, al ocurrir tal vacante ocuparía el cargo de Gobernador el Secretario de Estado, quien desempeñaría ese cargo hasta que después de las siguientes elecciones generales fuera electo un gobernador y tomara posesión de su cargo. **Se dispone que el Secretario de Estado, al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta.** (Énfasis suplido). Diario de Sesiones, op cit., pág. 2313.

III.

De acuerdo con su acepción más común, la democracia es "[u]na doctrina política según la cual la soberanía reside en el Pueblo, que ejerce el poder directamente o por medio de representantes". D. R. Puello Álvarez, Radiografía de la Rama Ejecutiva à la Winston Churchill: un estudio sobre democracia, 85 Rev. Jur. U.P.R. 1069 (2016) (citas omitidas). En nuestra menguada democracia, producto de la relación

---

[102]Véase, Preámbulo, Const. ELA, supra, donde el Pueblo declaró "[q]ue el sistema democrático es fundamental para la vida de la comunidad puertorriqueña", entendiéndolo como un sistema "[d]onde la voluntad del pueblo es la fuente del poder público, donde el orden

colonial con Estados Unidos, resulta medular que este Tribunal custodie al máximo el proceso democrático que el Pueblo tiene dentro de esas limitaciones. Resulta incuestionable que un gobernador en propiedad debe ser preferiblemente electo por el Pueblo directamente. En casos de vacantes permanentes, actualmente, la Constitución de Puerto Rico requiere el aval de los representantes del Pueblo en ambos cuerpos legislativos. En este caso, no ocurrió lo uno ni lo otro, menguándose aún más nuestra democracia con este penoso capítulo. Por los fundamentos antes expuestos, estoy conforme con la decisión de este Tribunal.

Luis F. Estrella Martínez
Juez Asociado

---

político está subordinado a los derechos del hombre y donde se asegura la libre participación del ciudadano en las decisiones colectivas".

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Senado de Puerto Rico, por conducto de su Presidente, Hon. Thomas Rivera Schatz<br><br>    Peticionario<br><br>       v.<br><br>Gobierno de Puerto Rico, por conducto de su Secretaria de Justicia, Hon. Wanda Vázquez Garced; Hon. Pedro R. Pierluisi Urrutia, en su capacidad oficial como Gobernador de Puerto Rico Juramentado<br><br>    Recurridos | CT-2019-0004 | Certificación Intrajurisdiccional |

Opinión de conformidad emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 7 de agosto de 2019.

> "Largo es el camino de la enseñanza por medio de teorías; breve y eficaz por medio de ejemplos".
> Séneca

Hoy, todos los miembros de este Foro, dejando a un lado las diferencias naturales de todo proceso decisorio colegiado, nos hemos unido en **una sola voz** con el fin de proteger los principios constitucionales más básicos sobre los cuales se erige nuestro sistema republicano de gobierno, y los cuales nos distinguen como Pueblo. Al así hacerlo, a través de este ejemplo de unidad, procuramos

brindar paz, estabilidad y sosiego a un país sumido en una crisis constitucional sin precedentes.

La Opinión que hoy emite este Tribunal, la cual hemos refrendado con nuestro voto de conformidad, atiende con particular precisión y corrección las controversias ante nuestra consideración. No obstante, ante la coyuntura histórica que enfrenta Puerto Rico, es meritorio expresarnos brevemente al respecto. Veamos.

## I.

Los hechos medulares que dan génesis al caso que nos ocupa no están en controversia. El viernes 2 de agosto de 2019, a las cinco de la tarde (5:00 p.m.), el licenciado Pedro R. Pierluisi Urrutia juramentó como el duodécimo (12mo) Gobernador del Estado Libre Asociado de Puerto Rico,[103] convirtiéndose así en el primer ejecutivo del país que no es producto de un proceso electoral. Ello, por entender que el Art. 1 de la Ley Núm. 7 de 24 de julio de 1952, 3 LPRA sec. 8, según enmendada por la Ley Núm. 7 de 2 de mayo de 2005 (en adelante, "Ley Núm. 7-2005") lo facultaba para así hacerlo; a pesar de no contar al momento con la confirmación de ambas cámaras legislativas, entiéndase la Cámara de Representantes y el Senado de Puerto Rico. En lo pertinente, el referido articulado establece lo siguiente:

> Cuando ocurra una vacante en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico producida por muerte, renuncia,

---

[103] Ello a partir de las primeras elecciones democráticas para el cargo de Gobernador del Estado Libre Asociado de Puerto Rico.

destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará por el resto del término y hasta que un nuevo Gobernador sea electo y tome posesión. Si simultáneamente quedaren vacantes los cargos de Gobernador y de **Secretario de Estado** el orden de sucesión bajo esta sección será el siguiente:

(1)  Secretario de Justicia.
(2)  Secretario de Hacienda.
(3)  Secretario de Educación.
(4)  Secretario del Trabajo y Recursos Humanos.
(5)  Secretario de Transportación y Obras Públicas.
(6)  Secretario de Desarrollo Económico y Comercio.
(7)  Secretario de Salud.
(8)  Secretario de Agricultura.

**Para advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; excepto en el caso del Secretario(a) de Estado, salvo lo dispuesto en el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico.** Deberá, además, cumplir los requisitos de edad, ciudadanía y residencia dispuestos para el Gobernador por el Art. IV de la Constitución del Estado Libre Asociado, en cuyo defecto la sucesión corresponderá al siguiente en el orden que así los cumpla. Solamente en el caso que ningún secretario cumpliera con los requisitos constitucionales y/con el requisito de haber sido ratificado su nombramiento, se activará este orden de sucesión obviando los requisitos dispuestos en esta sección excepto cuando aplique el Art. IV, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico. Hasta tanto el nuevo Gobernador hubiere nombrado y haya sido ratificado en su puesto un nuevo Secretario de Estado, habrá de velar por que el orden de sucesión no quede vacante. (Énfasis suplido) 3 LPRA sec. 8.

Como bien se señala en la Opinión que hoy emite este Tribunal, si bien la redacción de la mencionada disposición legal, leída de forma literal y fuera de

contexto, podría dar entender que para que un Secretario de Estado ocupe la posición de Gobernador del Estado Libre Asociado de Puerto Rico -- en caso de surgir una vacante por muerte, renuncia, destitución, incapacidad total y permanente o por cualquier otra falta absoluta -- no se requiere el haber sido confirmado por la Cámara de Representantes y el Senado de Puerto Rico, lo cierto es que, de un lectura armoniosa de la Constitución del Estado Libre Asociado de Puerto Rico, así como del Diario de Sesiones de la Convención Constituyente, se desprende todo lo contrario.

## II.

Y es que el Art. IV, Sec. 5, de la Constitución del Estado Libre Asociado de Puerto Rico requiere que el nombramiento del Secretario de Estado, a diferencia de los demás secretarios, cuente con el consejo y consentimiento de ambas cámaras legislativas. Asimismo, requiere que la persona nombrada reúna todos los requisitos necesarios para ejercer el cargo de Gobernador. Al respecto, la mencionada disposición constitucional establece lo siguiente:

> **Para el ejercicio del Poder Ejecutivo el Gobernador estará asistido de Secretarios de Gobierno que nombrará con el consejo y consentimiento del Senado. El nombramiento del Secretario de Estado requerirá, además, el consejo y consentimiento de la Cámara de Representantes,** y la persona nombrada deberá reunir los requisitos establecidos en la sección 3 de este Artículo. Los Secretarios de Gobierno constituirán colectivamente un consejo consultivo del Gobernador que se denominará

Consejo de Secretarios. (Énfasis suplido) Art. IV, Sec. 5, Const. ELA, LPRA, Tomo 1.

De los debates de la Convención Constituyente en torno a la precitada cláusula constitucional, surge con meridiana claridad que estas exigencias están estrechamente ligadas al hecho de que el Secretario de Estado es el primero en la línea de sucesión del Gobernador en caso de que se produzca una vacante en dicho cargo. En lo pertinente a la controversia que nos ocupa, en los mencionados debates se expresa lo siguiente:

> Sr. GUTIERREZ FRANQUI: En relación con la enmienda propuesta por este delegado a la sección 8, voy a solicitar que mi proposición anterior se considere enmendada en los términos siguientes: Que se elimine de la sección 8, según yo propuse la enmienda, lo siguiente, empezando en la primera línea de mi enmienda anterior: "un gobernador electo no pueda tomar posesión de su cargo o cuando", de manera que la enmienda propuesta lea en su principio de la manera siguiente: "Cuando ocurra una vacante en el cargo de Gobernador, producida por muerte, renuncia, destitución, incapacidad total y permanente, o por cualquier otra falta absoluta, dicho cargo pasará al Secretario de Estado, quien lo desempeñará hasta que su sucesor"... mejor dicho, hasta, "quien lo desempeñará", [que] se elimine el resto de mi moción anterior y ahí se inserte lo siguiente: "por el resto de su término y hasta que un nuevo gobernador sea electo y tome posesión. La ley proveerá cuál secretario de gobierno ocupará el cargo de Gobernador en caso de que simultáneamente quedaren vacantes los cargos de Gobernador y Secretario de Estado.
>
> "Cuando por cualquier causa que produzca ausencia de carácter transitorio el Gobernador esté temporalmente impedido de ejercer sus funciones, lo sustituirá mientras dure el impedimento el Secretario de Estado. Si por

cualquier razón el Secretario de Estado no pudiere ocupar el cargo, lo ocupará el secretario de gobierno que se determine por ley.

"Cuando por cualquier razón el Gobernador electo no pueda tomar posesión de su cargo, la Asamblea Legislativa electa elegirá un gobernador por mayoría absoluta de cada una de sus cámaras, quien desempeñará el cargo por la totalidad del término y hasta que el próximo Gobernador sea electo en la siguiente elección general y tome posesión."

Sr. PRESIDENTE: ¿Ha terminado el señor Delegado de hacer la presentación?

Sr. GUTIERREZ FRANQUI: Un párrafo más, señor Presidente.

**"El Secretario de Estado será nombrado por el Gobernador con el consejo y consentimiento de cada una de las cámaras de la Asamblea Legislativa."**

El propósito de la enmienda, señor Presidente y compañeros delegados, es establecer el siguiente sistema o método para la sucesión accidental del Gobernador, o sea, para en casos de que antes de vencido el término para el cual ha sido electo un gobernador, el cargo quede vacante por razones de renuncia, muerte, incapacidad total y permanente o cualquier otra razón que produzca falta absoluta. De acuerdo con la enmienda que acabamos de presentar, al ocurrir tal vacante ocuparía el cargo de Gobernador el Secretario de Estado, quien desempeñaría ese cargo hasta que después de las siguientes elecciones generales fuera electo un gobernador y tomara posesión de su cargo.

**Se dispone que el Secretario de Estado, al ser nombrado por el Gobernador, deberá recibir no meramente la confirmación por el Senado, que se requiere para los demás secretarios de gobierno, sino que en este caso específico habrá de requerirse la confirmación tanto del Senado como de la Cámara de Representantes, actuando separadamente y por mayoría absoluta.**

Se dispone, además, que en caso de ausencia temporal, ocupará el cargo de Gobernador también el Secretario de Estado, o en ausencia de ambos,

de naturaleza temporal, la persona que designe la Asamblea Legislativa.

Y finalmente se dispone para el caso que un gobernador electo, no pueda tomar posesión de su cargo por impedimento de naturaleza permanente, como sería la incapacidad total y permanente o la muerte después de electo y antes de tomar posesión de su cargo. Para ese caso se provee que la Asamblea Legislativa, electa en la misma elección del Gobernador que fue electo y no pudo tomar posesión, al reunirse en su primera sesión, procederá a elegir una persona para ocupar el cargo de gobernador, por el término de cuatro años, y que esa selección se hará por cada una de las cámaras, votando separadamente y por mayoría absoluta.

**Esa es la proposición que presentamos para sustituir la fórmula o el método de la sucesión accidental en el cargo de gobernador, que fue aprobado en segunda lectura.**

**Entendemos que esta fórmula, evita la creación de un cargo de vicegobernador, con funciones de tiempo y de interés limitadísimo; que pudiera crear la organización constitucional y política dentro del gobierno del Estado Libre Asociado de Puerto Rico, un cargo con mucho nombre, mucho sueldo y casi nada que hacer, lo que hemos considerado indeseable.**

[…]

(Énfasis suplido) 3 Diario de Sesiones de la Convención Constituyente 2311-2313 (1952).

Evidentemente, a la luz de lo antes dicho, y como bien se recoge en la Opinión que hoy emite este Tribunal, al establecer que "[p]ara advenir al ejercicio permanente del cargo de Gobernador, un Secretario o Secretaria debe ocupar su puesto en propiedad, habiendo sido ratificado su nombramiento; **excepto en el caso del Secretario(a) de Estado** […]", la Ley Núm. 7-2005 entra en un claro y serio conflicto con el Art. IV, Sec. 5, de la Constitución del

Estado Libre Asociado de Puerto Rico. Conflicto que hace que el texto antes citado, **sólo ese texto**, el cual forma parte de lo dispuesto en la referida Ley Núm. 7-2005, se considere, a todas luces, inconstitucional.

Como bien ha señalado el prestigioso constitucionalista José Julián Álvarez González, autor del libro *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos*, "[m]ucho se cuidó la Convención Constituyente de preservar los pesos y contrapesos y requerir el aval de ambas cámaras para [el cargo de Secretario de Estado] como para permitir que se convierta en gobernador alguien que no posee ese aval y sólo el del Ejecutivo".[104] No cabe duda de que, el así permitirlo, como es la pretensión de la parte recurrida, el Gobierno de Puerto Rico -- con la interpretación que postula sobre el alcance de la Ley Núm. 7-2005, *supra* -- frustraría el trabajo bien pensado de los miembros de nuestra Convención Constituyente. Trabajo que redundó en la creación de un sistema republicano de gobierno compuesto de tres poderes -- Ejecutivo, Legislativo y Judicial -- cada uno con facultades bien definidas en nuestra Carta Magna. **Es por ello que no podemos hacer todo aquello que la Constitución no prohíbe.**

En esa dirección, según fue sentenciado por este Tribunal hace ya más de una década, conviene recordar aquí

---

[104] D. Suárez, *Cuándo se eximió de confirmación al secretario de Estado para gobernar*, Noticel, 2 de agosto de 2019,

que una de las funciones más importantes que ejerce el Poder Legislativo dentro de ese sistema es la de dar consejo y consentimiento a los nombramientos que realiza el Gobernador para distintas posiciones dentro de la rama ejecutiva. *Acevedo Vilá v. Meléndez*, 164 DPR 875, 908 (2005). **"[E]l despojo o la limitación al Poder Legislativo de esa función básica en un sistema como el vigente en Puerto Rico socavaría la base misma de nuestra democracia"**. (Énfasis suplido) *Acevedo Vilá v. Meléndez*, *supra*.

Si el gobernante de un país estuviese facultado para elegir a su sucesor, o posible sucesor, sin una garantía mínima de consentimiento democrático, no habría mucha diferencia entre nuestro sistema de gobierno y una monarquía. En una monarquía no vivimos.

En ese sentido, cualquier traspaso de poder que se de en nuestra jurisdicción debe estar sujeto a un mínimo de consentimiento por parte del Pueblo, representado -- en lo que a este caso se refiere -- por los miembros de la Cámara de Representantes y el Senado de Puerto Rico. Dicho de otro modo, el referido proceso debe cumplir con lo dispuesto en el Art. IV, Sec. 5, de la Constitución del Estado Libre Asociado de Puerto Rico.

De este modo, los límites que impone la doctrina de separación de poderes cobran vida con el propósito de evitar las actuaciones arbitrarias de uno de los poderes

constitucionales de gobierno contra las libertades y derechos de otro y del pueblo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64 (1998). Constituye, pues, un principio, un factor vital en la conservación de nuestras libertades democráticas. Véase, *Banco Popular, Liquidador v. Corte*, 63 DPR 66, 70-71 (1944).

El ejercicio *de facto* del cargo de Gobernador por parte del promovido, licenciado Pedro R. Pierluisi Urrutia, amparado en el defecto constitucional del cual adolece la Ley Núm. 7-2005, *supra*, constituye un agravio de patente intensidad al precepto constitucional de separación de poderes y a nuestro sistema republicano de gobierno. Alejarnos del estado de derecho vigente, y de los valores y preceptos constitucionales que nutren nuestro acervo democrático, no puede ser avalado por este Tribunal.

No seguir al pie de la letra el mecanismo de confirmación de un Secretario de Estado dispuesto por la Constitución, según lo han alertado prestigiosos estudiosos del tema, puede tener serias consecuencias en nuestro ordenamiento jurídico. Como bien ha expresado el también destacado constitucionalista puertorriqueño Efrén Rivera Ramos:

> [D]e nada vale haber sujeto la ley y el comportamiento del ejecutivo a la Constitución si la interpretación de ésta se hace siempre con el efecto de validar los actos del Ejecutivo y el Legislativo, por más arbitrarios que sean o alejados que estén de la intención

secretario-de-estado-para-gobernar/1102911887.

protectora de la ley fundamental. **La consecuencia será revestir la arbitrariedad de legalidad.** (Énfasis suplido) E. Rivera Ramos, *El estado de derecho: aproximación al concepto,* 81 Rev. Jur. UPR 1113, 1123 (2012).

Siendo ello así, es forzoso concluir, como hoy este Tribunal de **<u>forma unánime</u>** lo concluye, que en el presente caso le asiste la razón a la parte peticionaria, el Senado de Puerto Rico. Ante la vacante que surge en el cargo de Gobernador del Estado Libre Asociado de Puerto Rico, procede, pues, que se active nuevamente el orden sucesoral dispuesto en nuestra ordenamiento constitucional y legal.

III.

Establecido lo anterior, no debemos olvidar que las constituciones de los Pueblos son "más que una ley ordinaria, [son] la ley que gobierna al gobierno. **Sus disposiciones limitan las leyes que hace el gobierno.** La estabilidad de la [C]onstitución es esencial al adecuado desarrollo, dentro de un régimen de ley, de las instituciones y principios que en ella se organizan y establecen". (Énfasis suplido) 4 Diario de Sesiones de la Convención Constituyente, *Informe de la Comisión de Preámbulo, Ordenanzas y Procedimientos de Enmiendas a la Constitución, sobre Enmiendas*, 2559 (1961).

Así las cosas, al momento de redactar la Constitución del Estado Libre Asociado de Puerto Rico, los miembros de nuestra Convención Constituyente estaban muy conscientes de que este documento sería la base sobre la cual se

construiría y desarrollaría el sistema democrático en el que vivimos hoy. Por ello, para éstos era sumamente importante que ésta fuese coherente y "[estuviese] fuera del alcance de la pasión súbita y el juicio pasajero". 4 Diario de Sesiones, *supra,* pág. 2559. Ambos propósitos, sin duda alguna, fueron logrados. **Lo mismo también aplica al ejercicio de interpretación que realizamos desde el Poder Judicial.**

Con ello en mente, al resolver las controversias traidas ante nuestra consideración, los miembros de este Tribunal "[partimos] de la premisa de que vivimos en un ordenamiento constitucional donde impera la ley y no las voluntades individuales". *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 451 (2006). Al descargar nuestra responsabilidad con el Pueblo, en palabras del Ex Juez Presidente de este Tribunal, Hon. Federico Hernández Denton, cumplimos con "la ineludible obligación de asegurar la estabilidad constitucional del país y la seguridad jurídica de sus instituciones democráticas, particularmente en momentos en que los otros poderes constitucionales están en un conflicto que amenaza la estabilidad económica, y la salud fiscal y crediticia del país". *Acevedo Vilá v. Aponte Hernández*, *supra*, pág. 452 (2006). Garantizando, a su vez, la protección del orden social, la democracia y los derechos de todas y todos los que en esta bendita tierra habitan.

IV.

En fin, hoy los miembros de este Foro -- del cual me honro en formar parte -- hemos cumplido a cabalidad con el compromiso que contrajimos con el País el día de nuestro juramento al cargo de juez o jueza del Tribunal Supremo de Puerto Rico. **Hoy, sin lugar a dudas, y de cara al sol, defendimos la Constitución del Estado Libre Asociado de Puerto Rico "contra todo enemigo interior o exterior".**

Es, pues, por todo lo antes expuesto que estamos conformes con el resultado al que en el presente caso se llega.


                                        Ángel Colón Pérez
                                        Juez Asociado